# EXHIBIT A

Approved, SCAO

| | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>38th JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT | CASE NO.<br>18- **141102** -CP<br>JUDGE MICHAEL A. WEIPERT |
|---|---|---|

Court address
106 E. First St., Monroe, MI 48161          Court telephone no.

| Plaintiff's name(s), address(es), and telephone no(s).<br>BILL SCHUETTE, ATTORNEY GENERAL OF THE<br>STATE OF MICHIGAN, ex rel The People of the STATE<br>OF MICHIGAN | v | Defendant's name(s), address(es), and telephone no(s).<br>AMERIGAS PARTNERS, L.P., AND AMERIGAS<br>PROPANE, L.P., D/B/A HOLTON'S L.P., RURAL GAS &<br>APPLIANCE and SCHULTZ BOTTLE GAS |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br>DARRIN F. FOWLER (P53464)<br>KATHERINE J. BENNETT (P75913)<br>ASSISTANT ATTORNEYS GENERAL<br>P.O. BOX 30755<br>LANSING, MI 48909 (517) 373-1160 | | AMERIGAS PARTNERS, L.P.<br>THE PRENTICE-HALL CORPORATION SYSTEM, INC.<br>251 LITTLE FALLS DRIVE<br>WILMINGTON, DE 19808 |

**SUMMONS**   **NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued 6/27/18 | This summons expires 9/26/18 | Court clerk |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains   ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in Monroe County Circuit _____ Court.

The action ☑ remains   ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no.<br>16-139361-CZ | Judge<br>MICHAEL A. WEIPERT | Bar no.<br>P35050 |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>LANSING, MI | Defendant(s) residence (include city, township, or village)<br>SEE ABOVE |
|---|---|
| Place where action arose or business conducted<br>THROUGHOUT MICHIGAN, INCLUDING MONROE COUNTY | |

Date 6-27-2018          Signature of attorney/plaintiff *Katherine J. Bennett*

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (5/15) **SUMMONS AND COMPLAINT**   MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

| PROOF OF SERVICE | SUMMONS AND COMPLAINT<br>Case No. 18-          -CP |
|---|---|

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:      (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:      (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____
_____List all documents served with the Summons and Complaint_____

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee<br>$ | Miles traveled | Mileage fee<br>$ | Total fee<br>$ |
|---|---|---|---|

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.
_____Date_____

My commission expires: _____ Signature: _____
_____Date_____                          Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
_____Attachments_____

_____ on _____
_____Day, date, time_____

_____ on behalf of _____ .
Signature

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>38th JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT | CASE NO.<br>18-141102-CP |
|---|---|---|

JUDGE MICHAEL A. WEIPERT
Court telephone no.

**Court address**

106 E. First St., Monroe, MI 48161

| Plaintiff's name(s), address(es), and telephone no(s).<br>BILL SCHUETTE, ATTORNEY GENERAL OF THE STATE OF MICHIGAN, ex rel The People of the STATE OF MICHIGAN | v | Defendant's name(s), address(es), and telephone no(s).<br>AMERIGAS PARTNERS, L.P., AND AMERIGAS PROPANE, L.P., D/B/A HOLTON'S L.P., RURAL GAS & APPLIANCE and SCHULTZ BOTTLE GAS |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br>DARRIN F. FOWLER (P53464)<br>KATHERINE J. BENNETT (P75913)<br>ASSISTANT ATTORNEYS GENERAL<br>P.O. BOX 30755<br>LANSING, MI 48909 (517) 373-1160 | | AMERIGAS PROPANE, L.P.<br>THE PRENTICE-HALL CORPORATION SYSTEM, INC.<br>601 ABBOT RD.<br>EAST LANSING, MI 48823 |

**SUMMONS**  **NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>6/27/18 | This summons expires<br>9/26/18 | Court clerk |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.  This document must be sealed by the seal of the court.

**COMPLAINT**  *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in Monroe County Circuit _____ Court.

The action ☑ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no.<br>16-139361-CZ | Judge<br>MICHAEL A. WEIPERT | Bar no.<br>P35050 |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>LANSING, MI | Defendant(s) residence (include city, township, or village)<br>SEE ABOVE |
|---|---|
| Place where action arose or business conducted<br>THROUGHOUT MICHIGAN, INCLUDING MONROE COUNTY | |

6-27-2018
Date

Katherine J Bennett
Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

**MC 01**  (5/15)  **SUMMONS AND COMPLAINT**  MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

| PROOF OF SERVICE | SUMMONS AND COMPLAINT |
|---|---|
| | Case No. 18-            -CP |

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:   (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:   (notarization required) |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____

List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Mileage fee | Total fee |
|---|---|---|---|
| $ | | $ | $ |

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                                                     Date

My commission expires: _____ Signature: _____
                              Date                        Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____

                                                                                    Attachments

_____ on _____
                              Day, date, time

_____ on behalf of _____ .

Signature

STATE OF MICHIGAN
CIRCUIT COURT FOR THE 38TH JUDICIAL CIRCUIT
MONROE COUNTY

BILL SCHUETTE, ATTORNEY GENERAL
OF THE STATE OF MICHIGAN, *ex rel* The
People of the STATE OF MICHIGAN,

       Plaintiff,

v

AMERIGAS PARTNERS, L.P., AND
AMERIGAS PROPANE, L.P., D/B/A
HOLTON'S L.P., RURAL GAS & APPLIANCE
and SCHULTZ BOTTLE GAS,

       Defendants.

No. 18-    -CP

HON.

_____

Darrin F. Fowler (P53464)
Katherine J. Bennett (P75913)
Assistant Attorneys General
Attorneys for Plaintiff
Michigan Department of Attorney General
Corporate Oversight Division
P.O. Box 30755
Lansing, MI 48909
(517) 373-1160

_____/

# ATTORNEY GENERAL'S COMPLAINT FOR EQUITABLE RELIEF, CIVIL FINES, AND DAMAGES

## I.   Parties and Venue

1. Attorney General Bill Schuette brings this civil action on behalf of the

People of the State of Michigan and on behalf of classes of Michigan consumers as

described below. The Attorney General is authorized to bring this action under

MCL 445.905 and MCL 445.910. The Attorney General may obtain injunctive

relief, actual damages, and other appropriate relief under the Michigan Consumer
Protection Act (MCPA), MCL 445.901 *et seq.* And the Attorney General may bring a
*parens patriae* action to pursue tort and individual claims under MCL 445.911 to
vindicate consumer rights.

2. Defendant AmeriGas Partners, L.P., is a publicly traded limited
partnership primarily doing business through its subsidiary, AmeriGas Propane,
L.P. This subsidiary, AmeriGas Propane, L.P., is authorized to transact business in
Michigan under the name AmeriGas Propane, a Delaware Limited Partnership. In
addition to its AmeriGas brand, Defendant AmeriGas Propane, L.P. does business
in Michigan under the assumed names of Holton's LP Gas, Schultz Bottle Gas and
Rural Gas & Appliance. Within this Complaint, Defendants shall be collectively
referred to as "AmeriGas."

3. Schultz Bottle Gas was an independent operation headquartered in Milan,
Michigan. AmeriGas purchased this operation and continued to operate at this site
until 2015. Though AmeriGas closed that location in recent years, it continues
delivering propane to Schultz Bottle Gas customers in Monroe County. Because
AmeriGas is transacting business in Monroe County, this Court is an appropriate
venue.

4. Upon information and belief, AmeriGas is the largest retailer of
residential propane in both Michigan and the United States.

## II.    Background

5. In 2014, the Attorney General formally investigated AmeriGas for alleged MCPA violations. Based on that investigation's findings, the Attorney General filed a lawsuit against AmeriGas in Berrien County Circuit Court (Docket No. 14-0248-CP). Through that lawsuit, the Attorney General alleged that AmeriGas engaged in unlawful activities, including charging some of its customers per-gallon prices for residential propane that were grossly in excess of prices charged by other residential propane retailers in Michigan. The parties resolved the Berrien County lawsuit through a Settlement Agreement shortly after it was filed. In that Agreement, AmeriGas did not admit to any MCPA violations. But AmeriGas did agree that, "[t]o the extent AmeriGas has engaged in any unfair, deceptive, and unconscionable business and sales practices, AmeriGas shall immediately cease and desist such practices." (Settlement Agreement, § 5.1 – Exhibit A). The Settlement Agreement resolved all claims between the parties for the home heating season covering October 1, 2013, through March 31, 2014.

6. From April 1, 2014, through the summer of 2016, the Attorney General received more than 150 complaints from consumers concerning a variety of AmeriGas' business practices, including new allegations of price gouging.

7. In October 2016, the Attorney General filed an *Ex Parte* Petition setting forth probable cause to believe AmeriGas is violating the MCPA based on multiple business practices. See *Schuette v AmeriGas*, Monroe County Circuit Court Docket No. 16-139361-CZ. Upon finding that probable cause existed, this Court authorized

3

the issuance of civil investigative subpoenas. Thus, the Attorney General commenced a second investigation of AmeriGas.

8. This most recent investigation was prolonged by AmeriGas' refusal to produce documents required under a subpoena *duces tecum* authorized by this Court. To gain compliance with the subpoena, the Attorney General filed a motion resulting in an Order Granting Attorney General's Motion to Enforce Civil Investigative Subpoenas, issued by this Court on September 29, 2017.

9. The investigation is now complete, giving rise to this lawsuit. The Attorney General found sufficient evidence to conclude that AmeriGas was engaged in many, but not all, of the unfair trade practices described in the *Ex Parte* Petition. And the Attorney General learned of additional MCPA violations through the investigation that were unknown when it began.

10. Although many consumers may think of propane as a utility because it is used for home heating, it is not regulated as a utility like natural gas, electricity, or telephone services. Because consumers are conditioned to see government-mandated fees in connection with utility bills, there is an opportunity for confusion regarding whether they apply to propane. Further, while a utility company's usage costs and service fees are regulated, Michigan law does not give the Public Service Commission authority over costs and fees imposed by residential propane retailers. AmeriGas' fees as described in its consumer billings not only suggest that the fees are mandated, but also make propane more expensive for its customers and make cost comparisons among retailers more confusing for all consumers.

4

11.  Most consumers using propane for home heating use a tank leased from the retailer that supplies the propane.  Like other residential retailers, AmeriGas will not fill another company's tank.  Thus, consumers who have leased a tank from AmeriGas cannot get it filled by another supplier.  While many consumers may have selected AmeriGas, others purchased their homes with an AmeriGas tank already on, or buried under, their property and then simply continued the relationship.  In other instances, as with many of the Holton's LP, Rural Gas, and Schultz Bottle Gas customers, AmeriGas became the propane provider when it bought out the smaller company with which the consumer had originally chosen to do business.

12.  The MCPA states that the following are unfair, unconscionable, or deceptive practices in the conduct of trade or commerce:

> (f) Disparaging the goods, services, business, or reputation of another by false or misleading representation of fact.

> (n) causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

> (q) Representing or implying that the subject of a consumer transaction will be provided promptly, or at a specified time, or within a reasonable time, if the merchant knows or has reason to know it will not be so provided.

> (r) Representing that a consumer will receive goods or services "free" or "without charge", or using words of similar import in the representation, without clearly and conspicuously disclosing with equal prominence in immediate conjunction with the use of those words the conditions, terms, or prerequisites to the use or retention of the goods or services advertised.

> (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

(t) Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it.

(u) Failing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment, or in the case of property traded in but not available, the greater of the agreed value or the fair market value of the property, or to cancel within a specified time or an otherwise reasonable time an acquired security interest.

(y) Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

(z) charging the consumer a price that is grossly in excess of the price at which similar property or services are sold.

(aa) causing coercion and duress as the result of the time and nature of a sales presentation.

(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

13. As documented through consumer complaints, AmeriGas responses, affidavits, testimony, and documents obtained under the investigative subpoenas, AmeriGas has engaged in the following unfair, deceptive, and unconscionable business practices in violation of the MCPA:

- Some market-priced customers were charged per-gallon propane prices grossly exceeding those charged by other companies in Michigan during the 2015-16 home heating season;

- Through its Terms and Conditions, AmeriGas provides a confusing explanation about how its market prices are set, which fails to provide consumers reasonable notice about the

6

factors affecting their propane prices. Further, in trying to explain its own market prices, AmeriGas has made misleading statements about prices charged by competitors;

- By charging additional fees on most deliveries it made during the 2015-16 home heating season, AmeriGas exacerbated the excessive prices charged to some market-based customers;

- AmeriGas' explanations to consumers of the costs offset by the Fuel Recovery and HazMat Fees are misleading;

- Application of the Will Call Convenience Fee to consumers receiving low-income home-energy assistance from the Michigan Department of Health and Human Services (DHHS) is unfair because such consumers are will-call customers as a result of their economic circumstances;

- By charging additional fees on most deliveries, AmeriGas confuses customers about the total costs involved in a propane order and makes it difficult for consumers to compare costs among propane retailers;

- Effective December 1, 2015, AmeriGas modified its written customer policies such that it no longer compensates former customers for the propane left in tanks upon discontinuation of service, which also operates to discourage customers from switching propane providers and unfairly penalizing those who do;

- AmeriGas uses marketing materials telling Michigan consumers they can get free tank installation, without giving equal prominence to the qualifications of that offer;

- AmeriGas puts customers with buried propane tanks in the unconscionable position of paying grossly excessive per-gallon prices or paying excavation costs;

- AmeriGas sold tanks at grossly excessive prices to two consumers who had complained to the Attorney General about issues relating to underground tanks;

- After acquiring Schultz Bottle Gas in 2014, AmeriGas allowed numerous consumers to run out of propane. AmeriGas' personnel knew there were deficiencies in the inherited auto-fill records but failed to take reasonable steps to ensure promised deliveries.

- AmeriGas charged fees existing under its general Terms and Conditions to customers of its subsidiary, Schultz Bottle Gas, even though it had never given them notice of those fees.

- AmeriGas uses training materials for its customer service representatives creating a likelihood that consumers, as part of a sales pitch, will be told AmeriGas has never broken a fixed-price promise. This statement is false, or at least highly misleading, in light of events that were part of the Attorney General's 2014 investigation of AmeriGas.

These assertions are detailed in this Complaint. And many of these unlawful activities are ongoing.

## III.   Factual Allegations

### A.   Unfair trade practices relating to the market price of propane

#### 1.   AmeriGas charged some customers grossly excessive prices during the 2015-16 home heating season.

14. AmeriGas customers may choose a program that locks them into a specific price-per-gallon for an entire home heating season. AmeriGas refers to this option as the Guaranteed Price Program (GPP). Customers not opting for a GPP are referred to by AmeriGas as "market price" customers. This section relates only to market price customers.

15. The home heating season runs each year from October 1 through March 31. During this time, the Michigan Department of Licensing and Regulatory Affairs (LARA) conducts a weekly price survey by sampling propane retailers throughout the State. For the 2015-16 home heating season, 41 propane retailer locations were included in the survey, including three AmeriGas locations. (Affidavit of Alex Morese of LARA – Exhibit B). Each year, LARA uses the information gathered

8

through this survey to publish a weekly average of per-gallon propane prices on its website. This information provides consumers a context within which to consider their propane bills. Some of the complainants to the Attorney General referenced those weekly averages.

16. From October 5, 2015, through March 7, 2016, the highest-reported per-gallon price from any of the 41 sampled locations always came from an AmeriGas location. These prices were consistent with the consumer complaints the Attorney General was receiving and were grossly in excess of the statewide averages. The average, highest, and lowest reported per gallon survey prices for the 2015-16 home heating season are illustrated in the table below.

| | 10/5 | 10/12 | 10/19 | 10/26 | 11/2 | 11/9 | 11/16 | 11/23 | 11/30 | 12/7 | 12/14 | 12/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AVERAGE/GAL | $1.63 | $1.63 | $1.63 | $1.61 | $1.61 | $1.63 | $1.63 | $1.63 | $1.65 | $1.65 | $1.65 | $1.65 |
| HIGH PRICE | $3.00 | $3.04 | $2.98 | $3.07 | $2.97 | $2.97 | $2.90 | $2.96 | $3.03 | $3.01 | $2.97 | $2.97 |
| LOW PRICE | $0.88 | $0.88 | $0.88 | $0.88 | $0.81 | $0.81 | $0.84 | $0.84 | $0.82 | $0.82 | $0.87 | $0.73 |

| | 12/28 | 1/4 | 1/11 | 1/18 | 1/25 | 2/1 | 2/8 | 2/15 | 2/22 | 3/1 | 3/7 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AVERAGE/GAL | $1.66 | $1.66 | $1.68 | $1.68 | $1.71 | $1.68 | $1.71 | $1.70 | $1.71 | $1.71 | $1.70 | |
| HIGH PRICE | $2.96 | $2.97 | $2.97 | $2.97 | $2.69 | $2.70 | $2.67 | $2.66 | $2.66 | $2.67 | $2.70 | |
| LOW PRICE | $0.74 | $0.77 | $0.74 | $0.72 | $0.69 | $0.74 | $0.76 | $0.76 | $0.77 | $0.77 | $0.82 | |

17. AmeriGas refers to its physical locations in Michigan as district offices, which serve geographic sub-areas called districts. Per-gallon pricing is determined on a district-by-district basis. On any given day, the per-gallon price charged by AmeriGas to a Michigan consumer in one AmeriGas district may be different than the per-gallon price charged to a Michigan consumer served by a neighboring district office, even when the consumers share similar characteristics such as annual usage and volume delivered. This can result in wide disparities among the AmeriGas districts reporting to the Federal Energy Information Agency, from which

9

LARA received the survey data for the three AmeriGas locations reporting in 2015-16. For the week of October 26, 2015, AmeriGas' Gratiot location reported to the Federal EIA a market price of $3.07 per gallon, while the AmeriGas Kalamazoo district reported a market price of $1.93 per gallon.

18. For the 2015-16 home heating season, AmeriGas' prices were grossly excessive as compared to prices being charged by its competitors in Michigan, as reflected in the statewide average. During many weeks, AmeriGas' prices were also grossly excessive even when compared only to the highest, non-AmeriGas location included in the LARA survey. See Morese Affidavit, Exhibit B.

19. Throughout the 2015-16 home heating season, AmeriGas contracted with an entity called Market Analytics to provide real-time information about its pricing compared to competitors. Market Analytics supplied AmeriGas with three separate reports each month: one each relating to AmeriGas' two largest competitors (Ferrellgas and Suburban) and one relating to small independent suppliers in Michigan. These reports reveal AmeriGas was accumulating its own data showing competitor pricing consistent with the LARA survey.

20. William M. of Oliver was the first consumer that complained to the Attorney General regarding excessive pricing for the 2015-16 home heating season. AmeriGas charged William $2.92 per gallon for an October 21, 2015 delivery of 285.8 gallons of propane. William observed that this price was significantly higher than the statewide averages published online by LARA, which

was $1.63 as of October 19, 2015.  (Pricing complaints and AmeriGas' responses –
Exhibit C).

21. As the winter continued, more consumers complained to the Attorney
General that AmeriGas prices were grossly in excess of what competitors were
charging.  In January, Karole B. of Bronson reported a price of $2.77 per gallon .
(Exhibit C, pp. D-008-D-009), Renay S. of Sand Lake reported a price of $2.87 per
gallon (Exhibit C, pp. D-012-D013), and Rebecca M. of Three Rivers was charged
$2.75 per gallon (Exhibit C, pp. D-016-D-019).  In comparison, the statewide
averages published by LARA that month ranged from $1.66 to $1.71.

22. Data provided to the Attorney General from AmeriGas during the
investigation confirms Monroe County residents were among those Michiganders
charged grossly excessive per-gallon prices.  For example, Milan residents John G.,
Randy H., and Stephanie C. were all charged more than $2.68 per gallon for
deliveries during the 2015-16 home heating season.

During the investigation, the Attorney General obtained data from AmeriGas
showing it charged some consumers even higher per-gallon prices than described in
consumer complaints.  For example, Robert L. of Hale was charged $4.618 per
gallon for 98 gallons.  And Raymond F. of Williamston paid nearly $4.00 per gallon
on each of four different deliveries; specifically, Raymond's deliveries during the
2015-16 home heating season were as follows:

> 11/25/15: 294 gallons @ $3.939
> 1/6/16: 156 gallons @ $3.939
> 2/3/16: 257 gallons @ $3.959
> 2/17/16: 155 gallons @ 3.929

11

23. For unknown reasons, AmeriGas excessively charges some consumers more profoundly than others. For example, the data supplied by AmeriGas during the investigation shows that only two consumers served by its Eaton Rapids District Office paid per-gallon propane prices above $3.01 during the 2015-16 home heating season. The highest per-gallon price was paid by Jena A. of Howard City, who was charged $4.549 for the 27 gallons delivered to her. And, Raymond F., as described in the preceding paragraph was charged the second, third, fourth, and fifth highest per-gallon rates. The sixth highest rate charged by the Eaton Rapids District Office for this time period was $3.00 per gallon to Michael C. of Watervliet, who was charged $3.00 per gallon for 287 gallons. Thus, Jena and Raymond paid grossly excessive prices even when compared only to other AmeriGas customers served by its Eaton Rapids District Office.

24. During the investigation, AmeriGas attempted to justify its prices by suggesting that it provides superior service and safety. But the corporate designee produced to explain AmeriGas' pricing in investigative testimony acknowledged the company's position in this regard is based largely on anecdotal information and that he was not aware of documents or reports substantiating such assertions. This corporate designee was James Marshall, a regional vice president who is part of the AmeriGas senior leadership team. Upon information and belief, AmeriGas' claims to superior service and safety do not justify the grossly excessive per-gallon propane prices alleged in this Complaint.

12

25.  District managers at AmeriGas may earn bonuses based on earnings. The 2015-16 home heating season saw above-average winter temperatures reducing demand for propane, which served as a real-time challenge to district managers striving to achieve these benchmarks because a lower volume of propane was being sold.  One mechanism available to district managers to increase sales volume was to recruit new customers.

26. During the 2015-16 home heating season, AmeriGas was engaged in a marketing campaign aimed at attracting new or returning customers.  This campaign emphasized sales to consumers with customer-owned propane tanks who are able to shop their business around based on per-gallon pricing.  As part of this campaign, AmeriGas gave its district locations discretion to offer steep discounts to secure new customers and make sales.  In training materials related to this effort, district managers were told "[d]on't lose the order" and "[m]ake sure we are the best price in town."  As a result, spreadsheets obtained from AmeriGas demonstrate that many Michigan consumers were charged less than $1 per gallon based on these promotional rates.

27. Upon information and belief, per-gallon prices paid by some ongoing AmeriGas customers during the 2015-16 home heating season were increased, at least in part, as a counter-balance to the discounts being given through the marketing campaign.

28. A spreadsheet AmeriGas provided in response to the Attorney General's subpoena *duces tecum* shows deliveries from multiple district offices from January

11 through January 23, 2016.  The spreadsheet gives information about 314

propane deliveries.  The spreadsheet shows consumers receiving market and

promotional pricing ranging from $0.79 per gallon up to $2.95 per gallon.  The ten

lowest-priced Michigan consumers on this spreadsheet were:

| Date | Customer | Home City | District Office | Cost | Gallons | Volume Tier |
|------|----------|-----------|-----------------|------|---------|-------------|
| 1/18/2016 | Teresa S. | Grand Ledge | Eaton Rapids-Lansing | 0.79 | 200 | XS |
| 1/14/2016 | Jessica V. | Houghton Lake | Harrison | 0.80 | 46 | S |
| 1/19/2016 | Joel M. | Beaverton | Harrison | 0.80 | 46 | L |
| 1/15/2016 | Damien F. | Roscommon | Harrison | 0.80 | 223 | L |
| 1/11/2016 | Tim F. | Bellevue | Eaton Rapids-Lansing | 0.80 | 247 | L |
| 1/12/2016 | Micah H. | Kalamazoo | Kalamazoo | 0.80 | 558 | L |
| 1/20/2016 | Amanda C. | Beaverton | Harrison | 0.80 | 320 | L |
| 1/12/2016 | Derek P. | Harrison | Harrison | 0.80 | 373 | L |
| 1/14/2016 | Jessica V. | Houghton Lake | Harrison | 0.80 | 354 | S |
| 1/20/2016 | Joel M. | Beaverton | Harrison | 0.80 | 354 | L |
| 1/13/2016 | Kyle H. | Mason | Eaton Rapids-Lansing | 0.80 | 375 | XS |

Meanwhile, the ten consumers paying the highest per-gallon rates as depicted on

the spreadsheet were:

| Date | Customer | Home City | District Office | Cost | Gallons | Volume Tier |
|------|----------|-----------|-----------------|------|---------|-------------|
| 1/13/2016 | Michael K. | Three Rivers | Kalamazoo | 2.97 | 260 | S |
| 1/11/2016 | Ron B. | Merrill | Ashley | 2.97 | 212 | M |
| 1/12/2016 | Scott S. | St. Johns | Ashley | 2.97 | 182 | M |
| 1/11/2016 | Christian R. | Lansing | Eaton Rapids-Lansing | 2.96 | 58 | XS |
| 1/14/2016 | Mary T. | Bath | Eaton Rapids-Lansing | 2.96 | 75 | XS |
| 1/11/2016 | Dudley M. | Charlotte | Eaton Rapids-Lansing | 2.95 | 59 | XS |
| 1/14/2016 | Ilonika G. | Houghton Lake | Harrison | 2.95 | 135 | XS |
| 1/11/2016 | Terry D. | Climax | Kalamazoo | 2.95 | 127 | S |
| 1/14/2016 | Jim W. | Bath | Eaton Rapids-Lansing | 2.95 | 176 | S |
| 1/12/2016 | Dan R. | Plainwell | Kalamazoo | 2.95 | 200 | S |

The remaining consumers listed in the spreadsheet paid prices falling in the wide

range between these highs and lows.

14

29. AmeriGas' corporate pricing manager sent an email on December 4, 2015 that raised concerns flowing from the special pricing being offered under this marketing campaign based on the Market Analytics reports.  The email stated: "For the last couple of months, we've been seeing that our first fills and first year prices are well below independents' prices.  These discounted rates will affect our ability to be competitive on our regular pricing."  (Exhibit D).

30.  During the 2015-16 home heating season, AmeriGas received calls from Michigan consumers who were unhappy with the per-gallon prices they were being charged.  As that season began, AmeriGas authorized its telephone representatives to give price concessions to consumers of up to $0.25 per gallon to try to keep them as customers.  Larger price concessions could be made by district managers.  Although he said he was not in a position to know whether it actually occurred in 2015-16, Mr. Marshall testified AmeriGas officials had discretion to try to maintain a district's earnings benchmarks by increasing market prices charged to some consumers to make up for price concessions given to complaining customers.

31. AmeriGas' average product costs for the propane it was selling throughout the 2015-16 season was less than $1.00 per gallon.  For example, the product cost for the Eaton Rapids District Office was $0.6676 per gallon.  This product cost includes both the actual cost AmeriGas paid to acquire the propane and its transportation costs to bring that propane to its plant in Eaton Rapids for distribution.

32.  Upon information and belief, the Eaton Rapids District Office could have achieved precisely the same earnings in 2015-16 without charging Raymond F. the per-gallon prices identified in paragraph 22 above.  Similarly, AmeriGas' district offices serving Michigan consumers could have achieved precisely the same 2015-16 earnings without deviating as much as they did from the statewide averages reported in the LARA survey.  This could have been accomplished through better oversight over aspects of its operations, including the marketing campaign incentives, concessions, and the disparities among the per-gallon prices being charged to market-priced consumers.

### 2.   AmeriGas' explanation of its market pricing is confusing.

33.  AmeriGas, through both its Terms and Conditions and its telephone representatives, refers to consumers who are not on a fixed-price program as paying a "market price."

34.  AmeriGas' use of the phrase "market price" in communicating with customers and potential customers is misleading.  Although an AmeriGas customer subject to market-based pricing might reasonably assume the per-gallon rate he or she will be charged will bear some relationship to the market costs of propane, the company has crafted its Terms and Conditions in an ambiguous manner suggesting that AmeriGas may have its own "market" price that has nothing to do with the industry price:

> Unless you have an agreement which determines your price, you will
> receive the Company's daily market price per gallon that is set at the
> Company's discretion, which includes, among other things and without

limitation, our costs to procure the propane, freight and transportation, and may vary depending upon the volume of propane purchased by the customer, customer classification, ownership of propane tank and competitive conditions. You may contact your District office to receive current pricing information as pricing changes frequently and without prior notice to the customer. (AmeriGas' Terms and Conditions as mailed to consumers in Fall 2017, Exhibit E. With the exception of minor, grammatical adjustments, this text has been substantially the same from April 1, 2014 through the filing of this lawsuit.

This text contains an additional ambiguity with respect to the role a customer's propane volume plays in price-setting. It is unclear from this policy whether the focus is on the size of a particular propane delivery, annual usage, or some other volume criteria.

35. Putting aside any issues uniquely affecting AmeriGas' per-gallon pricing during the 2015-16 home heating season, AmeriGas generally knows that its per-gallon pricing to non-GPP customers is higher than per-gallon rates charged by competitors. As referenced in the prior section, AmeriGas professes it provides superior safety and service and prices its propane accordingly. AmeriGas' assertion in this regard is not described in the text of AmeriGas' Terms and Conditions relating to how its market prices are set, meaning consumers are not informed how this affects per-gallon rates.

36. The confusing nature of AmeriGas' use of the term "market price" leads to further misrepresentations by its customer service representatives. Upon information and belief, some of these employees do not understand that AmeriGas' market price is distinct from a more conventional understanding of that term. This can lead to employees providing unclear information about prices being offered by

17

competitors.  For example, in a telephone recording obtained during the investigation, an AmeriGas employee told consumer Karol B. that "those are probably new customer specials that you're hearing" and "unfortunately, that is not the market rate today" in reaction to a price given to Karol by an AmeriGas competitor.

37.  Lisa Aviz, who formerly worked in AmeriGas' district office in Coldwater provided investigative testimony.  Ms. Aviz testified that, at AmeriGas' direction, she trained customer representatives to respond to a customer complaining about other companies having lower pricing than AmeriGas by making a statement such as "it's probably a first fill price."  AmeriGas has made similar statements in responses to consumer complaints forwarded to it by the Attorney General, even though it knows those responses are forwarded to the consumers and that the prices being cited by the consumers in their complaints are consistent with the true market prices.

## B.   Unfair trade practices relating to AmeriGas' Fuel Recovery, HazMat, and Will Call Convenience Fees

### 1.   Fuel Recovery and HazMat Fees

38. Under its current Terms and Conditions, effective December 1, 2017, AmeriGas explains its Fuel Recovery and HazMat Fees as follows:

> **Fuel Recovery Fee** – This fee, which is assessed on propane deliveries, helps to offset the significant expenses incurred by the Company in fueling its fleet of motor vehicles. This fee fluctuates on a monthly basis as the Company's cost of fuel fluctuates. For updated Fuel Recovery Fee information, please contact your local office or visit the Company's website.

18

**HazMat & Safety Compliance Fee** – This fee, which is assessed on propane deliveries, helps to offset a portion of the costs the Company incurs to comply with federal, state and local government regulations, including, but not limited to, hazardous materials, homeland security, emergency preparedness and workplace safety. It is also used to fund, among other things, employee safety training and inspections, cylinder requalification, and environmental compliance. The fee as of the date of this Notice is $10.99.

AmeriGas' explanation of these fees has been substantively the same in every version of its Terms and Conditions in effect from April 1, 2014, through the date of the filing of this Complaint. The only difference is that the version presently on AmeriGas' website does not include a sentence informing consumers about the current Fuel Recovery Fee amount. Cf Exhibit E.

39. From April 1, 2014, through the date of the filing of this Complaint, AmeriGas has generally imposed these fees upon all residential propane deliveries in Michigan, for GPP and market price consumers alike. Under AmeriGas' Terms and Conditions, these fees can also be imposed on all other service calls, including tank pick up upon service termination. Upon information and belief, AmeriGas employees sometimes remove these fees from the accounts of consumers who complain either about them specifically or the size of their propane bill generally.

40. The names and amounts for the Fuel Recovery and HazMat fees are established by AmeriGas. AmeriGas began applying the Fuel Recovery Fee in 2005 and later added the HazMat Fee. Because it is the nation's largest supplier of residential propane, AmeriGas understands it is in a position to affect pricing methodologies. In an internal communication to its customer service employees

19

regarding its introduction of other new fees, AmeriGas made the following historical

statement about its HazMat Fee:

> AmeriGas has a history of leading the industry in new directions, like
> when AmeriGas became the first major propane company to introduce
> a hazardous materials fee. This now-common practice was achieved
> through a dedicated effort of our front-line personnel to lead the way
> with implementation. [Exhibit F]

41. Upon information and belief, some propane retailers in Michigan have

fees comparable to AmeriGas' HazMat Fee, but many do not. There are many

residential propane providers in Michigan that do not use add-on fees for propane

deliveries and charge only the per-gallon rate and sales tax. Upon information and

belief, AmeriGas' HazMat and Fuel Recovery fees make it more difficult for

consumers to compare propane prices being offered among competitors in

Michigan.

42. The names and amounts of the HazMat and Fuel Recovery Fees

consumers see on their AmeriGas bills create an illusion of officiality. Although the

AmeriGas Terms and Conditions explain these fees are not government mandated,

the reality is that not all AmeriGas customers will read that document or the fine

print on the reverse side of their invoices. They will simply see fees as line items on

their invoices. Because the fees are not set at round numbers and consumers are

accustomed to seeing government-mandated fees on utility bills such as with

telephone and electricity, some are confused by the nature of these fees. For

example, the Attorney General received a complaint from Donald P. of Gregory

asking whether these fees are government mandated. (Fees complaints and

AmeriGas responses – Exhibit G.)

43. Generally speaking, both fees, as described in AmeriGas' Terms and Conditions, relate to routine operating expenses involved in acquiring, transporting, and delivering propane to commercial and residential customers. The bulk of these expenses are anticipated in AmeriGas' district-level budgeting. Upon information and belief, it is not essential for AmeriGas to use the Fuel Recovery Fee and HazMat Fee labels to generate the revenues needed to offset the expenses to which they purportedly relate.

44. During the 2014-15 home heating season, AmeriGas did not impose either fee on its customers receiving propane under the Schultz Bottle Gas brand. And Mr. Marshall testified that there are some states in which AmeriGas does not charge a HazMat Fee. AmeriGas does not budget margins on propane differently for districts in such states. Upon information and belief, this is because the majority of costs to which the HazMat Fee relates are simply offset against the propane revenue derived from per-gallon sales.

45. In its Terms and Conditions, AmeriGas describes both the Fuel Recovery and HazMat Fees as being used to "offset" specified costs. This is misleading. Upon information and belief, AmeriGas budgets revenue to be generated from the sale of propane at per-gallon prices to offset these same expenses, while still achieving a profit. This fact is material to the transactions AmeriGas is engaging in with Michigan consumers, but is neither disclosed to consumers nor is something they could reasonably know.

46.   The income statements from AmeriGas' Eaton Rapids and Ashley District Offices for 2015-16 are included as Exhibit H.  The statements show AmeriGas breaks its revenue into two categories: propane and non-propane.  The propane revenue comes from the per-gallon propane sales to both residential and commercial customers.  The non-propane revenue comes from fees and services, including imposition of the HazMat and Fuel Recovery fees.  For both districts, the propane revenue generated from per-gallon propane sales was sufficient to offset all operating expenses, including those to which the Fuel Recovery and HazMat fees relate.

47.   AmeriGas further confuses Michigan consumers through its responses to questions and complaints about the HazMat and Fuel Recovery fees.  AmeriGas knows from experience that the Attorney General shares its responses to consumer complaints with the complaining consumer.  In responding to Donald P.'s complaint, AmeriGas said it uses these fees to recoup specific aspects of its overhead expenses.  Regarding the Fuel Recovery Fee, AmeriGas said, "[w]hile various other suppliers may build these costs into the price of the propane, AmeriGas chooses to list this charge separately." (Exhibit G).  But this response is misleading because AmeriGas factors its diesel fuel costs into the per-gallon price of its propane.  AmeriGas even tells market price consumers this fact in the Terms and Conditions section quoted in paragraph 34 above.

48.   In responding to Donald P.'s question about the HazMat Fee, AmeriGas said that this fee is used to offset safety training and hazardous material

22

costs. (Response to Donald P. complaint, Exhibit G). Similarly, in an internal document designed to train customer service representatives that respond to frequently asked questions, AmeriGas explains that the HazMat Fee is used to "defray" safety expenses. But AmeriGas, in explaining why its per-gallon prices during the 2015-16 home heating season were so much higher than other retailers, said the price includes "an extensive safety department which [sic] provides safety training year-round to our employees." (AmeriGas response to Renay S. complaint –Exhibit C, pp D-014-D015).

49. Testifying about an internal memo AmeriGas uses to justify the HazMat Fee, Mr. Marshall explained, "The bulk of the expenses articulated in the justification memo relate to employee labor costs." For example, the memo includes as safety costs the time various district-level employees such as drivers, service technicians, telephone representatives, and district managers spend performing functions like inspecting vehicles and equipment and attending meetings and trainings. These are expenses AmeriGas budgets for in the "Employee costs" line item seen on the income statements at Exhibit H. Upon information and belief, AmeriGas budgets the anticipated revenue from the per-gallon sales of propane at a sufficient level to recoup these costs.

### 2. Will Call Convenience Fee

50. On December 1, 2015, AmeriGas added a new fee it had not charged consumers before. This fee applies to customers who control their propane deliveries by placing affirmative orders, as opposed to having AmeriGas

23

automatically fill their tanks at the company's discretion. Though the description of this fee has not changed since its inception, its amount has increased since its original amount of $4.99 per will call delivery.

51. This fee has a coercive effect on consumers who obtain government assistance in paying their home heating bills through the Low Income Home Energy Assistance Program (LIHEAP) administered by the Michigan Department of health and Human Services (DHHS). These consumers, by virtue of economic necessity, receive their propane on a will call basis. AmeriGas is treating the faxed propane orders from DHHS on behalf of such consumers as a will call order to apply the Will Call Convenience Fee. Because DHHS' assistance is capped for each recipient (e.g., $1,200 for winter 2015-16), DHHS' payment of this fee to AmeriGas ultimately reduces the overall number of gallons available under this program.

52. LIHEAP consumers cannot obtain help from the LIHEAP for paying AmeriGas' service dispatch and early termination fees, making it more difficult for them, as compared to other consumers, to switch to a propane retailer that does not charge a Will Call Convenience Fee.

## C. Unfair trade practices that discourage Michigan consumers from leaving AmeriGas

### 1. No refunds for returned propane

53. During the Attorney General's 2014 investigation, AmeriGas' generally compensated consumers for propane returned to the company when service was terminated.

24

54. AmeriGas now includes a provision in its Terms and Conditions stating the general policy that it will not reimburse former customers for propane left in their tanks. This policy was first stated in Section 11, paragraph 3 of the Terms and Conditions taking effect December 1, 2015, as follows:

> Unless required by law, the Company does not repurchase propane remaining in the tank or provide customer refunds for any unused propane. The Company, may however, in its sole discretion, repurchase the propane remaining in the tank in certain circumstances. If the Company determines to repurchase the remaining propane, the repurchase price will be based upon the lower of the price per gallon that you paid or the Company's current daily market price.

AmeriGas did not clearly notify consumers of this policy change and simply circulated new Terms and Conditions with this new text. AmeriGas did not, nor does it, specifically advise consumers making propane purchases that they will forfeit their ownership rights of paid-for propane should they cancel service. Upon information and belief, AmeriGas' policy not to repurchase propane has been continuously in effect since December 1, 2015, through the filing of this lawsuit.

55. AmeriGas enforces its general policy of not compensating Michigan consumers for returned propane, even though it then resells the returned propane to other consumers or business customers. This is the case, even though Mr. Marshall admitted in his investigative testimony that the consumers own the propane. During the investigation, AmeriGas supplied the Attorney General with a spreadsheet showing more than 200 Michigan consumers who had not been compensated for returned propane under the new policy. As that spreadsheet

25

included only propane returns up to October 21, 2016, the number of affected

Michigan consumers is now likely larger.

56.  In the spreadsheet identifying consumers who have returned propane for

which AmeriGas has not provided compensation, AmeriGas identifies the

consumers, the number of gallons they have returned, and the value of the returned

propane.  Examples of consumers identified in this spreadsheet include:

- Geraldine L. of Auburn Hills returned 398 gallons, which AmeriGas valued at $1,066.24.

- Charles Z. of South Haven returned 325 gallons, which AmeriGas valued at $809.25.

57.  The spreadsheet also clarifies that AmeriGas has enforced its new policy

against Michigan consumers in a manner inconsistent with its own Terms and

Conditions.  Within each new version of its Terms and Conditions, AmeriGas tells

consumers they become bound by revisions to the Terms and Conditions upon

accepting a propane delivery after their effective date.  However, AmeriGas has

applied its policy not to repurchase propane that took effect on December 1, 2015, to

the return of propane delivered prior to that date.  Examples of such consumers

include:

- Dwayne F. of Coloma returned 315 gallons that had been delivered in October 2014.  AmeriGas valued this propane at $758.84.

- Isabel and Troy O. of Hartford returned 340 gallons that had been delivered in January 2015.  AmeriGas valued this propane at $646.00.

- Charlotte L. of Bridgeman returned 275 gallons that had been delivered in February 2015. AmeriGas valued this propane at $604.73.

58. Upon information and belief, AmeriGas does not enforce its policy not to repurchase propane in every state. Thus, AmeriGas' practice in some states is to repurchase propane from consumers who terminate service.

59. Even in enforcing its policy not to repurchase propane against Michigan consumers, AmeriGas does so in an inconsistent manner. District managers are given discretion to waive that policy and compensate consumers for returned propane on a case-by-case basis. And, in response to a second consumer complaint from Donald P., AmeriGas stated, "[i]n fact, it is the Howell AmeriGas District Office policy to refund customers for the propane left in their tank at the time of pick-up." (AmeriGas response to Donald P. complaint – Exhibit G). Upon information and belief, there is no lawful reason for AmeriGas to treat Monroe County and other Michigan consumers less favorably than those served by the Howell district location with respect to compensation for propane returned to AmeriGas upon service termination.

60. AmeriGas' policy not to repurchase propane unlawfully penalizes consumers for terminating service and is unconscionable. Under its Terms and Conditions, AmeriGas charges a variety of fees designed to ensure it is compensated for operating expenses it incurs when a consumer terminates service.

61. AmeriGas' policy not to repurchase propane forces some consumers to pay for a propane delivery at whatever per-gallon price the company charges. Even if the consumer believes the price to be unfair, he or she will have to pay for that

propane even if it is returned to AmeriGas and will have to pay various fees to terminate service. This will include paying AmeriGas a $149.99 pump-out fee for AmeriGas to transmit the propane from the consumer's tank back onto the delivery truck so that it can be re-sold.

### 2.   Free tank installations and Early Termination Fee

62.   At the same time it introduced its new policy not to repurchase propane, AmeriGas rolled out a new Early Termination Fee of $149.99. This fee was first expressed in the Terms and Conditions effective on December 1, 2015, and has remained substantially the same since that time. In the current Terms and Conditions, that fee is explained as follows:

> **Early Termination Fee** – For customers with Leased Equipment, you have received certain benefits from the Company in exchange for your service commitment, which may include, but are not limited to, the installation costs of the Leased Equipment. In the event that you terminate propane service with the Company prior to the end of the Initial Term, the Company will charge you an Early Termination Fee as of the date of your request. The Early Termination Fee is $149.99.

63. AmeriGas sometimes mails promotional offers to Michigan consumers to generate business. Upon information and belief, in the time since the Early Termination Fee was introduced, postcards like those depicted in Exhibit I were sent by AmeriGas, or a person or entity acting on its behalf, to Michigan consumers through the United States mail.

64. In these mailings and similar advertisements, AmeriGas told Michigan consumers a leased propane tank will be installed for free when joining

AmeriGas.  AmeriGas has relegated the conditions upon that offer, such as the

Early Termination Fee, to a smaller footnote.

### 3.    Treatment of consumers with underground propane tanks

65.  Some Michigan consumers have underground propane tanks due to

customer preference, deed restrictions, or neighborhood association rules.  In

August 2014, the Attorney General received the following complaint against

AmeriGas from Shirlee B. of Eagle:

> February 6, 2007, I entered into a contract with Rural Bottled Gas to
> install an underground propane tank, which was a requirement for the
> property we purchased.  Ultimately, Rural sold their business to
> AmeriGas.  I have spoken with Robb Torres, District Manager with
> AmeriGas several times to request purchasing the underground
> propane tank we purchased from Rural Gas.  He told me they are not
> in the business of selling their tanks.  They have now backed us into a
> corner because we are unable to contract with another propane
> company which has a much better price for the propane.  Our only
> option is to have a company come in, excavate where the tank is, which
> is buried in the landscaping, have the gas pumped out and have
> another company come in and install another tank in the same place.
> This tank is 7 years old now...it seems as though to allow purchasing of
> the tank should not be a problem as the tank could not be used again
> for another customer.  There are a number of people that purchased
> property with the stipulation we had to have underground tanks on
> Jones Road, which are having the same difficulty we are.  All we are
> trying to do is obtain propane with a company that offers the best
> price.  They are not allowing the purchase I believe because they do not
> want to lose our business.  We would prefer at this point and time not
> to do business with AmeriGas as we are unhappy with their service.  I
> am hoping we can obtain a resolution to this situation without having
> to have our yard completely destroyed and the expense to release
> ourselves from AmeriGas.

At the time of her complaint, AmeriGas refused to offer Shirlee a solution other

than to have a contractor excavate the tank for her, which would have cost her

29

thousands of dollars. But, after the Attorney General forwarded Shirlee's complaint to AmeriGas, she was offered the opportunity to purchase the tank for $1,000. No explanation was made for how this price was calculated. But it was the price Shirlee had to pay for a seven-year-old propane tank if she wanted to end her relationship with the company that happened to buy out the propane retailer she had originally selected. So, Shirlee paid it. (Exhibit J, p L-021.)

66. In 2016, the Attorney General received a complaint from Steven B. of Grand Ledge regarding the underground propane tank on his property. According to Steven, the prior owner of his home told him he owned the tank and that he could order propane from any company he desired. But AmeriGas was demanding that Steven return the tank. (Steven B consumer complaint – Exhibit J.) On October 12, 2016, AmeriGas sent the Attorney General a response to Steven B.'s complaint in which it asserted the tank is owned by the company, but that Steven could buy it for $817.00. AmeriGas did not explain how it calculated this price and attached a largely illegible invoice apparently from 2003 as purported evidence of its ownership of the tank. This invoice was for tank installation and does not provide conclusive evidence of its ownership. Upon information and belief formed through the investigation, AmeriGas inferred its ownership of the underground tank on Steven's property from the absence of contrary documentation in records it obtained when acquiring Rural Gas and Appliance. Steven paid AmeriGas $817.00 to purchase this underground tank.

67. AmeriGas has inconsistent practices regarding the sale of underground tanks that operate to the disadvantage of consumers like Shirlee and Steven. To attract the business of a new customer, AmeriGas will agree to sell an underground tank for installation. At times, AmeriGas has installed an underground tank for a consumer under an agreement allowing the consumer to purchase the tank in a future year for a price reflecting its reduced value over time. (See, e.g., Affidavit of Thomas R, Exhibit K) However, AmeriGas' general practice is not to sell an existing underground tank. Thus, this general practice operates in such a way that AmeriGas will not sell an underground tank installed by a smaller propane company that it has subsequently acquired or that was installed on a property through arrangements made by a home's prior owner.

68. As demonstrated through the documentation attached to Thomas' affidavit at Exhibit K, AmeriGas charged Shirlee and Steven grossly excessive prices to purchase the underground tanks on their properties as compared to the prices AmeriGas would charge consumers for similar tanks installed under an agreement directly with AmeriGas. The investigation showed the price Shirlee paid for the seven-year-old tank on her property was set by an Area Director, and AmeriGas failed to provide documentation showing how that price was calculated. Upon information and belief, the District Manager for the Eaton Rapids District Office set Steven's $817.00 price for the thirteen-year-old tank on his property with reference to an asset list showing that was the price AmeriGas had recently paid for a new tank of the same size.

31

69. A Consumer owning a propane tank can shop around to get the best price. Upon information and belief, AmeriGas' practice of not selling existing, underground tanks is designed as a safeguard against losing business to competitors offering lower prices.

70. AmeriGas' practices regarding the sale of underground tanks are unconscionable and put affected consumers under duress. Consumers with underground tanks installed by a previous company or homeowner are placed in the unfair position of having to choose between paying AmeriGas per-gallon prices that likely exceed those available from competitors or absorbing excavation costs so the tank can be returned to AmeriGas. Consumers choosing the latter expense must then also pay AmeriGas the service dispatch fee for picking up the tank, as well as any other costs that may be applicable—including the pump-out and termination fees. They also would be subject to the AmeriGas policy not to repurchase propane.

### D.    Unfair trade practices affecting Schultz Bottle Gas customers

71. Upon information and belief, AmeriGas acquired Schultz Bottle Gas in or around August 2014. AmeriGas filed documentation with the Michigan Department of Licensing and Regulatory Affairs showing it was beginning to transact business under the Schultz Bottle Gas name.

72. Upon information and belief, AmeriGas did not advise Schultz Bottle Gas customers that it was now their propane supplier for at least a year after acquiring Schultz Bottle Gas. During the investigation, AmeriGas provided the Attorney General documentation showing that it was taking steps to advise these customers

32

of this acquisition in the Fall of 2015, but the documentation does not definitively establish if or when such notifications were distributed.

73.   Upon information and belief, during the 2014-15 and 2015-16 home heating seasons, AmeriGas continued operating the Schultz Bottle Gas location in Milan that had been the latter company's headquarters prior to the acquisition.  During this time, the Schultz Bottle Gas signage remained the same, and customers calling the established Schultz Bottle Gas telephone number were greeted by telephone representatives answering the phone using the Schultz Bottle Gas name.

74.   Upon information and belief, prior to being acquired by AmeriGas, some Schultz Bottle Gas customers signed up to receive propane on an automatic fill basis on a schedule to be determined by Schultz Bottle Gas.  After acquiring Schultz Bottle Gas, AmeriGas found these records to be poorly kept on the database. AmeriGas appointed Richard Schneider as the manager of the Schultz Bottle Gas office in Milan after AmeriGas took over operations.  Mr. Schneider testified during the investigation that multiple consumers ran out of propane because of missing information in the database and because two former employees left with hard copies of customer information.

75.   Mr. Schneider testified that approximately 20-30 Schultz Bottle Gas customers complained about running out of propane during the winter of 2014-15, and another 10-20 such complaints were received during the spring and summer of 2015.  While AmeriGas did not have complete information identifying which of its

33

customers were signed up for auto-fill, Mr. Schneider testified he believed the Schultz Bottle Gas database "had a complete list of all Schultz Bottle Gas customers, past and present." Upon information and belief, AmeriGas had the information and ability needed to reach out to Schultz Bottle Gas customers about a known problem with its records identifying which customers were signed up for auto-fills but did not do so. Consequently, some Schultz Bottle Gas customers unnecessarily ran out of propane when AmeriGas did not deliver on promises it inherited by virtue of its acquisition.

76. Under its Terms and Conditions, AmeriGas charges a leak check fee when a consumer runs out of propane and then has service reinstated. Even though AmeriGas had not given notice to its Schultz Bottle Gas customers about its fee structure, it applied leak check fees to consumers whom it allowed to run out of propane as described in the preceding paragraphs. In his testimony, Mr. Schneider could not definitively say all affected consumers had these fees refunded. Mr. Schneider and AmeriGas claimed the leak check and special trip fees were removed for Michael F., who is one of the consumers AmeriGas allowed to run out of propane even though he was a Schultz Bottle Gas customer. But Michael F. is not sure this occurred because he was not compensated for the propane left in his tank, and he never received a final accounting from AmeriGas. (Michael F affidavit, Exhibit L.) Michael returned his tank when it was AmeriGas' policy to compensate consumers for the propane left in their tanks.

77. In approximately September 2015, AmeriGas transitioned the Schultz Bottle Gas customers onto the computer database it uses for the majority of its consumers. Consequently, AmeriGas began charging the Schultz Bottle Gas customers Fuel Recovery and HazMat fees. AmeriGas did this even though it had not distributed its Terms and Conditions to these customers. In a filing with this Court opposing the Attorney General's effort to enforce the subpoenas, AmeriGas admitted an "inadvertent error in charging customers HazMat and Fuel Recovery fees without sending those customers a welcome packet informing them of those fees." AmeriGas ignored the fact it had also imposed leak check, tank rental, and other fees upon former Schultz Bottle Gas customers who did not have notice of those fees before their imposition.

78. Upon information and belief, AmeriGas did not attempt to identify consumers who had been inadvertently charged HazMat and Fuel Recovery fees without receiving notice of them through a welcome packet from AmeriGas until the Attorney General expressed concerns about fees charged to the Schultz Bottle Gas customers in the *Ex Parte* Petition giving rise to the investigation.

79. AmeriGas' admission in the above-referenced court filing applies only to Fuel Recovery and HazMat fees collected from its acquisition of Schultz Bottle Gas through November 30, 2015. But AmeriGas' charging of those fees to these customers after that date is also inappropriate. Upon information and belief, throughout the 2015-16 home heating season, the Schultz Bottle Gas homepage expressly advertised that there were "[n]o HazMat or Delivery Charges." Attached

35

is a printout of a screenshot the Attorney General captured on February 22, 2016, of the Schultz Bottle Gas homepage. (See Exhibit M.) Mr. Schneider testified he considers the Fuel Recovery Fee a delivery fee. Hence, even if AmeriGas did distribute its Terms and Conditions to Schultz Bottle Gas customers in the Fall of 2015, the contradictory statement on the Schultz Bottle Gas website about not charging HazMat and delivery fees could have created confusion among its customers, or potential customers, in this regard.

80. Even after the Attorney General commenced the investigation giving rise to this lawsuit, AmeriGas attempted to charge at least one Schultz Bottle Gas for a tank rental fee under its Terms and Conditions even though the consumer had not placed a propane order on or after December 1, 2015, which would have been a condition predicate to imposing such a fee under the plain text of that document. Responding to this consumer's complaint to the Attorney General, AmeriGas removed that fee. Upon information and belief, AmeriGas still has not undertaken to affirmatively identify other consumers who have been charged tank rental, service dispatch, tank pump-out, and other fees after December 1, 2015 even though they had not received propane deliveries after that date.

### E. Unfair trade practices relating to 2014 settlement agreement

#### 1. Misleading statement in training scripts

81. AmeriGas provides training materials to its customer service representatives, which includes as a talking point the idea that AmeriGas has never broken a fixed-price promise. Specifically, one such document states:

36

> Our written agreements are ironclad; there are:
> No per-gallon deposits on gallons you may not use
> No provisions permitting the price guarantee to be broken
> AmeriGas has never broken a Pre-Buy, AmeriGuard or AmeriLock
> price promise

This statement is false or misleading.

82. The Attorney General's 2014 investigation of AmeriGas involved three

primary issues, one of which was the company's failure to honor fixed-price

promises made to Michigan consumers. Ultimately, the Attorney General obtained

evidence validating this concern through that investigation and commenced suit

against AmeriGas on claims related to this and other concerns.

83. In settling that lawsuit, AmeriGas acknowledged in paragraph 6.1 of the

settlement agreement:

> AmeriGas offers its customers the option to enroll in a Guaranteed
> Price Protection ("GPP") program to lock in a price per gallon each
> year. This past winter, the Department received some complaints from
> AmeriGas customers that they did not receive the locked-in price per
> gallon as outlined in their GPP contract. AmeriGas conducted an
> investigation and found that a limited number of customer accounts
> were billed incorrectly. To date, some of these customer accounts have
> been corrected, and some have not been.

AmeriGas' investigation of this problem came only after the Attorney General made

it one of the subjects of the 2014 investigation. AmeriGas broke fixed-price

promises to Michigan consumers during the 2013-14 home heating season, and that

situation was not truly rectified until the Attorney General filed the previous

lawsuit. Upon information and belief, in making its assertion about how it has

never broken a fixed-price promise to Michigan consumers, AmeriGas does not

disclose the material facts about the role of the Attorney General's investigation

and lawsuit or the subsequent settlement. These facts are relevant, and not reasonably knowable by the consumers.

### 2.    Breach of 2014 agreement

84. As quoted in paragraph 5 above, AmeriGas was obligated under the 2014 settlement agreement to cease all unfair, deceptive, and unconscionable business practices. As alleged in this Complaint, it has failed to do so. Indeed, AmeriGas' grossly excessive pricing practices are a recurrent allegation.

### COUNT I – SECTION III(A) CLAIMS REGARDING PRICING

85. The Attorney General incorporates paragraphs 1 through 84 above as though fully set forth here.

86. AmeriGas' pricing practices for the 2015-16 home heating season, as set forth in section III(A) above are an unfair trade practice under MCL 445.903(1)(z). Upon information and belief, this violation is manifest in two distinct ways: (1) AmeriGas charged grossly excessive prices for propane to a substantial number of residential customers in Michigan during the 2015-16 home heating season when compared to the price at which propane was being sold by other residential retailers within this State; and (2) AmeriGas charged some of its own customers who were subject to market pricing at rates that were grossly in excess of the per-gallon prices it was charging to the majority of its own residential customers who were similarly situated. Upon information and belief, the customers in the second group are a subset of the first, larger group.

87.  The grossly excessive prices charged to AmeriGas market-priced consumers as alleged in Section III(A) were exacerbated by application of the HazMat, Fuel Recovery, and Will Call Convenience Fees described in Section III(B).

88.  AmeriGas' use of phrases like "market price" in its Terms and Conditions, and communications with Michigan consumers as alleged in Count III(A)(2) violate MCL 445.903(1)(f), (n), (s), (bb), and (cc).  AmeriGas further engages in these unfair trade practices through its ambiguous and misleading explanations about how market pricing is accomplished at AmeriGas and in communicating about prices offered by competitors.

89.  The Attorney General seeks injunctive relief, as well as damages on behalf of all consumers named in Section III(A) and all similarly situated consumers in the State of Michigan.

## COUNT II - SECTION III(B) CLAIMS REGARDING FEES

90.  The Attorney General incorporates paragraphs 1 through 89 above as though fully set forth here.

91.  As alleged in Section III(B)(1), AmeriGas violates MCL 445.903(1)(n), (s), (bb), and (cc) through confusing and misleading representations regarding its Fuel Recovery and HazMat fees.  Further, AmeriGas practices regarding these fees violate these subsections because AmeriGas' fees are likely to confuse consumers who attempt to compare propane prices amongst different retailers.

92.  As alleged in Section III(B)(2), AmeriGas' application of the Will Call Convenience Fee to Michigan LIHEAP consumers violates MCL 445.903(1)(aa).

39

93.  The Attorney General seeks injunctive relief, as well as damages on behalf of all consumers named in Section III(B) and all similarly situated consumers in the State of Michigan.

## COUNT III – SECTION III(C)(1) CLAIMS REGARDING RETURNED PROPANE

94.  The Attorney General incorporates paragraphs 1 through 93 above as though fully set forth here.

95.  Regarding propane returned to the company upon discontinuance of service, AmeriGas' policies and practices as alleged in Section III(C)(1) violate MCL 445.903(1)((n), (t), (u), and (y).

96.  By taking propane belonging to Michigan consumers without compensation in the manner alleged in Section III(C)(1), AmeriGas is engaging in statutory conversion under MCL 600.2919a(1)(a).  Alternatively, AmeriGas' misconduct constitutes common law conversion.

97.  The Attorney General seeks injunctive relief, as well as damages on behalf of all consumers named in Section III(C)(1) and all similarly situated consumers in the State of Michigan.

## COUNT IV – SECTION III(C)(2) CLAIMS REGARDING FREE TANK INSTALLATION MARKETING

98.  The Attorney General incorporates paragraphs 1 through 97 above as though fully set forth here.

99. As alleged in Section III(C)(2), AmeriGas' marketing to Michigan consumers regarding free tank installations violate MCL 445.903(1)(r).

100. For this Count, the Attorney General seeks only injunctive relief.

## COUNT V - SECTION III(C)(3) CLAIMS REGARDING UNDERGROUND TANKS

101. The Attorney General incorporates paragraphs 1 through 100 above as though fully set forth here.

102. AmeriGas' policies and practices in refusing to sell underground tanks to Michigan consumers as alleged in section III(C)(3) violate MCL 445.903(1)(n) and (aa).

103. Upon information and belief, AmeriGas' practices in this regard have caused financial harm to yet unidentified Michigan consumers who have sought to terminate their relationship with AmeriGas, but have been unable to do so. Such consumers have been forced to pay the per-gallon rates dictated by AmeriGas, even when such rates are less favorable than those available from competitors.

104. Regarding consumers Shirlee B and Steven B, as alleged in paragraphs 65 through 70, AmeriGas violated MCL 445.903(1)(n) and (z) by charging them grossly excessive prices for aged, underground tanks.

105. The Attorney General seeks injunctive relief, as well as damages on behalf of all consumers named in Section III(C)(3), and all similarly situated consumers in the State of Michigan.

41

## COUNT VI – SECTION III(D) CLAIMS REGARDING SCHULTZ BOTTLE GAS

106.  The Attorney General incorporates paragraphs 1 through 105 above as though fully set forth here.

107.  By failing to deliver propane to Schultz Bottle Gas customers and by failing to take reasonable steps to ensure such consumers did not run out of propane, AmeriGas violated MCL 445.903(1)(q), (y), and (cc).  In charging these consumers leak check and other fees under these circumstances, AmeriGas violated MCL 445.903(1)(n) and (aa).

108.  In charging Schultz Bottle Gas customers HazMat, Fuel Recovery, tank rental, leak check and other fees without giving them notice of such fees, AmeriGas violated MCL 445.903(1)(n), (s), and (cc).  Further, by charging these customers the Fuel Recovery and HazMat fees while a contradictory statement appeared on the Schultz Bottle Gas website, AmeriGas violated MCL 445.907(1)(bb).

109.  The Attorney General seeks injunctive relief, as well as damages on behalf of all consumers named in Section III(D) and all similarly situated consumers in the State of Michigan.

## COUNT VII – SECTION III(E)(1) CLAIMS REGARDING MARKETING STATEMENT ABOUT FIXED-PRICE CONTRACTS

110.  The Attorney General incorporates paragraphs 1 through 109 above as though fully set forth here.

42

111.  As alleged in Section III(E)(1), AmeriGas has created a likelihood that Michigan consumers have been, and will be, told AmeriGas has never broken a fixed-price promise.  AmeriGas has thus violated MCL 445.903(1)(s), (bb), and (cc).

112. For this Count, the Attorney General seeks only injunctive relief.

## COUNT VIII - SECTION III(E)(2) CLAIMS REGARDING BREACH OF 2014 SETTLEMENT

113.  The Attorney General incorporates paragraphs 1 through 112 above as though fully set forth here.

114.  As alleged in Section III(E)(2), AmeriGas breached the 2014 settlement agreement with the Attorney General by persisting in unfair, deceptive, and unconscionable trade practices as alleged through this Complaint.

115.  The Attorney General seeks injunctive relief, as well as damages on behalf of all consumers named in this Complaint and all similarly situated consumers in the State of Michigan.

## RELIEF REQUESTED AND JURY DEMAND

Based upon the above allegations, the Attorney General requests a jury trial to determine liability and damages under MCL 445.910 and MCL 445.911.  This should include actual and punitive damages for all persons named in this complaint and classes of similarly situated AmeriGas customers.  These actual damages should include full restitution of all unlawful charges, late fees, fines, and penalties.  These damages should also compensate the Plaintiff classes for interest and other consequential expenses.  As relates to the conversion claim on behalf of

43

Michigan consumers who have not been compensated for propane returned to AmeriGas, the Attorney General seeks treble damages.

In addition, under MCL 445.905, the Attorney General seeks the following relief:

A.  Preliminary and permanent injunctions enjoining AmeriGas from engaging in the unlawful conduct detailed throughout this Complaint;

B.  A declaratory judgment that AmeriGas has breached the 2014 settlement agreement, with companion order for specific performance;

C.  Declaratory judgments on such other matters that may be useful in determining the rights and obligations of the parties;

D.  A civil fine of $25,000 for each violation that is determined to be persistent and knowing;

E.  Award the Attorney General his costs in bringing this action, including reasonable attorney fees; and

F.  Award such other relief as this Court deems just and appropriate.

Respectfully submitted,

Bill Schuette
Attorney General

Darrin F. Fowler (P53464)
Katherine J. Bennett (P75913)
Assistant Attorneys General
Corporate Oversight Division
P.O. Box 30755
Lansing, MI  48909
(517) 373-1160

Date:  June 27, 2018

# <u>EXHIBIT A</u>

## 2014 Signed Settlement/Assurances with AmeriGas

STATE OF MICHIGAN
CIRCUIT COURT FOR THE 2ND JUDICIAL CIRCUIT
BERRIEN COUNTY

BILL SCHUETTE, ATTORNEY GENERAL
OF THE STATE OF MICHIGAN, *ex rel*
The People of the STATE OF MICHIGAN,

      Plaintiff,

v

AMERIGAS PARTNERS, L.P., AND
AMERIGAS PROPANE, L.P., D/B/A
HOLTON'S LP AND RURAL GAS &
APPLIANCE,

      Defendants.

No. 14 - 0248 - CP

HON. JOHN E. DEWANE

_____

## SETTLEMENT AGREEMENT

Bill Schuette, Attorney General of the State of Michigan, on behalf of the People of the State of Michigan ("Attorney General") and AmeriGas Propane, L.P. and its general partner, AmeriGas Propane, Inc. (collectively "AmeriGas"), for valuable consideration, hereby execute and agree to be bound by this Settlement Agreement ("Agreement").

This Agreement is entered into for the purpose of resolving all matters, arising from or related to the facts alleged in *Schuette v AmeriGas*, Berrien County Circuit Court No. 14-0248-CP, including, but not limited to, alleged violations of the Michigan Consumer Protection Act, 1976 PA 331, as amended; MCL 445.901 et seq. (MCPA).

The parties agree that the terms of this Agreement are fair, reasonable, and consistent with the public interest and the doctrines of applicable law. The

1

parties further agree that the entry into this Agreement by AmeriGas is not an admission with respect to any legal or factual issue dealt with in this Agreement or the above lawsuit.

THEREFORE, the parties agree as follows:

## I.  Jurisdiction

1.1    The Attorney General has jurisdiction over the subject matter of this Agreement pursuant to MCL 445.905 and 445.910. AmeriGas waives all objections and defenses that it may have as to the jurisdiction of the Attorney General in this matter.

## II. Parties Bound

2.1    This Agreement binds AmeriGas, whether acting through associates, principals, officers, directors, employees, representatives, successors or assigns, or through any other subsidiary, corporation, assumed name or business entity. AmeriGas is responsible for compliance with the terms of this Agreement, and must ensure that all employees, agents and representatives comply with the terms of this Agreement.

## III. Definitions

3.1    "COD" means the Michigan Department of Attorney General, Corporate Oversight Division.

3.2    "AmeriGas" means AmeriGas Propane, L.P. and its general partner, AmeriGas Propane, Inc. (collectively "AmeriGas") whether doing business under any assumed name, or acting through its principals, employees, or other business entity, and whether doing business at any location in the state of Michigan.

3.3    "Parties" means the Attorney General and AmeriGas, collectively.

2

3.4   "Lawsuit" means *Schuette v AmeriGas*, Berrien County Circuit Court No. 14-0248-CP, filed September 18, 2014.

3.5   "2013-2014 heating season" means October 1, 2013 through March 31, 2014.

3.6   All other terms shall have the meaning specifically defined in the MCPA.

## IV. Background and Statement of Purpose

4.1   For citizens throughout Michigan, the winter of 2013-2014 brought prolonged bouts of freezing temperatures unlike any other in living memory. Many industry participants have indicated that a record corn harvest that was wetter and later than normal, an unusually cold and early winter, record propane exports that reduced domestic propane inventories, and a shutdown of the Cochin Pipeline used to transport propane to U.S. storage facilities, collectively depleted Midwest propane inventories throughout the winter. By late January, many propane retailers indicated they were unable to quickly and easily bring sufficient low-cost propane to the region to meet the demand. As a result, in January and February, 2014, the wholesale price of propane reached unprecedented highs, and many Michigan consumers who rely on propane to heat their homes filed complaints with the Michigan Attorney General, regarding the price they were charged for propane. The Attorney General consequently initiated an investigation into whether certain propane companies, including AmeriGas, violated one or more provisions of the MCPA during the 2013-2014 heating season

4.2   In furtherance of the investigation, the Attorney General issued multiple subpoenas seeking the production of documents and the testimony of

3

various witnesses, including customer relations representatives and management-level employees of AmeriGas. AmeriGas cooperated with the Attorney General's investigation and produced documents and witnesses for examination. During the course of this investigation, the Attorney General discovered what appeared to be billing and/or pricing errors that adversely impacted some AmeriGas residential customers.

    4.3    In entering into the Agreement, the mutual objective of the parties is to resolve the Attorney General's claims brought in the Lawsuit for preliminary and permanent injunctive relief, as well as the payment of damages, civil penalties, and reimbursement of the Department's costs and expenses related to the investigation. The entry into this Agreement by AmeriGas is not an admission of liability with respect to any issue addressed in this Agreement nor is it an admission of any factual allegations or legal conclusions stated or implied in the Lawsuit or in the Attorney General's Ex Parte Petition for Subpoenas dated May 19, 2014, and filed in the Marquette County Circuit Court (the "Petition").

## V. Implementation of Compliance Measures

    5.1    To the extent that AmeriGas has engaged in any unfair, deceptive and unconscionable business and sales practices, AmeriGas shall immediately cease and desist such practices.

    5.2    AmeriGas has implemented heightened training of Michigan customer service representatives to ensure that Michigan residential customers who order propane in the future will not be similarly negatively impacted by the alleged errors referenced in this Agreement or the Lawsuit. AmeriGas will

continue to implement appropriate training, as necessary, to ensure compliance with the Michigan Consumer Protection Act and this Agreement.

5.3    AmeriGas shall ensure that Michigan residential customers receiving propane deliveries from its locations in other states are charged per gallon rates comparable to rates charged to similarly situated Michigan residential customers receiving deliveries from its Michigan locations.

5.4    Upon written request from the COD, AmeriGas will produce additional records for purposes of monitoring compliance with this Agreement within 10 business days of receipt of such request. This obligation remains in effect for two years.

## VI. Payments

6.1    AmeriGas offers its customers the option to enroll in a Guaranteed Price Protection ("GPP") program to lock in a price per gallon each year. This past winter, the Department received some complaints from AmeriGas customers that they did not receive the locked-in price per gallon as outlined in their GPP contract. AmeriGas conducted an investigation and found that a limited number of customer accounts were billed incorrectly. To date, some of these customer accounts have been corrected, and some have not been.   For those customers whose accounts were not corrected prior to the filing of the Lawsuit, AmeriGas will reimburse those customers the amount incorrectly billed; and due to the extreme and unprecedented conditions of the last winter, AmeriGas will also credit those customers with an additional amount equal to one-half of the amount of the resolved incorrect billing.

Each customer receiving a reimbursement under this paragraph will receive a minimum credit or refund of $10.00.

6.2    Some AmeriGas Michigan residential customers placed telephone will-call orders for propane which was delivered between January 14, 2014 and January 28, 2014. Despite being quoted a price per gallon on the phone, certain customers were charged a price per gallon on the date of delivery as opposed to the date of order. During this time period, the industry experienced a significant spike in the cost of propane.  Subsequently, some customers received prices higher than what was quoted on the phone.

In order to rectify this issue, AmeriGas has modified its process so that a customer's price is locked-in at the time of order as opposed to the date of delivery. With regard to every customer placing an order during this time period who was charged a higher price upon delivery than would have applied had the customer been billed the price applicable on the date of the order, AmeriGas will reimburse those customers by issuing an account credit or refund in the amount of the difference between the market price at the time of the order and the final invoice price (net of credits applied or refunds already made.)  Additionally, due to the extreme and unprecedented conditions of the last winter, AmeriGas will also credit these customers with an additional amount equal to one-half of the amount described in the preceding sentence.

Each customer receiving a reimbursement under this paragraph will receive a minimum credit or refund of $10.00.

6

6.3    AmeriGas will reimburse customers, as required by paragraph 6.1 and 6.2, no later than November 1, 2014.  For all current AmeriGas customers, the reimbursement will be in the form of an account credit. Any person who is no longer an AmeriGas customer as of the date of this Agreement shall receive a credit to any remaining balance on his or her AmeriGas account and to the extent the reimbursement exceeds any remaining outstanding balance owed on that customer's account, he or she will receive a check for the remaining amount sent by mail through the United States Postal Service. No later than November 1, 2014, AmeriGas will provide COD with verified documentation substantiating that the credits/reimbursements required by paragraphs 6.1 and 6.2 have been completed.

6.4    Both the Attorney General and AmeriGas recognize that this past winter was very challenging for many propane customers throughout Michigan. Historically low temperatures and other supply challenges resulted in propane prices higher than customers have seen in recent years.  Consequently, recognizing the hardships faced by many propane users this past winter, AmeriGas will issue an account credit or refund to all its Michigan residential customers who received deliveries during January and February 2014, and whose final invoice price was greater than the amounts specified herein.  This account credit or refund will be made in addition to any credits already applied or refunds already made by AmeriGas. These customers are further identified as follows:

- Residential Customers receiving deliveries from January 1 through January 5, and whose final invoice price was greater than $ 3.12, will be credited the difference between the final invoice price and $ 3.12 per gallon.

7

- Residential Customers receiving deliveries from January 6 through January 12, and whose final invoice price was greater than $3.23, will be credited the difference between the final invoice price and $3.23 per gallon.

- Residential Customers receiving deliveries from January 13 through January 19, and whose final invoice price was greater than $3.10, will be credited the difference between the final invoice price and $3.10 per gallon.

- Residential Customers receiving deliveries from January 20 through January 26, and whose final invoice price was greater than $3.45, will be credited the difference between the final invoice price and $3.45 per gallon.

- Residential Customers receiving deliveries from January 27 through February 2, and whose final invoice price was greater than $5.70 per gallon, will be credited the difference between the final invoice price and $5.70 per gallon.

- Residential Customers receiving deliveries from February 3 through February 5, and whose final invoice price was greater than $5.20 per gallon, will be credited the difference between the final invoice price and $5.20 per gallon.

- Residential Customers receiving deliveries from February 6 through February 9, and whose final invoice price was greater than $4.75 per gallon, will be credited the difference between the final invoice price and $4.75 per gallon.

- Residential Customers receiving deliveries from February 10 through February 16, and whose final invoice price was greater than $4.90 per gallon, will be credited the difference between the final invoice price and $4.90 per gallon.

- Residential Customers receiving deliveries from February 17 through February 23, and whose final invoice price was greater than $4.54 per gallon, will be credited the difference between the final invoice price and $4.54 per gallon.

- Residential Customers receiving deliveries from February 24 through February 28, and whose final invoice price was greater than $4.50 per gallon, will be credited the difference between the final invoice price and $4.50 per gallon.

Additionally, in further recognition of impact of the price of propane on its customers, especially due to the extreme and unprecedented conditions of the last winter, AmeriGas will also credit these customers with an additional amount equal to one-half of the amount described in this paragraph.

Each customer receiving a reimbursement under this paragraph will receive a minimum credit or refund of $10.00.

6.5    AmeriGas will reimburse customers, as required by paragraph 6.4 no later than November 1, 2014.  For all current AmeriGas customers, the reimbursement will be in the form of an account credit. Any person who is no longer a AmeriGas customer as of the date of this Agreement shall receive a credit to any remaining balance on his or her AmeriGas account and to the extent the reimbursement exceeds any remaining outstanding balance owed on that customer's account, he or she will receive a check for the remaining amount sent by mail through the United States Postal Service.  No later than November 1, 2014, AmeriGas will provide COD with verified documentation substantiating that the credits/reimbursements required by paragraph 6.4 have been completed.

6.6    To the extent any consumer is entitled to a reimbursement under more than one of the above paragraphs 6.1, 6.2, or 6.4, that customer shall be compensated under each paragraph.

6.7    To further aid Michigan consumers, AmeriGas will offer a fixed-price contract that extends to May 31, 2015 to all current residential customers not currently enrolled in one of AmeriGas' Guaranteed Price Protection programs.  The customers offered the fixed-price contract will have 30 days from the date of mailing

9

of the offer to accept the fixed-price contract. AmeriGas will waive the lock in fee for this fixed-price contract. Additionally, AmeriGas will offer this locked-in offer at a price at discount off its lowest current yearly residential lock in program for customers served by that store location from the date of this Agreement until the 30 days for acceptance expires.

6.8     This Agreement will not affect other fixed-price contracts AmeriGas has entered into with its customers.

6.9     A limited number of customers filed complaints against AmeriGas with the Attorney General during and after the 2013-2014 heating season. AmeriGas has cooperated with the Attorney General in resolving many of these complaints, even in circumstances where AmeriGas did not believe the complaint was well founded. AmeriGas agrees to compensate up to 100 of these complainants, as identified by the Corporate Oversight Division, with $100.00 each no later than November 1, 2014. This payment will be in addition to any relief these customers may be getting under paragraphs 6.1, 6.2 or 6.4 and in addition to any account credits or refunds AmeriGas may have provided these customers before entering into this Agreement. For all current AmeriGas customers, the reimbursement will be in the form of an account credit. Any person who is no longer a AmeriGas customer as of the date of this Assurance shall receive a credit to any remaining balance on his or her AmeriGas account and to the extent the reimbursement exceeds any remaining outstanding balance owed on that customer's account, he or she will receive a check for the remaining amount sent by mail through the United States Postal Service. No later than November 1, 2014, AmeriGas will provide

COD with verified documentation substantiating that the credits required by this paragraph have been provided to the customers.

6.10   Within three (3) business days after the Effective Date of this Agreement, AmeriGas shall pay to the State of Michigan, Michigan Department of Attorney General, the sum of $10,000.00 as reimbursement for the costs of investigation and filing the complaint.

6.11   The payment required by paragraph 6.10 shall be made by check payable to the "State of Michigan" and remitted to Joseph Potchen, Division Chief, Corporate Oversight Division, PO Box 30755, Lansing, MI 48909.

## VII. Release and Dismissal

7.1   In consideration of the foregoing, subject to the limitations in paragraph 7.2, the Attorney General forever releases and absolutely and forever discharges AmeriGas of and from any and all claims or causes of action in law or in equity based directly or indirectly on the Attorney General's consumer protection investigation related to propane pricing in the 2013-2014 heating season, including the alleged acts, failures to act, omissions, misrepresentations, facts, events, transactions, statements, occurrences or other subject matter which either were or could have been set forth, alleged, embraced, complained of or otherwise referred to in the Lawsuit or the Petition.

This release does not release any claims against any entity other than AmeriGas.

7.2   Notwithstanding the foregoing, the following claims are not released:

11

A.  Securities and securitization claims based on the offer, sale, or purchase of securities, or other conduct in connection with investors or purchasers in or of securities;

B.  Claims based on AmeriGas' obligations created by this Agreement;

C.  Tax claims;

D.  Criminal enforcement of state criminal laws;

E.  Claims asserted or that may be asserted by third parties, including individual consumers.

7.3  Within three (3) business days after the Effective Date of this Agreement, the Attorney General will voluntarily dismiss with prejudice the Complaint against AmeriGas.

## VIII. Notices

8.1  All notices, deliveries or other communications required or permitted shall be in writing and shall be deemed given when sent by facsimile transmission or first class mail addressed as follows:

> If to COD:
>
> > Corporate Oversight Division
> > Department of Attorney General
> > Attn: Joseph Potchen, Division Chief
> > P.O. Box 30755
> > Lansing, MI 48909
>
> If to AmeriGas:
>
> > AmeriGas Propane, L.P.
> > Attn:  General Counsel
> > 460 N. Gulph Road
> > King of Prussia, PA 19460

8.2  AmeriGas shall promptly notify COD, in writing, of any change of address or person to whom notice hereunder is to be sent.

12

## IX. General Provisions

9.1 This Agreement is binding upon, inures to the benefit of, and applies to the parties and their successors-in-interest. This Agreement does not bind other agencies, boards, commissions or offices of the State of Michigan or any Divisions of the Attorney General's office that may represent such entities.

9.2 This Agreement does not affect the rights of any private party to pursue any available remedy or remedies pursuant to applicable law. Further, this Agreement does not create any private right or cause of action to any third party.

9.3 This Agreement does not constitute an approval by the Attorney General of any of AmeriGas' sales practices and AmeriGas must not make any representation to the contrary.

9.4 No change or modification of this Agreement is valid unless in writing and signed by all parties.

9.5 Any party to this Agreement may apply to the 2nd Judicial Circuit Court, County of Berrien, State of Michigan, which retains jurisdiction, for such further orders as may be necessary or appropriate for the construction or modification of any of the provisions hereof, or to enforce compliance herewith.

9.6 Unless a temporary restraining order is sought, COD will make reasonable efforts to provide written notice in the event that COD believes AmeriGas to be in noncompliance with any provision of this Agreement, setting forth the basis for such belief. Notwithstanding the foregoing, such notice shall not

13

be deemed to be a jurisdictional prerequisite to institution of any enforcement action.

## X. Signatories

10.1   Each undersigned individual represents and warrants that he or she is fully authorized by the party he or she represents to enter into this Agreement and to legally bind such party to the terms and conditions of this Agreement.

## XI. Effective Date

11.1 This Agreement is effective on the date it is signed by both parties.

**Bill Schuette, Attorney General,
on behalf of the People of the State of Michigan**

Dated: _____10/16/14_____   By: _____

Joseph E. Potchen (P49501)
Darrin Fowler (P53464)
Assistant Attorneys General
Corporate Oversight Division
P.O. Box 30213
Lansing, MI 48909

**AmeriGas Propane, L.P.
By: AmeriGas Propane, Inc. its general partner**

Dated: _____10.15.14_____   By: _____

Steve Samuel
Vice President and General Counsel
AmeriGas Propane, L.P.
460 N. Gulph Road
King of Prussia, PA 19406

14

# <u>EXHIBIT B</u>

## Affidavit of Alexander Morese

## AFFIDAVIT – ALEXANDER MORESE

1. My name is Alexander Morese; I am the Manager of the Energy Security section within the State Response Division at the Michigan Agency for Energy (MAE). I became an analyst within this section at the Michigan Public Service Commission in November 2002, worked in the newly formed Renewable Energy section from 2008-2010, and became manager of Energy Security (formerly Energy Data and Security) in May of 2010.

   The Energy Security section is responsible for developing security and emergency management procedures that assure the reliability and security of the State's energy needs. This includes: tracking the adequacy of the State's energy supply; preparing energy and utility forecasts; monitoring prices; quantifying policy and regulatory consideration; and providing subject matter expertise on petroleum markets. This expertise is used to provide technical consult to other state agencies on the impact of energy supply disruptions and the consequences to Michigan residents. Duties also include: maintaining energy emergency plans, and working with the Michigan State Police on critical energy infrastructure protection and homeland security.

2. The State Heating Oil and Propane Price (SHOPP) Survey (EIA-877) & Report compiles average weekly retail supplier prices for heating oil and propane from across the state during the winter heating season. This provides useful information to consumers and more importantly helps establish situational awareness of the deliverable fuels market during the time of the year when populations that rely on these fuels are most vulnerable. The federal Energy Information Administration (EIA) provides a grant to support these efforts and all data collected is reported back to EIA weekly. By conducting surveys by staff in-state, the EIA/SHOPP survey fosters relationships between the public and private sectors. These relationships prove useful during energy emergencies and allow staff to dive deeper into issues affecting demand, supply, and prices.

   As manager, I oversee the weekly survey, ensure that correct data is uploaded to EIA and the MPSC website, formulate ad-hoc questions to be used during or in anticipation of energy emergencies, and edit the season-ending SHOPP report. Additional duties include ensuring grant objectives are met, timelines are followed, and paperwork is properly submitted.

3. In conducting the SHOPP survey, a specific methodology is followed. The EIA provides the MAE with a list of survey participants. The sampling frame for heating oil distributors was an established list of approximately 11,000 fuel oil dealers and distributors from Form EIA-863, "Petroleum Product Sales Survey" (1989). EIA officials used a one-way stratified sample design for Michigan based on No. 2 residential distillate sales volumes. Due to limited propane supplier

information, EIA statisticians developed two strata for propane dealers – large, multi-state dealers comprised the first, and a random sampling comprised the second (many sources were used to collect the names and addresses for the random sampling). EIA officials selected 21 fuel oil distributors and 27 propane dealers to participate in the 2015-2016 survey for Michigan.

Currently, two MPSC staff members under my supervision, Robin Barfoot (primary) & Sudha Kannan (backup) collect data for the SHOPP report every Monday morning during the heating season, October – March. If necessary, calls are made by backup staff or made on Tuesday mornings due to holidays or scheduling conflicts. All pricing data is collected into a password protected MS Excel spreadsheet stored on a State of Michigan network drive.

4. The SHOPP data collected each week for propane is the residential credit price, excluding taxes[1]. This represents the price a customer would receive on that day if requesting keep-full (not will call) service with the supplier. Prices do not include any special discounts, nor do they represent a locked-in seasonal price. The price parameters are made clear to all respondents before the season through an introductory letter from the EIA. Sometimes throughout the season there is confusion over the requested price (e.g., a new person answers the phone) and we reiterate the specific type of price we are looking for.

5. Once all prices are collected for the week, an MAE staff member logs into the secure EIA website and enters the current week's data. Some companies choose to report their prices directly to EIA. In these instances, the MAE copies the data from the website into our spreadsheet and computes a simple average for the week. This average is then posted to the MPSC website[2].

Given that the SHOPP survey is a sample, the average SHOPP price may not always represent the price consumers see locally. Rather the average price provides a baseline for the State, and the highs and lows of the complete survey establish a statistically significant range of prices for the State over time. The following table shows the weekly average propane prices as calculated through the 2015-2016 survey, as well as the highest and lowest reported prices. Thus, this table shows the range of reported prices upon which the average was calculated.

| | 10/5 | 10/12 | 10/19 | 10/26 | 11/2 | 11/9 | 11/16 | 11/23 | 11/30 | 12/7 | 12/14 | 12/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AVERAGE/GAL | $1.63 | $1.63 | $1.63 | $1.61 | $1.62 | $1.63 | $1.63 | $1.63 | $1.65 | $1.65 | $1.65 | $1.65 |
| HIGH PRICE | $3.00 | $3.04 | $2.98 | $3.07 | $2.97 | $2.97 | $2.90 | $2.96 | $3.03 | $3.01 | $2.97 | $2.97 |
| LOW PRICE | $0.88 | $0.88 | $0.88 | $0.88 | $0.81 | $0.81 | $0.84 | $0.84 | $0.82 | $0.82 | $0.87 | $0.73 |

| | 12/28 | 1/4 | 1/11 | 1/18 | 1/25 | 2/3 | 2/8 | 2/15 | 2/22 | 3/3 | 3/7 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| AVERAGE/GAL | $1.66 | $1.66 | $1.68 | $1.68 | $1.71 | $1.66 | $1.71 | $1.70 | $1.71 | $1.71 | $1.70 |
| HIGH PRICE | $2.96 | $2.57 | $2.97 | $2.97 | $2.69 | $2.70 | $2.67 | $2.66 | $2.66 | $2.67 | $2.70 |
| LOW PRICE | $0.74 | $0.77 | $0.74 | $0.72 | $0.69 | $0.74 | $0.76 | $0.76 | $0.77 | $0.77 | $0.82 |

[1] SHOPP FAQ - http://www.eia.gov/petroleum/heatingoilpropane/faq_stateofficials.cfm
[2] SHOPP Page - http://www.dleg.state.mi.us/mpsc/reports/shopp/

Page 2 of 5

The table below highlights the state of Michigan averages with and without AmeriGas in comparison to the average retail prices for AmeriGas as reported to the EIA (AmeriGas reports directly to EIA).



The SHOPP survey records three AmeriGas prices for the State of Michigan. AmeriGas maintained the highest recorded price of all survey respondents per week from October 5, 2015 through March 7, 2016. The chart below compares the highest AmeriGas price to both the highest non-AmeriGas price and to the state average. For example, the data point for Oct. 26, 2015 shows that the AmeriGas price was approximately 90% higher than the statewide average price and 50% higher than the highest non-AmeriGas price at that time.



Page 3 of 5

6. In an effort to monitor Michigan's energy supply beyond winter fuel prices, section staff also monitor winter weather, petroleum inventories and when possible, wholesale petroleum prices. According to the National Oceanic and Atmospheric Administration (NOAA) the 2015/2016 Michigan winter (October – March) was about 16 percent warmer than normal based on a 30 year average. As one might expect, this lead to lower than normal demand by consumers and higher inventory levels throughout the winter season.



As shown in the figure below, the heating season began with U.S. propane stocks well above the five-year average range, a carry through from the previous year. According to EIA, US propane inventory stood at approximately 100 million barrels at the beginning of the heating season in 2015, about 19 million barrels more than propane stocks a year earlier.



U.S. propane stocks remained above the five year-range throughout the winter, closing the heating season on March 28, 2016, with 62.8 million barrels, almost 15 percent higher than the same period the previous year.

Beginning the end of winter 2014/2015, wholesale propane prices have remained rather muted, maintaining an average cost of less than 60 cents per gallon at one of the largest trading hubs, Mont Belvieu, TX. While wholesale spot price is not the only indicator of retail prices, it is an important component of what makes up a retail price.



7. In addition to monitoring Michigan's energy supply, section staff maintain responsibility of tracking the petroleum market. No other State agencies track the supply and demand of petroleum products (gasoline and diesel), the refineries that process these products from crude oil, and the pipelines that deliver these products across the state in the same manner as the MAE. Although not regulated by the MAE, it is imperative to have an understanding of the petroleum market because it is inextricably tied to natural gas, electricity, and the overall health and safety of Michigan residents.

FURTHER, AFFIANT SAYTH NOT.

_Alexander A Morese_
Alexander Morese

Subscribed and sworn to before me
this 20ᵗʰ day of July, 2016.

_Linda S. Ahens_, Notary Public, acting in Ingham
Jackson Ingham County, Michigan
Commission Expires: 12-28-2016

# EXHIBIT C

## Michigan Office of Attorney General
## Consumer Complaints

# Michigan Office Of Attorney General Consumer Complaint Form

**Web Complaint Number: 2015-cp11021826104-A**          **Submitted: 11/2/2015 6:26:58 PM**

## Consumer Information

Your Last Name: M███          First Name: William          M.I.: P

Your Street Address: ███████          City: Olivet

Your State: MI          Zip Code: 49076

Your County: Eaton

Your Home Phone: ███████          Your Work Phone:          Ext.:

Fax Number:          E-mail Address: ███████

Are you a veteran or active-duty service member?

## Primary Company Or Person Your Complaint Is About

Company or Person? Company

Complainee Last Name:          Complainee First Name:

Company Name: Amerigas

Street Address: 1005 Jp Sullivan Drive          City: Eaton Rapids

State: MI          Zip Code: 48827

County:          Phone: 8007781075

Fax Number:          E-mail Address:

Web Site Address: www.amerigas.com          Product Offered: Propane

Primary Jurisdiction: Licensed Business/Person

## Secondary Company Or Person Your Complaint Is About

Company or Person? Company

Complainee Last Name:          Complainee First Name:

Company Name:

Street Address:          City:

State: MI          Zip Code:

County:          Phone:

Fax Number:          E-mail Address:

Web Site Address:

## Motor Vehicle Warranty Complaint Information

Vehicle Make, Model, and Year:

Vehicle VIN No.:

## Complaint Information

Incident Date\Time: 10/21/2015 1:00:00 AM

Incident Location:

Approximate Monetary Value:

Did you sign a contract?

Where did you sign this contract?

Is a court action pending?

Do you have an attorney representing you on this matter?

Are you willing to testify in court regarding this complaint? True

Did you complain directly to the business?

What was the response from the business?

If no complaint was given to the business directly, why?

Was this complaint filed with any other agencies?

Do you think were targeted for unfair treatment due to your status as a veteran or
active-duty service member?

## Complaint Detail/Inquiry Information

To Whom It May Concern: On October 21st, 2015 my current propane provider, AmeriGas, refilled my propane tank at a price
significantly above current Michigan propane prices. The price per gallon of the fill up is compared to the weekly average propane costs
in Michigan as stated on Michigan's Department of Licensing and Regulatory Affairs website. My Delivery Price Per Gallon: 10/21/15
$2.919/Gal LARA State Heating Oil and Propane Program Average Weekly Prices for October 10/05/15 $1.61/Gal 10/12/15 $1.63/Gal
10/19/15 $1.64/Gal 10/26/15 $1.61/Gal As you can see, I was charged a rate 78% higher than the highest weekly average in November.
In fact, while current propane prices are down significantly compared to the previous year, I was charged a rate that is still 38% higher
than the average propane price at this time last year. I understand the prices may fluctuate, to some extent, depending on location and
company. However, this price appears substantially higher than any potential underlying business costs might justify. The overall cost
for me with a 235.8 Gallon fill up, before fees and taxes is $688.30. This results in an additional $301.59 cost compared to a fill up at
$1.64. Please let me know if there is anything I can do to help expedite a resolution to the apparent price gouging practiced by
AmeriGas. Feel free to call or email me at any time. Sincerely, Bill M███ Email: ███████████  Mobile: ███████

[False] Check if you want to send documentation. After you submit this form you will be provided with a postal mail address, and
facsimile number, to which you may send documents.

[False] Check if this referral is just to give us information and you do not need us to respond to you directly.

[False] Check if you want to sign up for the Consumer Protection Listserv.

[False] Check if you want to sign up for the AG Press Release Listserv.

[False] Check if you want to sign up for the Attorney General Opinions Listserv.

(*)I certify that the information on this form is true and accurate to the best of my knowledge.

(*)I consent to releasing to the Michigan Attorney General any information or document relative to the investigation of this complaint. By
checking this box, I also certify that I have had the opportunity to review the Michigan Attorney General Privacy Policy before submitting
this complaint.



*America's Propane Company*

January 11, 2016

<u>**VIA EMAIL AG-COD@michigan.gov**</u>
Joseph E. Potchen
Division Chief
Corporate Oversight Division
Michigan Attorney General
P.O. Box 30213
Lansing, MI 48909

      RE:  <u>William M███ - 2015-cp11021826104-A</u>

Dear Mr. Potchen:

      Thank you for giving AmeriGas Propane, L.P. ("AmeriGas") the opportunity to respond to the above-referenced complaint. AmeriGas takes all complaints from its customers seriously. In his complaint, Mr. M███ alleges that AmeriGas is price gouging. After an investigation of the allegations provided in this complaint, AmeriGas has the following response.

      As a threshold, AmeriGas denies that it is engaging in price gouging. We understand and appreciate that some of our customers may not be aware of how their propane is priced and therefore may suspect our prices are too high. With respect to specific allegations in Mr. M███ complaint, we conducted a review of his account and provide the following response.

      By way of background, Mr. M███ is not participating in any of our Guaranteed Price Protection (GPP) programs which allow a customer to lock in their propane at a specific price or enter into a budget pay agreement. As such, Mr. M███ is considered a market based customer and pays a price per gallon set on the date of delivery. As is common in the propane industry market based pricing is generally based upon volume and is broken down by tiers, i.e., customers are placed in tiers based on their annual usage volume. Generally, the higher the customer volume, the lower their price per gallon will be. This is because customers who use a smaller volume of propane on a yearly basis have a higher cost of delivery. Mr. M███ usage has declined over the past three years with 1099.4 gallons taken in 2013, 764.2 gallons taken in 2014, and 477.8 gallons taken so far this season.

      Mr. M███ last delivery was on October 21, 2015 for 285.8 gallons and he was charged $2.92 per gallon. Mr. M███ was informed of our GPP programs to include AmeriLock, which is an optional program where a customer receives a fixed price for the term of the AmeriLock contract. The current rate for Amerilock is $2.34 with an annual fee of $49.99. In an effort to further assist, we will provide Mr. M███ with a further discounted rate of $2.09 per gallon plus the annual fee. In addition to receiving this rate during his one year contract, Mr. M███ delivery from October 21, 2015 will be rebilled at $2.09 per gallon.

I trust that this letter adequately responds to the issues raised in the above-referenced complaint. To the extent that this is not the case, I would be happy to discuss this matter with you at your convenience. I can be reached at: (610) 768-3643 or at michelle.bimson@amerigas.com.

Sincerely,

Michelle A. Bimson
Senior Counsel

**From:** Michigan Attorney General
**To:** CP_Email1, CP_Email1 (AG)
**Subject:** FW: Amerigas
**Date:** Monday, November 16, 2015 1:36:59 PM

-----Original Message-----
From: Sally S█████ [mailto:█████████████]
Sent: Monday, November 16, 2015 11:11 AM
To: Michigan Attorney General <miag@michigan.gov>
Subject: Amerigas


Sent from my I Today Amerigas filled my propane tank. They charged me $2.83 a gallon. When I checked with other companies Avery is charging $1.29 and Lyons is charging $1.15. Something is very wrong. At 76 years of age I can't afford this price. Thank you. Sally S█████



*America's Propane Company*

December 31, 2015

**VIA EMAIL – AG-COD@michigan.gov**
Joseph E. Potchen
Division Chief
Corporate Oversight Division
Michigan Attorney General
P.O. Box 30213
Lansing, MI 48909

RE:  Sally S█████ – AG # 2015-0125122-A

Dear Mr. Potchen:

Thank you for giving AmeriGas Propane, L.P. ("AmeriGas") the opportunity to respond to the above-referenced complaint. AmeriGas takes all complaints from its customers seriously. In her complaint, Ms. S█████ expresses concern regarding propane pricing. After an investigation of the allegations set forth in this complaint, AmeriGas has the following response.

By way of background, Ms. S█████ is a forecast customer, meaning her propane usage is modeled in our computer system and we schedule deliveries based on a variety of factors including: history of usage, local temperatures ("degree days"), the size of a customer's tank and number and size of propane appliances connected to the propane system at the customer's location. She also is not participating in any of our Guaranteed Price Protection (GPP) programs which allow a customer to lock in their propane at a specific price or enter into a budget pay agreement. As such, Ms. S█████ is considered a market based customer and pays a price per gallon set by the company on the date of delivery.

A review of Ms. S█████ record shows that she received a delivery on September 12, 2015 at $2.32 per gallon. As a courtesy, on September 22, 2015 we gave Ms. S█████ a one-time adjustment of $1.99 per gallon. On that same day our Ypsilanti, MI district called and left Ms. S█████ a message requesting that she return the call to discuss pricing options. A return call was never received; therefore when her next forecasted delivery was made on November 16, 2015 it was billed at the market rate of $2.82 per gallon. In an effort to assist Ms. S█████ in budgeting her propane costs and potentially receiving a below market rate we again invite Ms. S█████ to review our GPP programs by contacting our District Manager Richard Schneider at our Ypsilant, MI office at 1-800-649-1418.

In addressing Ms. S█████ concern that other companies offer lower pricing, it is a common practice in the propane industry to offer "first fill" or very attractive introductory pricing to new customers that is at or below market rates as a vehicle to attract new business. This "first fill" pricing is markedly different from a competitor's normal market based pricing.

I trust that this letter adequately responds to the issues raised in the above referenced complaint.  To the extent that this is not the case, I would be happy to discuss this matter with you at your convenience.  I can be reached at:  (610) 768-3643 or michelle.bimson@amerigas.com.

Sincerely,

Michelle A. Bimson
Senior Counsel

# Michigan Office Of Attorney General Consumer Complaint Form

Web Complaint Number: 2016-cp01111032182-A          Submitted: 1/11/2016 10:32:53 AM

## Consumer Information

Your Last Name: Baker                                First Name: ███████          M.I.:
                                                                                   M
Your Street Address: ████████████                    City: Bronson
Your State: MI                                       Zip Code: 49028
Your County: Branch
Your Home Phone: ████████            Your Work Phone: ████████          Ext.:
Fax Number:                          E-mail Address: ███████████████
Are you a veteran or active-duty service member?

## Primary Company Or Person Your Complaint Is About

Company or Person? Company
Complainee Last Name:                                Complainee First Name:
Company Name: Amerigas
Street Address: 681 E. Chicago Road                  City: Coldwater
State: MI                                            Zip Code: 49036
County: Branch                                       Phone: 5172784521
Fax Number:                                          E-mail Address:
Web Site Address: www.amerigas.com                   Product Offered: Propane
Primary Jurisdiction: Licensed Business/Person

## Secondary Company Or Person Your Complaint Is About

Company or Person? Company
Complainee Last Name:                                Complainee First Name:
Company Name:
Street Address:                                      City:
State: MI                                            Zip Code:
County:                                              Phone:
Fax Number:                                          E-mail Address:
Web Site Address:

## Motor Vehicle Warranty Complaint Information

Vehicle Make, Model, and Year:
Vehicle VIN No.:

## Complaint Information

Incident Date\Time: 1/11/2016 9:30:00 AM
Incident Location: Our Residence
Approximate Monetary Value: 815.00
Did you sign a contract? False
Where did you sign this contract? Amerigas, 22 years ago
Is a court action pending? False
Do you have an attorney representing you on this matter? False
Are you willing to testify in court regarding this complaint? True
Did you complain directly to the business? True
                                          We are the largest PropaneCompany in the Nation. We offer
What was the response from the business? many services that the other local Propane suppliers don't. The

D-008

Quote they gave yoy was for new customers.

If no complaint was given to the business directly, why? ...
Was this complaint filed with any other agencies? False
Do you think were targeted for unfair treatment due to your False
status as a veteran or active-duty service member?

## Complaint Detail/Inquiry Information

On December 26, 2015, I phoned the Amerigas customer service department to schedule a fill up. On January 4, 2016, the delivery truck/serviceman put 275.9 gallons in our leased tank. Imagine our surprise when we received the invoice, charging us $276.9 per gallon. I phoned 2 other Propane Companies in Coldwater, getting quotes of 134.9 and 139.9 per gallon. When questioned about if that is a new, first time fill up cost, I was told no.... it was the market price on 1/8/2016. I phoned the Amerigas customer service department again, on 1/11/2016, at the Coldwater office, spoke to Lisa,and was told that no, this was not a mistake and that the price I was quoted by the other companies were for new customers. When I asked her why it was twice as much as any one else, she stated that Amerigas was the largest propane company in the Nation and that they offered many more services than the local companies. So, I said "that gives you the right to take advantage of your customers ?" Instantly, she said "Well 2 years ago when everyone else was running out of propane, we didn't '" To that I replied " Wow... that as when you were price gouging, and the Gov't forced you to pay customers back ' I'll be filing a complaint with the Attorney General, and as soon as we pay your ridiculous high price, I'll call for you to come and remove your tank, ending 23 years of our patronage '" Is this legal ??? How is this justified ?? I look forward to your response.

[False] Check if you want to send documentation. After you submit this form you will be provided with a postal mail address, and facsimile number, to which you may send documents.

[False] Check if this referral is just to give us information and you do not need us to respond to you directly.

[False] Check if you want to sign up for the Consumer Protection Listserv.

[False] Check if you want to sign up for the AG Press Release Listserv.

[False] Check if you want to sign up for the Attorney General Opinions Listserv.

(*)I certify that the information on this form is true and accurate to the best of my knowledge.

(*)I consent to releasing to the Michigan Attorney General any information or document relative to the investigation of this complaint. By checking this box, I also certify that I have had the opportunity to review the Michigan Attorney General Privacy Policy before submitting this complaint.



*America's Propane Company*

February 5, 2016

**VIA EMAIL AG-COD@michigan.gov**
Joseph E. Potchen
Division Chief
Corporate Oversight Division
Michigan Attorney General
P.O. Box 30213
Lansing, MI 48909

      RE:  **Karole B█████ – 2016-cp01111032182-A**

Dear Mr. Potchen:

      Thank you for giving AmeriGas Propane, L.P. ("AmeriGas") the opportunity to respond to the above-referenced complaint. AmeriGas takes all complaints from its customers seriously. In her complaint, Ms. B███ alleges that AmeriGas is price gouging. After an investigation of the allegations provided in this complaint, AmeriGas has the following response.

      By way of background, Ms. B███ has been a customer since 1993 and is not currently participating in any of our Guaranteed Price Protection (GPP) programs which allow a customer to lock in their propane at a specific price or enter into a budget pay agreement. On June 16, 2015, our district office called Ms. B███ to offer her a GPP program, so she would have a locked in price, but Ms. B███ never returned this call. On January 11, 2016, our CRR again tried to offer Ms. B███ one of our GPP programs at $2.499 a gallon but was unable to because Ms. B███ hung up before the offer could be made. As such, Ms. B███ is considered a market based customer and pays a price per gallon set on the date of delivery. As is common in the propane industry market based pricing is generally based upon volume and is broken down by tiers, i.e., customers are placed in tiers based on their annual volume. Generally, the higher the customer volume, the lower their price per gallon will be. This is because customers who use a smaller volume of propane on a yearly basis have a higher cost of delivery.

      As a threshold matter, AmeriGas denies that it is engaging in price gouging. We understand and appreciate that some of our customers may not be aware of how their propane is priced and therefore may suspect our prices are too high. AmeriGas strives to be the best propane company in the country. As such, we seek to differentiate ourselves from our competitors by providing our customers with numerous additional services beyond the delivery of propane. These services include: a driver and service technician on call 24 hours per day at our District Office, a 24-hour emergency call center, an extensive safety department which provides safety training year round to our employees, and online customer account access. Providing these services to our customers means that sometimes our prices may be higher than our competitors who do not offer the same high quality of customer service.

Ms. B███ last delivery was on January 4, 2016 for 275.9 gallons at $2.77 per gallon. Ms. B███ has an average annual usage of approximately 640 gallons as such she is considered a low volume customer. We encourage Ms. B███ to contact Lisa Aviza, her local Cold Water, MI district manager at 517-278-4521 to further discuss pricing options. Ms. Aviza will be expecting Ms. B███ call.

I trust that this letter adequately responds to the issues raised in the above-referenced complaint. To the extent that this is not the case, I would be happy to discuss this matter with you at your convenience. I can be reached at: (610) 768-3643 or at michelle.bimson@amerigas.com.

Sincerely,

Michelle A. Bimson
Senior Counsel

# Michigan Office Of Attorney General Consumer Complaint Form

**Web Complaint Number: 2016-cp01211122244-A**        **Submitted: 1/21/2016 11:22:12 AM**

## Consumer Information

Your Last Name: S█████          First Name: Renay          M.I.:
Your Street Address: █████████          City: Sand Lake
Your State: MI          Zip Code: 49343
Your County: Montclam
Your Home Phone: █████████          Your Work Phone:          Ext.:
Fax Number:          E-mail Address: █████████████
Are you a veteran or active-duty service member? False

## Primary Company Or Person Your Complaint Is About

Company or Person? Company
Complainee Last Name:          Complainee First Name:
Company Name: Holton's Gas
Street Address: 13443 Northland Dr          City: Cedar Springs
State: MI          Zip Code: 49319
County: Kent          Phone: 6166969640
Fax Number:          E-mail Address:
Web Site Address: holtons.com          Product Offered: Propane Gas
Primary Jurisdiction: None

## Secondary Company Or Person Your Complaint Is About

Company or Person? Company
Complainee Last Name:          Complainee First Name:
Company Name: Amerigas
Street Address:          City:
State: CA          Zip Code:
County:          Phone: 6507280120
Fax Number:          E-mail Address:
Web Site Address:

## Motor Vehicle Warranty Complaint Information

Vehicle Make, Model, and Year:
Vehicle VIN No.:

## Complaint Information

Incident Date\Time: 1/20/2016 2:00:00 PM
Incident Location: █████████
Approximate Monetary Value: 800.00
Did you sign a contract? False
Where did you sign this contract?
Is a court action pending? False
Do you have an attorney representing you on this matter? False
Are you willing to testify in court regarding this complaint? True
Did you complain directly to the business? True
What was the response from the business? Offered me a locked in rate contract

If no complaint was given to the business directly, why?

Was this complaint filed with any other agencies? False

Do you think were targeted for unfair treatment due to your status as a veteran
or active-duty service member? False

---

## Complaint Detail/Inquiry Information

We moved into our house in August 2014. The previous owners used Holton's gas company for propane delivery and we decided to stay with them. I have never had to deal with Propane companies because I always had natural gas before. The first year, we locked in a rate with Holton's based on a recommendation from the previous owners. We had not locked in for the 2015/2016 year. I didn't even think about contacting them for that purpose. I realized it after it was too late. We had our first large fill in December 2015 for this heating season. The price was $2.77 per gallon. We just received another fill yesterday 1/20/2016. I called Holton's to find out what the price was per gallon and was told $2.87' You can imagine my surprise when I had looked at the website for the prices around the country and our state. Average right now, in Michigan is just below $1.50' Holton's called me back this morning and offered for us to lock in a rate of $2.01 rate through 5/31/2016 as a second year customer. I asked if that rate would also cover the tank that we just received yesterday. The response, "No, it won't, we were just told by management that we can't do that"' Wow' I then called Rural Gas (I didn't realize that both Holton's and Rural are both owned by Amerigas), they told me they would be charging at the same rate that Holton's is charging. My intent for calling different companies is to find better pricing, obviously. During the phone call to Rural, the gentleman told me that Amerigas had bought propane ahead of time at the wrong price and now they are paying for it. In fact, the customers are paying for it' My next call was to Alto Gas. They are currently charging customers $1.50 per gallon. I am sick' That is nearly half of what Holton's/Amerigas is charging people. Why should the customers have to pay for their stupid mistake? My next call was back to Holton's to speak to the manager, Dave. They tell me that they spoke to me in July or August of last year and I declined to lock in at a fixed price contract. They could not have possibly talked to me at that number. With that said, Dave said that all of their calls are recorded so he is going to pull the recording and listen to the conversation. At this point, I do not know what the final outcome will be but, I am filing this complaint anyway. They are charging a ridiculous amount for their propane when everybody seems to be charging half as much. I saw some articles about Amerigas being forced by the AG to return payment plus additional monies to customers from the 2014 year for price gouging. Apparently, they did not learn their lesson. I am only looking for fair pricing on the tanks of gas that I have received from September through yesterday. One last thought, Heather who is listed in the complaint offered good customer service. She was only passing on the information that her manager had given her. I listed her name because she is the person that I spoke to. Thank you for any help that you may be able to provide.

---

[False] Check if you want to send documentation. After you submit this form you will be provided with a postal mail address, and facsimile number, to which you may send documents.

[False] Check if this referral is just to give us information and you do not need us to respond to you directly.

[False] Check if you want to sign up for the Consumer Protection Listserv.

[False] Check if you want to sign up for the AG Press Release Listserv.

[False] Check if you want to sign up for the Attorney General Opinions Listserv.

---

(*)I certify that the information on this form is true and accurate to the best of my knowledge.

(*)I consent to releasing to the Michigan Attorney General any information or document relative to the investigation of this complaint. By checking this box, I also certify that I have had the opportunity to review the Michigan Attorney General Privacy Policy before submitting this complaint.

---



*America's Propane Company*

February 16, 2016

**VIA EMAIL AG-COD@michigan.gov**
Joseph E. Potchen
Division Chief
Corporate Oversight Division
Michigan Attorney General
P.O. Box 30213
Lansing, MI 48909

      **RE:  Renay S██████ – AG#2016-cp01211122244-A**

Dear Mr. Potchen:

      Thank you for giving AmeriGas Propane, L.P. ("AmeriGas") the opportunity to respond to the above-referenced complaint. AmeriGas takes all complaints from its customers seriously. In her complaint, Ms. S████ expresses concern regarding price gouging. After an investigation of the allegations set forth in this complaint, AmeriGas has the following response.

      As a threshold matter, AmeriGas denies that it is engaging in price gouging. We understand and appreciate that some of our customers may not be aware of how their propane is priced and therefore may suspect our prices are too high. AmeriGas strives to be the best propane company in the country. As such, we seek to differentiate ourselves from our competitors by providing our customers with numerous additional services beyond the simple delivery of propane.  These services include: a driver and service technician on call 24 hours per day at our District Office, a 24-hour emergency call center, an extensive safety department which provides safety training year round to our employees, and online customer account access.  Providing these services to our customers means that sometimes our prices may be higher than our competitors who do not offer the same high quality of customer service.

      Our review of Ms. S██████ account shows that she has been a customer since September 2014. When Ms. S██████ activated her service with AmeriGas she opted to participate in AmeriLock, one of our optional GPP programs where a customer receives a fixed price for the term of the AmeriLock contract. Ms. S████ was locked in at $1.90 per gallon for one year. Before her contract expired, Ms. S████ called her local district office on August 24, 2015 to discuss her current pricing. At that time she was informed that she was in the AmeriLock program and her current locked in price would expire at the end of September 2015. She was also informed that she could renew her contract at a price of $2.01. Ms. S████ did not opt into this new contract and as a result became a market based customer. On the date of her deliveries the market rates were $2.75 per gallon and $2.87 per gallon, respectively.

As a market based customer Ms. S███ pays a price per gallon set on the date of delivery. As is common in the propane industry market based pricing is generally based upon volume and is broken down by tiers, i.e., customers are placed in tiers based on their annual usage volume. Generally, the higher the customer volume, the lower their price per gallon will be. This is because customers who use a smaller volume of propane on a yearly basis have a higher cost of delivery. Currently Ms. S███ is considered a moderate volume customer. Ms. S███ has since agreed to an AmeriLock program where she will be locked into a price of $2.01 per gallon until May of 2016.

I trust that this letter adequately responds to the issues raised in the above referenced complaint. To the extent that this is not the case, I would be happy to discuss this matter with you at your convenience. I can be reached at: (610) 768-3643 or michelle.bimson@amerigas.com.

Sincerely,

Michelle A. Bimson
Senior Counsel



Rebecca M
Three Rivers, MI 49093-9716

Here is my invoice including my Oct. fill, tank rental (which they had to take off because I could prove that I had met their requirements) and the price they charged me because it's their tank. As I said when I talked to you, my friend & neighbor got fill-ups at $1.19 to $1.35, and when I called other companies, the highest rate was $1.49. Help!

thank you

AmeriGas
1600 King Highway
Kalamazoo MI 49001-3154
800-309-2911
www.amerigas.com

# Invoice


**AmeriGas** ®

Page 1 of 2

| | |
|---|---|
| **ACCOUNT NUMBER:** 202376185 | **INVOICE NO:** 3048082370    **INVOICE DATE:** 01/14/2016 |
| **INVOICE AMT DUE:** $903.25 | **NAME:** BECKY ████ |
| **DUE DATE:** 02/13/2016 | **SERVICE ADDRESS:** ████ THREE RIVERS MI 49093-9716 |

| Previous Balance | Payments | Adjustments/Credits | New Charges | Account Balance Due | Invoice Amount Due |
|---|---|---|---|---|---|
| $564.14 | -$428.46 | -$135.68 | **$903.25** | $903.25 | **$903.25** |

## Account Activity

| Date | Ref No: | Description | Quantity | Price | Amount |
|---|---|---|---|---|---|
| 01/12/16 | 78163387 | Propane | 308.5 | $2.749/GAL | $848.07 |
| | | SITE:102672255 | | | |
| | | HazMat Fee - T | | | $10.59 |
| | | Fuel Recovery Fee-T | | | $4.86 |
| | | Will-Call Conv.Fee-T | | | $4.99 |
| | | State Sales Tax | | | $34.74 |
| | | **TOTAL NEW CHARGES** | | | **$903.25** |

*Account Balance Due includes all outstanding charges for which we have not received payment and may not reflect payments sent.*

**Continues on next page.**

MESSAGES

Your safety is our priority! For helpful tips for a worry-free winter, visit the Consumer Safety Info. section of our website.
We periodically review and revise our standard Terms & Conditions. Visit our company website to read the T&C that apply.
Tired of calling for propane? Enroll in automatic delivery and get our no run-out promise. Call your local office for details.
Earn $100 for new residential customer referrals and $150 when you refer a new business. Visit our company website to learn how.
No more checks or postage fees with our free AutoPay service! Visit the online billing site below to enroll.
Get protection for your outside propane gas lines for only $18.95 a year with LineGard. Call us to enroll.

 **Contact Us:** Billing, Service & Delivery: 800-309-2911
**Pay Online** or Enroll in our Automatic Payment program: www.amerigas.com

**THANK YOU FOR YOUR BUSINESS!**

---

AMERIGAS
1600 KING HIGHWAY
KALAMAZOO MI 49001-3154

| Account No. | Invoice No. | Invoice Date | Due Date | Amount Due |
|---|---|---|---|---|
| 202376185 | 3048082370 | 01/14/2016 | 02/13/2016 | $903.25 |

## TOTAL AMOUNT ENCLOSED   $

*Please return this portion with your payment*

☐ **Account or user address change?**
If yes, please check box and complete reverse side.

1765 1 AB 0.416   E0079X I0153 D1600016260 P3053772 0001:0002 H1


REBECCA M████Y
THREE RIVERS MI 49093-9716

REMIT TO
PO BOX 371473
PITTSBURGH PA 15250-7473

0202376185000304808237000000000903256



*America's Propane Company*

February 25, 2016

**VIA EMAIL AG-COD@michigan.gov**
Joseph E. Potchen
Division Chief
Corporate Oversight Division
Michigan Attorney General
P.O. Box 30213
Lansing, MI 48909

      **RE:  Rebecca M███████ – AG#2016-0130601-A**

Dear Mr. Potchen:

      Thank you for giving AmeriGas Propane, L.P. ("AmeriGas") the opportunity to respond to the above-referenced complaint.  AmeriGas takes all complaints from its customers seriously.  In her complaint, Ms. M████████ questions our pricing and tank rental fee. After an investigation of the allegations provided in this complaint, AmeriGas has the following response.

      In addressing Ms. M████████ concern that other propane companies offer lower pricing, we understand and appreciate that some of our customers may not be aware of how their propane is priced and therefore may suspect our prices are too high. It is common practice in the propane industry to offer a "first fill" or very attractive introductory pricing to new customers that is at or below market rates as a vehicle to attract new business. This "first fill" pricing is markedly different from a competitor's normal market-based pricing. With regard to the various prices propane users in the area are paying for propane, we do not know if these customers are receiving gas at a locked in price, at a first fill price, are members of a buying group, or are under some other pricing program that many propane companies offers. Thus, simply comparing one price offered by a competitor against AmeriGas' price is not evidence that AmeriGas is overcharging its customers.

      AmeriGas strives to be the best propane company in the country. As such, we seek to differentiate ourselves from our competitors by providing our customers with numerous additional services beyond the simple delivery of propane.  These services include: a driver and service technician on call 24 hours per day at our District Office, a 24-hour emergency call center, an extensive safety department which provides safety training year round to our employees, and online customer account access.  Providing these services to our customers means that sometimes our prices may be higher than our competitors who do not offer the same high quality of customer service.

      By way of background, Ms. M████████ has been a customer since September 2013 and is not participating in any of AmeriGas' Guaranteed Price Protection (GPP) programs. As such, Ms. M████████ is considered a marked based customer. A market based customer pays a price per gallon that is set on the date of delivery.  As is common in the propane industry market based

pricing is generally based upon volume and is broken down by tiers, i.e., customers are placed in tiers based on their annual usage volume. Generally, the higher the customer volume, the lower their price per gallon will be and customers who use a smaller volume of propane on a yearly basis have a higher cost of delivery. Ms. M███████ is considered a moderate usage customer as she received 800 gallons in 2013, 276 gallons in 2014 and 800 gallons in 2015. We encourage Ms. M██████ to contact our local office to discuss GPP programs to assist with her propane needs.

Additionally, Ms. M████████ also expressed concern regarding her Tank Rent Fee. Our records show that Ms. M██████ was erroneously charged this fee as she received more than 250 gallons annually, which is the minimum usage to avoid this fee. On October 10, 2015, a credit for this fee was applied to her account. We apologize for the error.

I trust that this letter adequately responds to the issues raised in the above-referenced complaint. To the extent that this is not the case, I would be happy to discuss this matter with you at your convenience. I can be reached at: (610) 768-3643 or at michelle.bimson@amerigas.com.

Sincerely,

Michelle A. Bimson
Senior Counsel

# EXHIBIT D

## Email dated December 4, 2015



**From:** Moore, Brian
**Sent:** Friday, December 04, 2015 11:15 AM
**To:** *DRO; *OVPs; *RSMD; Rosback, Anthony
**Cc:** Masciulli, David; Natterman, Catharine; Barry, Matt; Van Haute, Kathleen; DeFilippo, Chris
**Subject:** FW: Market Competitive Pricing Reports - November



CONFIDENTIAL PURSUANT TO MCL 445.907(6) - EXEMPT
FROM PUBLIC INSPECTION PURSUANT TO MCL 15.243(d)

AMERIGAS00392

Good Morning

The attached files contain the competitive survey results for the month of November.. For the last couple of months we've been seeing that our first fills, and first year prices are well below independents' prices. These discounted rates will affect our ability to be competitive on our regular pricing.

Below is just a sample snapshot of an independent comparison...

Thanks, Brian

Brian F. Moore

Pricing Manager

AmeriGas Propane

P: 610 337-7000 (1070)



**From:** Ro Tomassetti [mailto:RTomassetti@marketanalytics.com]
**Sent:** Friday, December 04, 2015 11:03 AM
**To:** Moore, Brian
**Cc:** Masciulli, David; Michele McKenna; Hoang Nguyen
**Subject:** Market Competitive Pricing Reports - November

CONFIDENTIAL PURSUANT TO MCL 445.907(6) - EXEMPT
FROM PUBLIC INSPECTION PURSUANT TO MCL 15.243(d)

AMERIGAS00393

# EXHIBIT E

# Terms and Conditions

# REVISED GENERAL TERMS AND CONDITIONS OF AMERIGAS PROPANE, L.P. ("Company") RELATING TO THE SUPPLY OF PROPANE AND LEASE OF PROPANE RELATED EQUIPMENT TO RESIDENTIAL CUSTOMERS

PRESORTED
FIRST CLASS MAIL
U.S. POSTAGE PAID
PERMIT NO. 8
MAILED FROM
19082

## AmeriGas®
### Driving every day℠

www.amerigas.com

(800) 843-8001

04 037 5671 200280892 100421447
SHERMAN █████N
███████████5

Thank you for trusting us with your family's safety and comfort. We greatly appreciate the opportunity to be your propane supplier. We periodically provide all of our customers with our standard terms and conditions. We continue to strive as a company to improve your service experience. We look forward to providing you with continued reliable service in the years ahead.

**THE COMPANY'S REVISED TERMS AND CONDITIONS ARE SET FORTH BELOW. PLEASE READ THIS NOTICE CAREFULLY AND KEEP IT WITH YOUR OTHER IMPORTANT RECORDS. THIS NOTICE MODIFIES OR REPLACES ALL PRIOR AGREEMENTS AND GOVERNS YOUR RELATIONSHIP WITH THE COMPANY.**

For residential customers ("you" or "your"), the new Terms and Conditions will become effective thirty days after the date of this Notice, unless your agreement does not permit such modification. In that event, this Notice will serve as a notice of termination and an offer to do business under the Terms and Conditions set forth below. If you find these new terms and conditions unacceptable, you have the right to terminate your service.

THESE TERMS & CONDITIONS REQUIRE THAT DISPUTES BE RESOLVED INDIVIDUALLY IN ARBITRATION OR SMALL CLAIMS COURT. IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS LESS DISCOVERY AND LESS APPELLATE REVIEW THAN IN COURT.

For any additional information on the Company, safety procedures, policies or local offices, please visit our website at www.amerigas.com.

**GENERAL TERMS AND CONDITIONS FOR RESIDENTIAL CUSTOMERS:**

1. **ACCEPTANCE OF THESE TERMS AND CONDITIONS.** By accepting delivery of propane or by paying any invoice from the Company, you are deemed to have accepted these Terms and Conditions.


EXHIBIT 2

**2. TERM.** Your term is the period of time for which you have agreed to maintain service with us. If you did not sign a customer contract, your term will be three years from the date on which you began service with the Company (the "Initial Term") and WILL AUTOMATICALLY RENEW YEAR TO YEAR THEREAFTER (the "Renewal Term"). **3. SAFETY INFORMATION.** Safety information has been or will be supplied in your Welcome Packet. If you did not receive the safety information, please contact us toll-free at 800-501-8953 and we will mail this information to you. Additionally, the Company's safety warnings are also contained on our website or at www.propanesafetyfirst.com. We strongly advise you to regularly visit our website to view those and other important safety warnings. **If you smell propane or experience any other adverse propane condition or safety-related matter, you should immediately extinguish any open flames, cease using any electronic devices, avoid flipping any light switches, exit any buildings serviced by your propane system, and contact your local office during normal business hours or call 1-800-263-7442 after normal business hours. We recommend purchasing a LP gas detector.**

**4. LEASED EQUIPMENT.**
**A. General Provisions.** Upon request, the Company ("us" or "our" or "we") will lease and provide to you various equipment, including a propane storage tank or cylinder, regulator(s), and related equipment (the "Leased Equipment"). In the interest of safety, you will not allow anyone to make any adjustments, connections or disconnections to the Leased Equipment or remove or pump-out the tank without our written permission. You agree that if you sell the residence where the Leased Equipment has been installed, you will notify the Company at least 30 days in advance of the sale taking place and will inform the buyer that the Leased Equipment is owned by the Company.
**B. Propane System Maintenance & Repair.** Except for the Leased Equipment, you are responsible for the maintenance and repair of your entire propane system, including compliance with applicable laws and regulations. You are required to notify the Company in the event that you disconnect the propane system or add or remove appliances so that we may conduct a Leak Check on the Leased Equipment. You will notify the Company immediately if the Leased Equipment is damaged or malfunctions, or if you experience any problems with the Leased Equipment.
**C. Tank Rent.** You agree to pay the Company annual tank rent during the period the Leased Equipment is installed at your residence. The amount of rent can vary depending on, among other things, the size of the tank, the location of the residence, and your actual annual usage. Please contact your local office if you have questions about the Tank Rent that is applicable to you.
**D. Access to Equipment.** You agree that the Company has an irrevocable right of entry and exit to your property, without prior notice, to deliver propane or to install, repair, service, or remove the Leased Equipment, or to perform any other services that the Company deems reasonably necessary. You agree to provide the Company with safe, free and unimpeded access to the Leased Equipment, including, but not limited to, access free of ice, snow, water, mud and other hazards. You will mark or otherwise identify the location of septic systems, leach pits, underground ponds and similar underground features as necessary to allow the Company to safely install the Leased Equipment, perform services, and make deliveries. You agree that the Company has no obligation to contact you to access the Leased Equipment and may suspend deliveries or service in the event the Company is unable to reasonably access the Leased Equipment. You agree to promptly surrender to the Company the Leased Equipment when your relationship with the Company is terminated for any reason.
**E. Title to Equipment.** The Leased Equipment will at all times remain the property of the Company and will not become a fixture or a part of your real property.
**F. Propane Meters.** If you have a Company propane meter installed on the Leased Equipment, you will be billed for your actual propane usage rather than per delivery. The Company reserves the right to bill you based on an estimated usage amount, and then subsequently take an actual reading, based on which: (i) you will receive a credit to the extent that the estimated amount exceeds the actual propane usage amount or (ii) you will be charged an additional amount to the extent that the actual amount of propane used exceeds the estimated amount. A monthly Meter Fee as defined in Section 6(B) below is applied to customers who have meters.
**5. PROPANE DELIVERY.** The Company offers two types of propane delivery:
**Automatic** – Under this delivery option, the Company will make periodic deliveries to you on either a fixed cycle basis or based upon a number of forecasting factors, including temperature conditions and your specific usage patterns. To ensure accurate forecasting, we request that you update the Company with any changes in your usage or appliances.
**Will Call** – Under this delivery option, the Company will make deliveries only when you request a propane delivery. The Company recommends you order a delivery when your tank is at approximately 30% to ensure a timely delivery. Most Will Call deliveries will be made within 5-10 business days after your request. The Company will assess a Will Call Convenience Fee per delivery. Weather and other factors may affect delivery times. Expedited delivery requests may be assessed a Special Trip Charge.
**6. PRICING, FEES, RATES, AND CHARGES.** You agree to pay the Company's price per gallon, plus fees, rates, and charges in effect when propane is delivered for Automatic delivery or ordered for Will Call delivery, when services are rendered, or as may be set forth on the delivery ticket.
**A) Price.** Unless you have an agreement which determines your propane price, you will be billed the Company's daily market price per gallon which is set at the Company's discretion, and which includes, among other things and without limitation, our costs to procure the propane, freight and transportation, and which may vary depending upon the volume of propane purchased by the customer, customer classification, ownership of a propane tank and competitive conditions. You may contact your local office to receive current pricing information as pricing changes frequently and without prior notice to the customer.
**B) Current Fees and Charges.** In addition to the price per gallon, the Company will apply other fees and charges to your account depending on the services requested and/or required. The fees and charges provided below are the most frequently assessed, but other fees and charges may apply depending on the services rendered. Please contact your local office for specific questions regarding fees and charges and for updated amount information. THE FEES LISTED BELOW ARE NOT GOVERNMENT IMPOSED, NOR ARE ANY PORTION OF THEM PAID TO ANY GOVERNMENT AGENCY. THE COMPANY RESERVES THE RIGHT TO CHANGE ITS FEES, RATES, AND CHARGES WITHOUT PRIOR NOTICE.
• **Early Termination Fee** – For customers with Leased Equipment, you have received certain benefits from the Company in exchange for your service commitment, which may include, but are not limited to, the installation costs of the Leased Equipment. In the event that you terminate propane service with the Company prior to the end of the Initial Term, the Company will charge you an Early Termination Fee as of the date of your request. The Early Termination Fee is $149.99.
• **Fuel Recovery Fee** – This fee, which is assessed on propane deliveries, helps to offset the significant expenses incurred by the Company in fueling its fleet of motor vehicles. This fee fluctuates on a monthly basis as the Company's cost of fuel fluctuates. For updated Fuel Recovery Fee information, please contact your local office or visit the Company's website.
• **HazMat & Safety Compliance Fee** – This fee, which is assessed on propane deliveries, helps to offset a portion of the costs the Company incurs to comply with federal, state and local government regulations, including, but not limited to, hazardous materials, homeland security, emergency preparedness and workplace safety. It is also used to fund, among other things, employee safety training and inspections, cylinder requalification, and environmental compliance. The fee as of the date of this Notice is $10.99.

(over)

(over)

- **Leak Check Charge** – This charge is applied when the Company must perform a Leak Check to verify that the propane system does not have any leaks. This test is required by law under certain circumstances, which may include: when a new piping system is installed, if the gas has been turned off for any reason or if there has been an interruption of gas service, or in the event a leak in the system is suspected. The local office can provide specifics on when a Leak Check is required and the current charge.
- **Meter Fee** – This fee is applicable to customers who are charged for their propane based on an amount of usage as measured by the Company's meter. This fee helps to offset the cost of the meter, meter reading and related administrative costs. The fee also helps to offset the costs otherwise covered by the HazMat & Safety Compliance Fee (as described above), which is not charged to metered customers. The fee as of the date of this Notice is $11.99 per month.
- **Pump-Out/Restocking Charge** – This charge is assessed when the Company is required to pump out a propane tank that contains propane in excess of five percent water capacity in order to remove a Company-owned tank from the customer's property. You can avoid this charge by continuing service with the Company until the supply of propane in the tank is less than five percent. The charge as of the date of this Notice is $149.99.
- **Reconnect Charge** – In the event that your tank is locked off by the Company due to nonpayment, this fee will be assessed to remove the lock, perform a Leak Check and put your propane system back into service. The fee as of the date of this Notice is $79.99.
- **Returned Check Fee** – This fee is intended to cover the deposit return fee assessed by financial institutions and related administrative expenses associated with the return of a customer check for insufficient funds. The Returned Check Fee as of the date of this Notice is $33.00.
- **Service Dispatch Charge** – This charge is applied when a service technician is requested at a customer's residence or other location to perform diagnostic or other service work on customer-owned equipment and appliances or to pick-up a Company-owned tank or cylinder. The Service Dispatch Charge as of the date of this Notice is $59.99. This charge will not be credited toward service work performed and additional charges may be assessed depending upon the nature of the service work required. Please check with your local office regarding the availability of appliance repair service.
- **Special Trip Charge**– This charge is incurred by customers who request deliveries within forty-eight (48) hours or non-emergency service after business hours or on weekends. This charge can vary due to the distance involved and/or the time required to meet the request and can be obtained by contacting your local office.
- **Tank Rent** – See Section 4C.
- **Will Call Convenience Fee** – This fee is assessed for propane deliveries to customers enrolled in the Will Call delivery option. Eligible customers may avoid this fee by switching to Automatic delivery. The fee as of the date of this Notice is $6.99 per delivery.

**7. PAYMENT TERMS AND LATE FEES.** If you have received credit terms from the Company, you will be billed after propane is delivered or services are rendered, unless you have enrolled in a budget payment program. If you dispute an invoice or believe your invoice is inaccurate, you must contact your local office within thirty (30) days of receipt. You agree to pay the Company's price per gallon and all fees, rates, and charges on or before the due date indicated on the invoice. If you fail to pay all amounts owed to the Company by the applicable due date, the Company may, unless prohibited by law, add a monthly late charge of 1.5% of the average daily balance until paid or a late charge of $36.00, whichever is greater. In the event you fail to make a payment on the outstanding amount owed, the Company may, after providing written notice to you, suspend service and/or place a lock on the Leased Equipment. If the Company places a lock on the Leased Equipment, all amounts outstanding (including the applicable Reconnect Fee) must be paid in full before service will be restored. The Company reserves the right to require you to pay for propane deliveries or services in advance or to post a cash deposit, which may be applied by the Company at any time in whole or in part to the outstanding balance. **Maryland Customers: If all of the outstanding amount owed is not received within 15 days after it is due, you will pay a late charge of the greater of $5.00 per month or 10% per month for the part of the outstanding amount that is late for no more than three months, or you will pay up to 1.5% per month of the payment amount that is past due.**

**8. LICENSES, PERMITS AND TAXES.** You agree to pay for all licenses, permits, and taxes associated with the sale or use of the propane and Leased Equipment or service covered by this Agreement.

**9. LIMITATION OF LIABILITY.** UNDER NO CIRCUMSTANCES WILL THE COMPANY BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, INCLUDING WITHOUT LIMITATION DAMAGE TO PLUMBING (INCLUDING WATER DAMAGE FROM FROZEN PIPES), SEPTIC SYSTEM, DRIVEWAY, LAWN AND/OR LANDSCAPING.

**10. DISCLAIMER OF WARRANTIES.** THE COMPANY MAKES NO REPRESENTATIONS OR WARRANTIES, EITHER EXPRESS OR IMPLIED, WITH RESPECT TO ANY PROPANE, TANK, CYLINDER, AND/OR RELATED EQUIPMENT OR SERVICE SUPPLIED OR PERFORMED UNDER THIS AGREEMENT OR ANY PRIOR AGREEMENT OR UNDERSTANDING, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. SOME STATES (CT, KS, ME, MS, NH, WA, AND WV) MAY NOT ALLOW THIS EXCLUSION OF IMPLIED WARRANTIES, SO THE ABOVE EXCLUSIONS MAY NOT APPLY TO CUSTOMERS IN THOSE STATES.

**11. TERMINATION OF PROPANE SERVICE.** Unless otherwise specified, your propane service may be terminated for convenience at the end of the Initial Term or Renewal Term upon the provision of thirty (30) days prior written notice to the Company.
- In the event service is terminated prior to the end of the Initial Term, the Company will charge you an Early Termination Fee, as outlined in Section 6(B). The Company may also charge you a Service Dispatch Charge, the Pump-Out/Restocking Charge if the supply of propane remaining in the tank is greater than 5% water capacity, and the HazMat and Fuel Recovery Fee, if applicable.
- If service is terminated after your Initial Term, the Company will charge you a Service Dispatch Charge, the Pump-Out/Restocking Charge if the supply of propane remaining in the tank is more than 5%, and the HazMat and Fuel Recovery Fee, if applicable.
- Unless required by law, the Company does not repurchase propane remaining in the tank or provide customer refunds for any unused propane. The Company, may however, in its sole discretion, repurchase the propane remaining in the tank in certain circumstances. If the Company determines to repurchase the remaining propane, the repurchase price will be based upon the lower of the price per gallon that you paid or the Company's current daily market price.
- The Company may terminate service with you at any time, without prior notice, if you fail to satisfy any of these Terms and Conditions or if the Company determines, in its sole discretion, that a condition exists that poses a health or safety threat.
THE TERMINATION FEES LISTED IN THIS SECTION 11 ARE NOT APPLICABLE TO NEVADA RESIDENTS.

**12. EXCUSED PERFORMANCE.** The Company will not be responsible for any delay or damages caused by events or circumstances beyond its reasonable control, including without limitation, acts of God, fire, storms, floods, labor disputes, wars, hostilities, terrorism, compliance with laws or regulations, the Company's inability to obtain propane or equipment from its customary suppliers, terminal, refinery or pipeline disruptions, allocation programs or lack of or inadequate transportation facilities. Under any of these or similar circumstances, the Company may allocate propane and equipment among its Customers in any manner that the Company, in its sole judgment, deems reasonable.

**13. CHANGES TO THE TERMS & CONDITIONS.** The Company issues Terms and Conditions, which include fees, rates, and charges, which may be changed without prior notice, at any time by giving you prior written notice of the change(s). The notice may be in the form of a bill insert, email, or other written notification. By accepting delivery of propane or by paying any invoice, fees, rates, or charges after you have been given notice of the change(s), you will be deemed to have agreed to the change(s). These Terms and Conditions may not be modified orally.

**14. CUSTOMERS WITH UNDERGROUND LEASED TANKS.** At the time of installation and removal of the Leased Equipment, you will mark or otherwise accurately identify the location of all underground systems that are not marked by your State's "Call Before You Dig" program, including, but not limited to, sprinkler lines, septic systems, leach pits, underground ponds and similar underground features. You are responsible for all costs of the excavation and removal of the Leased Equipment and the Company is not responsible for furnishing fill, resurfacing, landscaping or restoring your property to its previous condition upon removal. You will be billed on an hourly basis for this work with local labor rates prevailing, unless other arrangements are provided. The charge to remove an underground tank can vary greatly and is affected by numerous factors, including the size of the tank, access to the tank, the soil conditions and other impediments. The Company may at its option charge you for the value of the underground tank in lieu of physically removing the tank from your property.

**15. CUSTOMERS WITH RESIDENCES THAT ARE NOT OCCUPIED YEAR-ROUND.** If you are enrolled in the Company's Automatic delivery program, we will make periodic deliveries to your vacation/seasonal residence based upon a number of factors, including temperature conditions and the number and types of propane appliances in your vacation/seasonal residence. **However, it is your responsibility to notify us if your tank percentage falls below 30%.** Moreover, you must notify your local office if you should change any propane appliances, use your vacation/seasonal residence more than customary, or if any other change or development occurs that may cause your residence to use more propane gas than customary. We do not accept responsibility for any damage caused by your failure to notify your local office of a delivery request. ADDITIONALLY, THE COMPANY IS NOT LIABLE FOR DIRECT DAMAGES TO PERSONAL AND REAL PROPERTY (INCLUDING, BUT NOT LIMITED TO, DAMAGE RESULTING FROM FROZEN PIPES) THAT OCCUR AS A RESULT OF YOUR INCREASE IN USAGE OR YOUR FAILURE TO PROVIDE ADEQUATE ADVANCED NOTICE OF A NEED FOR A DELIVERY TO AVOID THE EXHAUSTION OF YOUR PROPANE SUPPLY.

**16. CLAIMS AND ARBITRATION.**
**A. Arbitration Agreement.** Upon the election of either party, a Dispute shall be resolved by binding arbitration. "Dispute" means any claim or controversy arising from or relating to the relationship between you and the Company, including without limitation any and all: (1) claims for relief or theories of liability, whether based in contract, tort, statute or otherwise; (2) claims against the Company or its parents, subsidiaries, affiliates, predecessors, successors or assigns and any of their directors, officers, employees and agents; (3) claims that arose before this Agreement; (4) claims that arise after the expiration or termination of this Agreement; and (5) claims that are the subject of a purported class action litigation. "Dispute" shall not, however, include: (1) issues relating to the scope, validity or enforceability of this arbitration agreement; (2) claims filed by you or the Company on an individual basis in small-claims court if the amount claimed is within the jurisdiction of that court; or (3) claims filed by or on behalf of the Company to collect money you owe the Company.
**B. Right to Reject this Agreement or Changes to this Agreement.** Notwithstanding anything in this Agreement to the contrary, you may reject this arbitration agreement or future changes to this arbitration agreement. To do so, you must send the Company written notice by certified mail postmarked no later than thirty (30) days after your first receipt of this arbitration agreement (if rejecting the arbitration agreement) or notice of the change (if rejecting changes to the arbitration agreement) to Box 965, Valley Forge, PA 19482, Attn: General Counsel. Your decision will not adversely affect your relationship with or receipt of goods or services from the Company.
**C. Procedures for Arbitration.** This arbitration agreement is governed by the Federal Arbitration Act. Arbitrations shall be administered by the American Arbitration Association ("AAA") pursuant to its Consumer Arbitration Rules (collectively the "AAA Rules") as modified by the version of this arbitration agreement that is in effect when notice of a Dispute is given. If your claim is less than $10,000, you may choose whether the arbitration will be decided on the papers or after a telephonic or inperson hearing.
**D. Right to Attorneys' Fees and Costs.** You may hire an attorney to represent you. You are responsible for your attorneys' fees and costs. You may recover them from the Company to the same extent as in court.
**E. Waiver of Jury Trials and Class Actions.** IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR RATHER THAN A JUDGE OR JURY. WHETHER IN ARBITRATION OR COURT, YOU AND THE COMPANY WAIVE THE RIGHT TO PROSECUTE OR PARTICIPATE IN A CLASS ACTION, COLLECTIVE ACTION, OR OTHER REPRESENTATIVE ACTION. UNLESS YOU AND THE COMPANY AGREE OTHERWISE IN WRITING, THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION BASIS, AND NEITHER THE ARBITRATOR NOR THE JUDGE MAY CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS. THE ARBITRATOR/JUDGE MAY AWARD RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF TO THAT INDIVIDUAL PARTY. THIS CLASS ACTION WAIVER IS A MATERIAL AND ESSENTIAL PART OF THIS AGREEMENT AND CANNOT BE SEVERED FROM THIS ARBITRATION AGREEMENT.
**17. SEVERABILITY.** In the event that any provisions of this Agreement are determined to be invalid under applicable law or unenforceable by a court with appropriate jurisdiction, such provision shall be deemed to be restated to reflect, as nearly as possible, the original intention of this Agreement in accordance with applicable law. The remaining terms will remain unaffected by the invalid or unenforceable term, and each such term will continue to be valid and enforceable to the fullest extent of the law.
**18. NOTICE.** Any notice by you shall be sent by U.S. mail, postage prepaid, to the Company at Box 965, Valley Forge, PA 19482, Attn: Customer Service. Notice to you may be in the form of a bill insert, stand-alone mailing, email or other written notification.
**19. WAIVER.** If we delay in exercising any of our rights, the Company will not be prevented from exercising our rights at a later date. The Company's waiver of any breach of this Agreement at any time shall not excuse future breaches by the customer.
**20. SURVIVAL.** Paragraphs 1, 4, 7, 9, 10, 11, 14, 16 and 18 shall survive termination of your relationship with the Company.
**21. TERMS & CONDITIONS.** From time to time, the Company issues Terms & Conditions. The issuance of the Terms & Conditions will replace the Agreement thirty (30) days after your receipt or upon the effective date listed on the Terms & Conditions, whichever is later. By accepting delivery of propane, or by paying any invoice, fees, rates, or charges, you are deemed to have accepted the Terms & Conditions and does not require your signature. Please contact your local office for updated fees rates and other charges. You can also find a copy of the amounts of updated fees, rates and other charges on the Company's website.
**22. CUSTOMER OWNED EQUIPMENT.** The following provisions do not apply to Customer-owned equipment:
Paragraph 4: • Leased Equipment
Paragraph 6(B): • Early Termination Fee and Pump-Out/Restocking Charge as it relates to the pick-up of the Company-owned Equipment; however, the remaining provisions of this paragraph apply.
Paragraph 8: • Licenses, Permits and Taxes as it relates to permits for tank installation; however, the remaining provisions of this paragraph apply.
These Terms and Conditions shall apply to customers in all States except where specifically prohibited by law. THESE TERMS & CONDITIONS DO NOT APPLY TO CUSTOMERS IN CONNECTICUT, NEW JERSEY OR VERMONT. TERMINATION FEES NOT APPLICABLE TO NEVADA RESIDENTS.
November 1, 2017, effective December 1, 2017.

# EXHIBIT F

## Leadership Document

# AmeriGas.
### Driving every day℠

Frequently Asked Questions

**Topic:**  Residential Terms & Conditions (effective December 1, 2015)
Internal Considerations and FAQs
**Audience:**  AmeriGas employees ONLY

## Overview:

This document is intended for front-line personnel who interact with and support our customers' service needs. As we continue to emphasize our Five Guiding Principles, we must also ensure our customers are fully informed regarding our policies, so they know what to expect from us. As our business and the industry change, issuing new Terms & Conditions (T&Cs) is the best way to ensure we reach our entire customer base. With the issuance of the T&Cs, it gives us an opportunity to review our business strategy and make changes, if necessary.

Recently, after careful consideration of the requirements of both our business and our full customer base, decisions were made to balance the need to recover increasing business costs and maintain financial stability, with our mission to provide superior customer service and value.

Please review this document; it provides useful information to put you in the best position to answer your customers' questions regarding our revised Terms & Conditions.

We recognize that change is difficult, and the introduction of a new fee and/or changes to our customer refund policy may bring up questions or concerns from our customers. Remember: we have the proven ability to direct and implement change. For example: with the intention of better educating our customers, we were among the first to publish our terms and conditions online, including publishing our fees. This action resulted in other companies following suit, thus better educating all propane consumers of their rights and responsibilities.

AmeriGas has a history of leading the industry in new directions; like when AmeriGas became the first major propane company to introduce a hazardous materials fee. This now-common practice was achieved through the dedicated efforts of our front-line personnel to lead the way with implementation; a fee that allows us to carry out our industry-leading safety program, including the one-of-its-kind Pre-Fill Inspection (PFI) policy.

Given AmeriGas' leadership position in the propane industry, you're called upon once again to lead and implement change. The discussion points below are for front-line personnel only; to share the reasoning behind the current changes so you can more fully understand and better support the company's position. These considerations are offered to help you satisfy your own questions as you prepare for customer questions and potential objections or concerns.

Please refer to the separate "Customer FAQs" document and e-learning training available on HRsmart (Terms and Conditions 2016) to further assist you with customer conversations.



*Company Confidential & Proprietary – Do Not Share*

**Why are we changing the Terms & Conditions again; didn't we just send one out in April 2014?**
Our terms and conditions are in a "living" document in that it will continually evolve. This revision is necessary primarily to disclose and explain the new Early Termination Fee and Will Call Convenience Fee and to further define other fees and charges to reduce customer confusion.

Additionally, as we continue to acquire new customers through acquisition and redefine business needs, it's important that all customers are bound by a common set of terms so that expectations are clearly defined, and we're treating everyone in a fair and consistent manner. This also makes it easier for our customer-facing employees to conduct business since shared practices and policies minimize the possibility of confusion or misinterpretation.

**Based on previous experiences, what should we expect regarding customer response?**
We're all familiar with receiving notices such us this. While it is our intention and hope that all of our customers will review our Terms & Conditions, many will likely put it with their other papers and only look at it when and if they have a specific question. However, we expect some customers will read the entire document and call asking for information on how the changes affect them. You should expect an increase in phone volume in November as mailings arrive at customers' homes. Also, as customers begin to incur new fees/charges starting December 1, a steady flow of calls related to the new terms will likely continue through the next several months.

## Will Call Convenience Fee

**The Will Call Convenience Fee may negatively impact a large segment of our customer base; what is the rationale for this?**
We are beginning to notice an industry trend toward discouraging will call delivery service; this is because the nature of will call service impacts operational processes and costs more to service those customers. Some companies are charging higher per-gallon rates and/or eliminating the will call option altogether. While we remain committed to providing this popular customer option, we determined the fairest way to recoup some of this expense is to direct it to the will call customer in the form of a small fee.

As you speak with customers, please keep in mind that many will call customers have a much better alternative, one that eliminates the work of monitoring tank levels and calling to place delivery orders - our forecast delivery option. By encouraging eligible customers to switch to automatic delivery, you'll be creating a win-win situation. Seize opportunities to move PIA customers to approved credit status and automatic delivery. Be sensitive to the fact that many customers dislike receiving unexpected propane bills and pair a monthly payment program (SmartPay or AmeriGuard) with your offering.

For customers who wish to remain on will call, be sure to inform them of the option to place will call delivery orders online by signing up under *My Account* on the AmeriGas (or trade name) website. This functionality will be available in early December.

*Note: It is not our intention to lose customers over the imposition of this fee; please work closely with your district manager to determine when it is appropriate to reduce/limit/waive the fee. Concessions should never be considered without first attempting to support fee assessment and/or convert to forecast (if applicable).*

**Do I need to specifically call out the Will Call Convenience Fee as customers place delivery orders?**
Yes, if they ask if there are any fees or charges for their delivery, or if they ask for the total cost of their delivery.

There is a "customer FAQs" document available that's designed to help you with these conversations. A professional, assured approach toward these conversations will help secure customer acceptance of the fee; it's also a golden opportunity to encourage will call conversions to forecast.  As will call customers call to place orders, be ready to proactively approach the conversation with a discussion on the advantages of forecast delivery.  By quickly assessing the customer's credit status and usage profile you can determine if there is a good fit.  Be aggressive in offering PIA customers a soft credit check to help them progress to automatic delivery status.  And don't forget to offer SmartPay/AmeriGuard as the perfect complement to automatic delivery.  Here's one way you might respond to a "routine" will call delivery order; we'll pick it up midway into the conversation:

| CRR | Customer |
|---|---|
| | So what will the price be for this delivery? |
| One moment please while I review the account. Mr. Jones; you've been a valued AmeriGas customer, and I want to ensure that you are fully aware of options that would be a benefit to you.<br><br>Your price per gallon is $X.XX, plus applicable fees and taxes. | |
| | What are the fees? |
| As explained in our terms & conditions, we've just introduced a $4.99 will call convenience fee that you could avoid with a free upgrade to automatic delivery.  There are other advantages to being a forecast customer and I'll be happy to share them with you now if you like.  Also, a HazMat and Fuel Recovery Fee are applied. | |
| | Other companies don't charge so many fees. |
| (Proceed with responses as suggested in the Customer FAQs.) | |

**What about those who aren't eligible for forecast deliveries, such as gas log customers?  What about customer-owned-tank customers?**
You should disclose the Will Call Convenience Fee and explain the purpose of the fee to our customers. Let them know the industry trend away from will call service; it's likely other propane companies will continue to refine their delivery practices and associated fees.  Equate the total annual cost of the Will Call Convenience Fee (how many deliveries does the customer take?) with the increased value they receive from being an AmeriGas customer; remind them we are committed to providing a will call service option whereas other companies may not be.

Again, educate non-PIA will call customers about the ability to place orders online – available in December.

It is not our intent to lose valued customers over the imposition of a small fee; therefore you will have some flexibility to reduce or waive the fee when challenged with objections.  Please consult your DM for specific parameters.

**Will this charge apply to commercial accounts?**
As a general rule, yes.  However, you will have the ability to waive the fee in situations where assessing it would cause excessive charges, such as temp heat installations.  Note that a terms and conditions mailing for commercial customers is also being released and will become effective December 15, 2016.  Please watch for separate training materials covering this release.

Additionally, National Account and ACE relationships are governed by individual agreements and are therefore not subject to the Will Call Convenience Fee.

**Will the Will Call Convenience Fee automatically print on the delivery ticket on AmeriMobile?**
We are working on that capability now.  We will keep you posted.

## Early Termination Fee

**Why are we imposing another fee on customers who are leaving us?**
The common industry practices of attracting new customers through aggressive one-year deals has created a large subset of customers who continually switch between companies in perpetual search of the best deal.  It's impossible to develop a solid business relationship with these customers let alone secure their long-term loyalty.  Imposition of this fee allows us to recover some of the cost expended on free/discounted services when service was initiated, instead of recovering these costs over time.  We need to encourage customers to stay with us, but if they choose to leave, they can do so with the incurrence of this fee.

Note that you will have the ability to waive or reduce the fee under special circumstances as defined by your district manager.

**Does the Early Termination Fee get billed automatically or will the CRR need to process it?**
Included it in the manual actions taken during the final bill process; we will soon provide systems instruction on how to assess the fee.

## Refund Policy

**Why are we going to a no-refund policy?  This has been a competitive advantage.**
There's a good reason other propane companies have already instituted no-refund policies.  Every year AmeriGas refunds a significant amount of money to customers who choose not to use their gas.  Many other industries disallow customers to purchase their product and then return a portion of it when they decide they don't want it any more.

While we wish to make this a standard practice, you should note that the verbiage in this section of the T&C document allows for discretion in determining if a refund should be allowed.  This enables us to be flexible enough to adapt to specific circumstances; you should consult your district manager for more specific parameters.

# EXHIBIT G

## Consumer Complaints & AmeriGas Responses

Dept. of Attorney General
Consumer Protection Division

MAR 1 5 2016

**RECEIVED**

DAG 008-001
Authority: 1976 PA 331
Compliance: Voluntary
Penalty: None



# MICHIGAN DEPARTMENT OF ATTORNEY GENERAL

## CONSUMER COMPLAINT/INQUIRY FORM

Please be aware of the following:

- Complaints and inquiries become public records when they are submitted to the Attorney General's office, and under the Michigan Freedom of Information Act, copies may be subject to disclosure to anyone who asks for them.
- A copy of the complaint may be sent to the business against whom the complaint is issued. An accurate company Fax number will expedite processing.
- A copy of the complaint may be sent to other governmental agencies.
- Please be particularly cautious with information containing your Social Security number, credit card account numbers, etc. for security purposes. If you believe it is necessary to submit such information, you should mail that information and the corresponding complaint.

**Consumer Information**

Your Last Name: ▓▓▓▓▓   First Name: DONALD

Your Street Address: ▓▓▓▓▓   City: GREGORY

Your State: MI   Zip Code: 48137

Your County: LIV.

Your Home Phone: ▓▓▓▓▓   Work Phone: _____

Fax Number: _____   E-mail Address: _____

**Primary Company or Person Your Complaint Is About**

Company: Name: AMERIGAS

Street Address: 2400 DORR RD   City: HOWELL

State: MI   Zip Code: 48843

County: LIV.   Phone: 1-888-269-5928

Fax Number: _____   E-mail Address: _____

Website Address: _____

CUSTOMER CARE LINE
2540 WARREN DRIVE SUITE C
ROCKLIN, CA   95677   1-800-427-4968

**Secondary Company or Person Your Complaint Is About**

Company:  Name: _____

Street Address: _____  City: _____

State: _____  Zip Code: _____

Phone: _____

Fax Number: _____  E-mail Address: _____

Web Site Address: _____

**Complaint Information**

Is Your Complaint About A Bill?   Yes ☐   No ☑

   If So, Please Provide A Copy.

Approximate Monetary Value: $ _10.59 + #4.58 ea. Time I get A Bill_

Did You Sign A Contract?:     Yes ☐   No ☑

   Where Did You Sign This Contract: _____

Is A Court Action Pending?:    Yes ☐   No ☑

Do You Have An Attorney
Representing You On This Matter?: Yes ☐   No ☑

**Motor Vehicle Warranty Complaint Information**

If your complaint involves motor vehicle manufacturer warranties or non-dealer service contracts, please fill out this section. Most other auto-related complaints, including dealer complaints and complaints concerning automotive repairs and repair facilities, must be filed with the Department of State's Bureau of Information Security, Regulatory Monitoring Division: **1-888-767-6424.**

Vehicle Make, Model and Year: _____

VIN No.: _____

**Complaint Detail/Inquiry Information**

Describe your problem, what attempts you have made to correct it, and how you would like to have the problem resolved. Use additional sheets if necessary.

_____

_____

HASMAT FEE, WHERE DOES IT GO + DOES
THE ST. OF MICH. REQUIRE THESE CHARGES.

FUEL RECOVERY FEE, SAME QUESTION

THESE TWO FEE'S KEEP INCHING UP
OVER TIME.

AmeriGas
2400 Dorr Road
Howell MI 48843
888-269-5928
www.amerigas.com



**Invoice**



Page 1 of 2

**ACCOUNT NUMBER:** 200321270
**INVOICE AMT DUE:** $404.93
**DUE DATE:** 03/12/2016

**INVOICE NO:** 3049192480    **INVOICE DATE:** 02/11/2016
**NAME:** DONALD P ██████
**SERVICE ADDRESS:**
GREGORY MI 48137-9536

| Previous Balance | Payments | Adjustments/Credits | New Charges | Account Balance Due | Invoice Amount Due |
|---|---|---|---|---|---|
| $362.01 | -$342.01 | -$25.00 | $409.93 | $404.93 | $404.93 |

## Account Activity

| Date | Ref No. | Description | Quantity | Price | Amount |
|---|---|---|---|---|---|
| 02/09/16 | 79713132 | Propane | 200.0 | $1.89/GAL | $378.00 |
| | | SITE:HOUSE | | | |
| | | Senior Citizens Disc | | | -$4.00 |
| | | HazMat Fee - T | | | $10.59 |
| | | Fuel Recovery Fee-T | | | $4.58 |
| | | Will-Call Conv.Fee-T | | | $4.99 |
| | | State Sales Tax | | | $15.77 |
| | | **TOTAL NEW CHARGES** | | | **$409.93** |

 

*Account Balance Due includes all outstanding charges for which we have not received payment and may not reflect payments sent.*

**Continues on next page.**

MESSAGES
Your safety is our priority! For helpful tips for a worry-free winter, visit the Consumer Safety Info. section of our website.
We periodically review and revise our standard Terms & Conditions. Visit our company website to read the T&C that apply.
Tired of calling for propane? Enroll in automatic delivery and get our no run-out promise.  Call your local office for details.
Earn $100 for new residential customer referrals and $150 when you refer a new business. Visit our company website to learn how.
No more checks or postage fees with our free AutoPay service!  Visit the online billing site below to enroll.
Get protection for your outside propane gas lines for only $18.95 a year with LineGard.  Call us to enroll.

☏ **Contact Us:** Billing, Service & Delivery: 888-269-5928
💻 **Pay Online or Enroll in our Automatic Payment program:** www.amerigas.com

THANK YOU FOR YOUR BUSINESS!



*America's Propane Company*

April 15, 2016

**VIA EMAIL AG-COD@michigan.gov**
Joseph E. Potchen
Division Chief
Corporate Oversight Division
Michigan Attorney General
P.O. Box 30213
Lansing, MI 48909

      **RE:  Donald P█████ – 2016-0134450-A**

Dear Mr. Potchen:

      Thank you for giving AmeriGas Propane, L.P. ("AmeriGas") the opportunity to respond to the above-referenced complaint.  AmeriGas takes all complaints from its customers seriously. In his complaint, Mr. P████ expresses concern regarding AmeriGas' Hazmat and Fuel Recovery Fees.  After an investigation of the allegations provided in this complaint, AmeriGas has the following response.

      AmeriGas' Hazmat and Fuel Recovery Fees are disclosed in our Terms and Conditions which are periodically mailed to our customers, and can be found on AmeriGas' website as well as on the back of a customer's invoice.  AmeriGas, like many other companies that rely on a large fleet of commercial motor vehicles to deliver the products and services they provide, is faced with significant costs in order to fuel its fleet.  To offset those costs, AmeriGas charges its Fuel Recovery Fee per delivery.  The Fuel Recovery Fee fluctuates on a monthly basis (both up and down) based upon AmeriGas' actual fuel costs.  While various other suppliers may build these costs into the price of the propane, AmeriGas chooses to list this charge separately.  We update our website to reflect the current month's fee so our customers are informed as to the current amount.  Additionally, AmeriGas charges a HazMat & Safety Compliance Fee to supplement the significant cost of compliance with federal and state statutes, and regulations that govern the various aspects of the transportation, storage and sale of propane. This fee helps offset charges for, among other things, hazardous materials, homeland security, emergency preparedness and workplace safety. It is also used to fund employee safety training and inspections, cylinder re-qualification, and environmental compliance.

      I trust this information assists Mr. P████understanding of the Hazmat and Fuel recovery fees questioned in the above-referenced complaint.  To the extent that this is not the case, I would be happy to discuss this matter with you at your convenience.  I can be reached at:  (610) 768-3643 or at michelle.bimson@amerigas.com.

                            Sincerely,

                            Michelle A. Bimson
                            Senior Counsel

4-7-17

**DEPT. OF
ATTORNEY GENERAL**

DAG 008-001
Authority: 1976 PA 331
Compliance: Voluntary
Penalty: None

APR 1 1 2017

~~CORPORATE OVERSIGHT~~
RECEIVED



## MICHIGAN DEPARTMENT OF ATTORNEY GENERAL

## CONSUMER COMPLAINT/INQUIRY FORM

Please be aware of the following:

- Complaints and inquiries become public records when they are submitted to the Attorney General's office, and under the Michigan Freedom of Information Act, copies may be subject to disclosure to anyone who asks for them.
- A copy of the complaint may be sent to the business against whom the complaint is issued. An accurate company Fax number will expedite processing.
- A copy of the complaint may be sent to other governmental agencies.
- Please be particularly cautious with information containing your Social Security number, credit card account numbers, etc. for security purposes. If you believe it is necessary to submit such information, you should mail that information and the corresponding complaint.

**Consumer Information**

Your Last Name: ████████     First Name: DONALD

Your Street Address: ████████     City: GREGORY

Your State: MI     Zip Code: 48137

Your County: LIV.

Your Home Phone ████████     Work Phone:

Fax Number:     E-mail Address:

**Primary Company or Person Your Complaint Is About**

Company:  Name: AMERIGAS

Street Address: 2400 DORR RD.     City: HOWELL

State: MI     Zip Code: 48843-8802

County: LIV     Phone: 888-269-5928

Fax Number:     E-mail Address:

Website Address: WWW.AMERIGAS.COM

4-117

**Secondary Company or Person Your Complaint Is About**

Company:  Name: _____

Street Address: _____   City: _____

State: _____   Zip Code: _____

Phone: _____

Fax Number: _____   E-mail Address: _____

Web Site Address: _____

**Complaint Information**

Is Your Complaint About A Bill?   Yes ☑   No ☐

If So, Please Provide A Copy.

Approximate Monetary Value:  $ _59. 99_____

Did You Sign A Contract?:       Yes ☐   No ☑

Where Did You Sign This Contract: _____

Is A Court Action Pending?:     Yes ☐   No ☑

Do You Have An Attorney
Representing You On This Matter?:  Yes ☐   No ☑

**Motor Vehicle Warranty Complaint Information**

If your complaint involves motor vehicle manufacturer warranties or non-dealer service contracts, please fill out this section.  Most other auto-related complaints, including dealer complaints and complaints concerning automotive repairs and repair facilities, must be filed with the Department of State's <u>Bureau of Regulatory Services</u>:  **1-888-767-6424.**

Vehicle Make, Model and Year: _____

VIN No.: _____

**Complaint Detail/Inquiry Information**

Describe your problem, what attempts you have made to correct it, and how you would like to have the problem resolved. Use additional sheets if necessary.

_I WAS NOT TOLD OF ANY CHARGES FOR
PICKING UP MY FUEL TANK. I THOUGHT I WOULD_

4-7-17

CHECK OTHER COMPANY TO SEE IF THEY HAD
THESE CHARGES. THEY DID NOT! MY TANK
HAD FUEL IN IT THAT WAS PAID FOR BUT
THEY WOULD NEVER EVEN TALK ABOUT THAT. WHEN
I CALLED TO NOTIFY THEM ABOUT ME CHANGING
CO'S SHE ASKED ME WHY + THEN SHE SAID
IS IT THE PRICING + I SAID YES SO,
THEY KNOW HOW THEY ARE OVER PRICING.
THEY NEED TO BE BROUGHT IN LINE WITH
OTHER CO'S IN MICH. (THEY MAKE UP
THEIR OWN RULE'S WITH NO FORTHOUGHT)

THANK YOU

AmeriGas
2400 Dorr Road
Howell MI 48843-8802
888-269-5928
www.amerigas.com

# Final Bill



Page 1 of



| | | | |
|---|---|---|---|
| ACCOUNT NUMBER: | 200321270 | CUSTOMER CLOSE NO: | 1166256 |
| AMOUNT DUE: | $59.99 | INVOICE DATE: | 03/24/2017 |
| TERMS: | Due 30 Days From Invoice | NAME: | DONALD ███████T |
| | | SERVICE ADDRESS: | GREGORY MI 48137-9536 |

| Total Account Balance Due: | $59.99 |
|---|---|

### Final Bill Overview

| Date | Ref No. | Description | Amount Due |
|---|---|---|---|
| 03/24 | 3063192089 | *Service-Sales Order | $59.99 |

**Messages:**

Please pay the amount listed above to close out your account.

☎ Contact Us: Billing, Service & Delivery: 888-269-5928
💻 Pay Online or Enroll in our Automatic Payment program:  www.amerigas.com

THANK YOU FOR YOUR BUSINESS!

AMERIGAS
2400 DORR ROAD
HOWELL MI 48843-8802

| Account No. | Customer Close No. | Invoice Date | Amount Due |
|---|---|---|---|
| 200321270 | 1166256 | 03/24/2017 | $59.99 |

## TOTAL AMOUNT ENCLOSED   $

☐ **Account or user address change?**
If yes, please check box and complete reverse side.

2016 1 MB 0.423   E0112X  1D113 02335693463 S2 P4088889 0001:0002



DONALD ███████T
GREGORY MI 48137-9536

REMIT TO
DEPT 0140
PALATINE IL 60055-0140

0200321270000000116625600000000059991

:0002

AmeriGas
2400 Dorr Road
Howell MI 48843-8802
888-269-5928
www.amerigas.com

# Final Bill



Page 2 of

| ACCOUNT NUMBER: | 200321270 | CUSTOMER CLOSE NO: | 1166256 | INVOICE DATE: | 03/24/2017 |
|---|---|---|---|---|---|
| AMOUNT DUE: | $59.99 | NAME: | DONALD ▮▮▮▮T | | |
| TERMS: | Due 30 Days From Invoice | SERVICE ADDRESS: | GREGORY MI 48137-9536 | | |

LOCATION/LOCATION NUMBER:  HOUSE        SHIP-TO NUMBER:  100397175    DELIVERED BY:  AmeriGas

▮▮▮▮▮▮▮▮▮
GREGORY MI 48137-9536

## Activity Detail

| Date | Doc. No. | Description | PO Number | Misc. ID | Unit Price | Quantity | Amount | Taxes | Amount Due |
|---|---|---|---|---|---|---|---|---|---|
| 03/15 | 96658061 | APP&S Service Dispatch Charge | | | $59.99 | 1.0 | $59.99 | | $59.99 |
| | | TOTAL BULK | | | | 0.0 | $0.00 | | $0.00 |
| | | TOTAL CYLINDER | | | | 0.0 | $0.00 | | $0.00 |
| | | TOTAL OTHER | | | | 1.0 | $59.99 | | $59.99 |

| | | Extended Amount | Taxes | Amount Due |
|---|---|---|---|---|
| | LOCATION TOTAL | $59.99 | $0.00 | $59.99 |

Contact Us: Billing, Service & Delivery: 888-269-5928
Pay Online or Enroll in our Automatic Payment program: www.amerigas.com

1 MB 0.423   E0112X  I0114 D2335693463 S2 P4088889 0002:0002



*America's Propane Company*

May 5, 2017

**VIA EMAIL AG-COD@michigan.gov**
Joseph Potchen, Division Chief
Corporate Oversight Division
Michigan Attorney General
P.O. Box 30213
Lansing, MI 48909

     **RE: Donald P███ – AG No. 2017-0178103-A**

Dear Mr. Potchen:

     Thank you for giving AmeriGas Propane, L.P. ("AmeriGas") the opportunity to respond to the above-referenced complaint. In his complaint, Mr. P███ expresses concern over AmeriGas pricing and the Service Dispatch Charge he was charged for his tank removal. We take complaints from our customers very seriously and after an investigation of the allegations provided in this complaint, AmeriGas has the following response.

     By way of background, Mr. P███ was not participating in our Guaranteed Price Protection (GPP) programs which allow a customer to lock in their propane at a specific price or enter into a budget pay agreement. As such, Mr. P███ was considered a market based customer and paid a price per gallon set by the company on the date of delivery. As is common in the propane industry market based pricing is generally based upon volume and is broken down by tiers, i.e., customers are placed in tiers based on their annual usage volume. Generally, the higher the customer volume, the lower their price per gallon will be. This is because customers who use very little propane on a yearly basis have a higher cost of delivery. Mr. P███ was a low volume customer, using approximately 400.4 gallons of propane in 2016.

     Mr. P███ requested that his account be closed and was charged a $59.99 Service Dispatch Charge for his tank removal. As explained in our Terms & Conditions, customers are customarily charged a Service Dispatch Fee to cover the disclosed costs associated with dispatching a service technician to a customer's residence to pick-up a Company-owned tank. Although this charge is fully disclosed in our Terms & Conditions, in an effort to resolve this matter, we have removed this charge from Mr. P███ account.

     Mr. P███ mentioned that he was concerned he would not be refunded for the propane remaining in his tank, but in fact it is the Howell AmeriGas District Office policy to refund customers for the propane left in their tank at the time of pick-up. Regardless of our policy, however, Mr. P███ had no propane in his tank at the time of pick-up so there was nothing for us to refund him.

     As of this writing, we have spoken to Mr. P███ and he is satisfied. His account is now closed with a zero balance.

I trust that this letter adequately responds to the issues raised in the above referenced complaint. To the extent that this is not the case, I would be happy to discuss this matter with you at your convenience. I can be reached at: (610) 768-3643 or michelle.bimson@amerigas.com.

Sincerely,

Michelle A. Bimson
Senior Counsel

# EXHIBIT H

## Eaton Rapids/Ashley
## Financial Statements

Report ID: CND_Y_IS
Layout ID: MGT INCOME STATEMENT - YTD
Scope: D_CENTRAL

Operator ID: BURKEM
Run Date/Time: 10/11/16 at 08:01 PM

**4000 - Eaton Rapids-Lansing, MI**
**AmeriGas Propane, Inc.**
**Management Income Statement**
**For the Year-to-date period ended**
**September 30, 2016**



EXHIBIT

| Per gallon | | | | | Actual | Budget | Last Year | Variance - Favorable (unfavorable) vs. | |
|---|---|---|---|---|---|---|---|---|---|
| Actual | Budget | Last Year | | | | | | Budget | Prior Year |
| | | | Retail | | 2,375,836 | 2,726,426 | 2,745,233 | (350,590) | (369,397) |
| | | | Wholesale / Supply | | - | - | - | | |
| | | | **TOTAL GALLONS** | | 2,375,836 | 2,726,426 | 2,745,233 | (350,590) | (369,397) |
| $ 1.8043 | $ 1.8477 | $ 2.0516 | Retail | $ | 4,286,663 | $ 5,037,629 | $ 5,632,028 | $ (750,965) | $ (1,345,364) |
| | | | Wholesale / Supply | | - | - | - | | |
| 1.8043 | 1.8477 | 2.0516 | Propane | | 4,286,663 | 5,037,629 | 5,632,028 | (750,965) | (1,345,364) |
| | | | Non-propane | | 337,100 | 445,895 | 431,824 | (108,795) | (94,724) |
| | | | **TOTAL REVENUES** | | 4,623,763 | 5,483,524 | 6,063,852 | (859,761) | (1,440,089) |
| 0.6676 | 0.7243 | 1.1256 | Retail | | 1,586,018 | 1,974,642 | 3,090,050 | 388,625 | 1,504,033 |
| | | | Wholesale / Supply | | - | - | - | | |
| 0.6676 | 0.7243 | 1.1256 | Propane | | 1,586,018 | 1,974,642 | 3,090,050 | 388,625 | 1,504,033 |
| | | | Non-propane | | 2,440 | 5,372 | 7,774 | 2,932 | 5,334 |
| | | | **TOTAL COST OF SALES** | | 1,588,458 | 1,980,014 | 3,097,824 | 391,557 | 1,509,366 |
| 1.1367 | 1.1234 | 0.9260 | Retail | | 2,700,646 | 3,062,986 | 2,541,978 | (362,341) | 158,668 |
| | | | Wholesale | | - | - | - | | |
| 1.1367 | 1.1234 | 0.9260 | Propane | | 2,700,646 | 3,062,986 | 2,541,978 | (362,341) | 158,668 |
| | | | Non-propane | | 334,659 | 440,523 | 424,050 | (105,864) | (89,390) |
| | | | **TOTAL GROSS PROFIT** | | 3,035,305 | 3,503,509 | 2,966,028 | (468,204) | 69,278 |
| 0.2065 | 0.2006 | 0.1995 | Direct Compensation and labor costs | | 490,520 | 546,802 | 547,722 | 56,281 | 57,201 |
| 0.0689 | 0.0686 | 0.0676 | Employee-related costs and benefits | | 163,752 | 186,972 | 185,633 | 23,220 | 21,881 |
| 0.1214 | 0.0866 | 0.1268 | Vehicle Operating and Maintenance | | 288,314 | 236,112 | 348,215 | (52,202) | 59,902 |
| 0.0729 | 0.0807 | 0.0659 | Plant/Equipment Operating and Maint | | 173,228 | 219,994 | 180,834 | 46,766 | 7,606 |
| 0.0048 | 0.0004 | 0.0025 | Other controllable expenses | | 11,340 | 1,133 | 6,885 | (10,206) | (4,455) |
| 0.0115 | 0.0143 | 0.0086 | Collections-related expenses | | 27,422 | 39,015 | 23,618 | 11,593 | (3,804) |
| 0.0395 | 0.0230 | 0.0294 | Other operating expenses | | 93,813 | 62,784 | 80,592 | (31,029) | (13,221) |
| 0.5255 | 0.4742 | 0.5003 | **TOTAL OPERATING EXPENSES** | | 1,248,389 | 1,292,812 | 1,373,498 | 44,423 | 125,109 |
| | | | Miscellaneous (income) expense | | (41,314) | (41,932) | (34,871) | (618) | 6,444 |
| | | | Minority Interest | | | | | | |
| | | | Early Extinguishment of Debt Expense | | - | - | - | | |
| $ 0.7695 | $ 0.8262 | $ 0.5928 | **EBITDA** | | 1,828,231 | 2,252,630 | 1,627,400 | (424,399) | 200,830 |
| | | | Depreciation | | 281,817 | - | 300,084 | (281,817) | 18,267 |
| | | | Amortization | | | | | | |
| | | | **EBIT** | | 1,546,414 | 2,252,630 | 1,327,316 | (706,216) | 219,097 |
| | | | Interest Expense | | | | | | |
| | | | **EBT** | | 1,546,414 | 2,252,630 | 1,327,316 | (706,216) | 219,097 |
| | | | Income Tax Expense | | | | | | |
| | | | Comprehensive (Income)Loss | | | | | | |
| | | | Cumulative effect of accounting chg | | - | - | - | | |
| | | | **Net Income (loss)** | $ | 1,546,414 | $ 2,252,630 | $ 1,327,316 | $ (706,216) | $ 219,097 |

Report ID: CND_Y_IS
Layout ID: MGT INCOME STATEMENT - YTD
Scope: D_CENTRAL

Operator ID: BURKEM
Run Date/Time: 10/11/16 at 08:01 PM

**1250 - Ashley, MI**
**AmeriGas Propane, Inc.**
**Management Income Statement**
**For the Year-to-date period ended**
**September 30, 2016**

| Per gallon | | | | Actual | Budget | Last Year | Variance - Favorable (unfavorable) vs. | |
|---|---|---|---|---|---|---|---|---|
| Actual | Budget | Last Year | | | | | Budget | Prior Year |
| | | | Retail | 532,951 | 610,383 | 652,493 | (77,432) | (119,542) |
| | | | Wholesale / Supply | | | | | |
| | | | TOTAL GALLONS | 532,951 | 610,383 | 652,493 | (77,432) | (119,542) |
| $ 1.6931 | $ 1.7754 | $ 2.0295 | Retail | $ 902,363 | $ 1,083,653 | $ 1,324,261 | $ (181,290) | $ (421,898) |
| | | | Wholesale / Supply | | | | | |
| 1.6931 | 1.7754 | 2.0295 | Propane | 902,363 | 1,083,653 | 1,324,261 | (181,290) | (421,898) |
| | | | Non-propane | 84,617 | 110,612 | 91,379 | (25,995) | (6,762) |
| | | | TOTAL REVENUES | 986,980 | 1,194,265 | 1,415,640 | (207,285) | (428,660) |
| 0.7196 | 0.7408 | 1.1662 | Retail | 383,505 | 452,170 | 760,941 | 68,665 | 377,436 |
| | | | Wholesale / Supply | | | | | |
| 0.7196 | 0.7408 | 1.1662 | Propane | 383,505 | 452,170 | 760,941 | 68,665 | 377,436 |
| | | | Non-propane | 482 | 1,932 | 352 | 1,450 | (130) |
| | | | TOTAL COST OF SALES | 383,987 | 454,102 | 761,293 | 70,115 | 377,305 |
| 0.9736 | 1.0346 | 0.8633 | Retail | 518,859 | 631,483 | 563,321 | (112,625) | (44,462) |
| | | | Wholesale | | | | | |
| 0.9736 | 1.0346 | 0.8633 | Propane | 518,859 | 631,483 | 563,321 | (112,625) | (44,462) |
| | | | Non-propane | 84,135 | 108,680 | 91,027 | (24,545) | (6,892) |
| | | | TOTAL GROSS PROFIT | 602,993 | 740,163 | 654,348 | (137,170) | (51,355) |
| 0.2522 | 0.3525 | 0.2219 | Direct Compensation and labor costs | 134,386 | 215,184 | 144,794 | 80,798 | 10,408 |
| 0.1068 | 0.1268 | 0.0950 | Employee-related costs and benefits | 56,908 | 77,413 | 61,954 | 20,505 | 5,046 |
| 0.1266 | 0.1655 | 0.1445 | Vehicle Operating and Maintenance | 67,485 | 77,419 | 94,263 | 33,534 | 26,778 |
| 0.0898 | 0.0817 | 0.0622 | Plant/Equipment Operating and Maint | 47,884 | 49,883 | 40,565 | 1,999 | (7,319) |
| 0.0065 | 0.0066 | 0.0016 | Other controllable expenses | 3,440 | 4,031 | 1,068 | 591 | (2,372) |
| 0.0110 | 0.0152 | 0.0168 | Collections-related expenses | 5,840 | 9,305 | 10,956 | 3,465 | 5,116 |
| 0.0475 | 0.0158 | 0.0280 | Other operating expenses | 25,306 | 9,618 | 18,246 | (15,688) | (7,061) |
| 0.6403 | 0.7642 | 0.5699 | TOTAL OPERATING EXPENSES | 341,250 | 466,453 | 371,846 | 125,203 | 30,596 |
| | | | Miscellaneous (income) expense | (8,608) | (3,167) | (5,690) | 5,441 | 2,918 |
| | | | Minority Interest | | | | | |
| | | | Early Extinguishment of Debt Expense | | | | | |
| $ 0.5073 | $ 0.4536 | $ 0.4417 | EBITDA | 270,351 | 276,877 | 288,191 | (6,526) | (17,840) |
| | | | Depreciation | 56,001 | | 69,149 | (56,001) | 13,148 |
| | | | Amortization | | | | | |
| | | | EBIT | 214,350 | 276,877 | 219,042 | (62,527) | (4,692) |
| | | | Interest Expense | | | | | |
| | | | EBT | 214,350 | 276,877 | 219,042 | (62,527) | (4,692) |
| | | | Income Tax Expense | | | | | |
| | | | Comprehensive (Income)Loss | | | | | |
| | | | Cumulative effect of accounting chg | | | | | |
| | | | Net Income (loss) | $ 214,350 | $ 276,877 | $ 219,042 | $ (62,527) | $ (4,692) |

# <u>EXHIBIT I</u>

## Postcards

Reserved for the **Fowler family**

200-A

# SAVE UP TO $200!

## ON PROPANE

*

**Act by 10/18/2017**

**AmeriGas** ®

P.O. Box 965, Valley Forge, PA 19482

Prsrt First Class
U.S. Postage
PAID
Phila, PA
Permit No. 5

Call for today's lowest price
**(888) 750-3854**

Or visit
**propanepromo.com/K754KL8**

Promo Code: K75-4KL8
DARRIN F FOWLER
OR CURRENT RESIDENT
<span style="background:black">█████████</span>
MASON, MI 48854-9424

|||||••||••|••||•|||||•|•|•|||••||•|•|••||•|||••|•||•|||



*See reverse side for details

4000
09-20 200_A 134928/335/1/



From our family to yours...

# AmeriGas

## Welcome

**We have up to $200 in savings waiting for you!**

- Up to $200 off your first propane bill*
- Low intro price for new customers
- Free installation, switch out and safety inspection a $250 value**
- Never run out of propane or your next fill is free***

Limited time offer for new residential customers. *Certain restrictions, minimum gallon requirement, and credit approval may apply. Agreement required. Savings amount varies based on size of propane tank or volume of delivery. $200 off based on minimum 400 gallon delivery. **Standard above-ground tank installation charges waived unless customer terminates Agreement prior to end of initial term. Non-standard installations may be subject to charges. Additional fees and charges may apply per delivery. ***Never run out of gas promise applies to new residential heat customers who maintain automatic delivery. Call or visit our website for complete details. ©2017 AmeriGas Propane, LP.

50AS

# GREAT SAVINGS START WITH AMERIGAS:

 **LOCKED-IN PRICE THROUGH MAY 2018**

 **50% OFF YOUR 1ST PROPANE BILL**

## PLUS WE MAKE SWITCHING EASY WITH:

**$0 STANDARD INSTALLATION\*\***      **100% NEVER RUN-OUT-OF-GAS PROMISE\***      **FREE SAFETY INSPECTION\*\***

# CALL TODAY TO SAVE (888) 771-9433

### OR VISIT:

propanepromo.com/J2H47JQ

ACT BY: 12/6/2016

Promo Code: J2H-47JQ

**AmeriGas.**

P.O. Box 965, Valley Forge, PA 19482

Prsrt First Class
U.S. Postage
PAID
Phila, PA
Permit No. 5

Promo Code: J2H-47JQ
SARAH D F████████R
OR CURRENT RESIDENT
████████████
MASON, MI 48854-9424

Limited-time offer. Certain restrictions, minimum gallon requirement, and credit approval may apply. Agreement required. 50% off applies to lock-in price for first propane bill only for qualified new customers. \*Never run-out-of-gas promise applies to new residential heat customers who maintain automatic delivery. \*\*Standard above-ground tank installation charges waived unless customer terminates Agreement prior to end of the initial term. Non-standard installations may be subject to charges. Additional fees and charges may apply per delivery. Call for complete details. ©2016 AmeriGas Propane, Inc.

4000
D1A-21282/50/1/2

# GET 50% OFF

## YOUR FIRST PROPANE BILL

### PLUS Lock-In thru May 2018

**AmeriGas®**
Driving every day℠

# <u>EXHIBIT J</u>

## Consumer Complaints
## (Shirlee B. & Steven B.)

# Michigan Office Of Attorney General Consumer Complaint Form

**Web Complaint Number: 2014-cp08011248595-A**          **Submitted: 8/1/2014 12:48:16 PM**

## Consumer Information

Your Last Name: B████          First Name: Shirlee          M.I.: A
Your Street Address: ████████          City: Eagle
Your State: MI          Zip Code: 48822
Your County: Clinton
Your Home Phone: ████████          Your Work Phone:          Ext.:
Fax Number:          E-mail Address: ████████

## Primary Company Or Person Your Complaint Is About

Company or Person? Company
Complainee Last Name:          Complainee First Name:
Company Name: Amerigas
Street Address: 1005 Jp Sullivan Drive          City: Eaton Rapids
State: MI          Zip Code: 48827
County: Eaton          Phone: 8007781075
Fax Number:          E-mail Address:
Web Site Address:          Product Offered: Propane
Primary Jurisdiction: None

## Secondary Company Or Person Your Complaint Is About

Company or Person? Person
Complainee Last Name:          Complainee First Name: Robb
Company Name:
Street Address:          City:
State: MI          Zip Code:
County:          Phone:
Fax Number:          E-mail Address:
Web Site Address:

## Motor Vehicle Warranty Complaint Information

Vehicle Make, Model, and Year:
Vehicle VIN No.:

## Complaint Information

Incident Date\Time: 8/1/2014 1:00:00 AM
Incident Location: ████████
Approximate Monetary Value:
Did you sign a contract? False
Where did you sign this contract?
Is a court action pending? False
Do you have an attorney representing you on this matter? False
Are you willing to testify in court regarding this complaint? True
Did you complain directly to the business? True
What was the response from the business? Not in business of selling tanks
If no complaint was given to the business directly, why?
Was this complaint filed with any other agencies? False

## Complaint Detail/Inquiry Information

February 6, 2007, I entered into a contract with Rural Bottled Gas to install an underground propane tank, which was a requirement for the property we purchased. Ultimately, Rural sold their business to Amerigas. I have spoken with Robb Torres, District Manager with Amerigas several times to request purchasing the underground propane tank we purchased from Rural Gas. He told me they are not in the business of selling their tanks. They have now backed us into a corner because we are unable to contract with another propane company which has a much better price for the propane. Our only option is to have a company come in, excavate where the tank is, which is buried in the landscaping, have the gas pumped out and have another company come in and install another tank in the same place. This tank is 7 years old now...it seems as though to allow purchasing of the tank should not be a problem as the tank could not be used again for another customer. There are a number of people that purchased property with the stipulation we had to have underground tanks on ███████, which are having the same difficulty we are. All we are trying to do is obtain propane with a company that offers the best price. They are not allowing the purchase I believe because they do not want to lose our business. We would prefer at this point and time not to do business with Amerigas as we are unhappy with their service. I am hoping we can obtain a resolution to this situation without having to have our yard completely destroyed and the expense to release ourselves from Amerigas. Thanking you in advance for any help or suggestions you may have. Sincerely, Shirlee B███████ ████████

[False] Check if this referral is just to give us information and you do not need us to respond to you directly.

[False] Check if you want to send documentation. After you submit this form you will be provided with a postal mail address, and facsimile number, to which you may send documents.

[False] Check if you want to sign up for the Consumer Protection Listserv.

[False] Check if you want to sign up for the AG Press Release Listserv.

[False] Check if you want to sign up for the Attorney General Opinions Listserv.

(*)I certify that the information on this form is true and accurate to the best of my knowledge.

(*)I consent to releasing to the Michigan Attorney General any information or document relative to the investigation of this complaint. By checking this box, I also certify that I have had the opportunity to review the Michigan Attorney General Privacy Policy before submitting this complaint.

# **AmeriGas** ®

## Driving every day sm

August 26, 2014

**Via Email (AG-COD@michigan.gov)**
State of Michigan
Department of the Attorney General
Attn: Joseph Potchen

**Re:    Shirelee B███████ Complaint No. 2014-cp08011248595-A**

Dear Mr. Potchen:

Thank you for giving AmeriGas Propane, L.P. ("AmeriGas") an opportunity to respond to Shirlee B███████ complaint regarding the purchase of her 500 gallon underground tank. AmeriGas takes any complaint we receive seriously. Therefore, upon receipt of Ms. B███████ complaint, we investigated the allegations contained therein and provide the following response based on our findings.

Ms. B█████ has requested to be able to purchase the 500 gallon underground tank located at her residence. Currently, the price to purchase her 500 underground tank is $1000.00. In order to purchase the tank, Ms. ██████ should contact, AmeriGas District Manager, Rob Torres at (517) 663-1100.

We value our customers and apologize for any inconvenience to Ms. B█████. In light of the foregoing, AmeriGas reasonably believes this matter has been resolved. If you have any questions or require further information, please feel free to contact me.

Sincerely,

*Jill Donohue*

Jill Donohue
Customer Advocacy Manager

Cc: Mike George, Area Director
    Rob Torres, District Manager

PO Box 965, Valley Forge, PA, 19482 – Tel: (610) 337-7000

# Michigan Office Of Attorney General Consumer Complaint Form

**Web Complaint Number: 2016-cp09121348945-A**          **Submitted: 9/12/2016 1:48:43 PM**

## Consumer Information

Your Last Name: B█████                          First Name: Steven                          M.I.: B

Your Street Address: █████████████              City: Grand Ledge

Your State: MI                                  Zip Code: 48837

Your County: Eaton

Your Home Phone: ████████                        Your Work Phone: 5172845993          Ext.:

Fax Number:                                      E-mail Address: █████████████

Are you a veteran or active-duty service member? True

## Primary Company Or Person Your Complaint Is About

Company or Person? Company

Complainee Last Name:                            Complainee First Name:

Company Name: Amerigas

Street Address: 1005 Jp Sullivan Drive           City: Eaton Rapids

State: MI                                        Zip Code: 48827

County: Eaton                                    Phone: 8007781075

Fax Number:                                      E-mail Address:

Web Site Address: http://www.amerigas.com/landing/?storecode=4000&med=GMB&brand=AmeriGas          Product Offered: Propane services

Primary Jurisdiction: Licensed Business/Person

## Secondary Company Or Person Your Complaint Is About

Company or Person? Company

Complainee Last Name:                            Complainee First Name:

Company Name:

Street Address:                                  City:

State: MI                                        Zip Code:

County:                                          Phone:

Fax Number:                                      E-mail Address:

Web Site Address:

## Motor Vehicle Warranty Complaint Information

Vehicle Make, Model, and Year:

Vehicle VIN No.:

## Complaint Information

Incident Date\Time: 9/12/2016 1:15:00 PM

Incident Location: █████████████

Approximate Monetary Value: 2500

Did you sign a contract? False

Where did you sign this contract? they had my minor child sign

Is a court action pending? True

Do you have an attorney representing you on this matter? True

Are you willing to testify in court regarding this complaint? True

Did you complain directly to the business? True
What was the response from the business? Turned over to their legal department
If no complaint was given to the business directly, why?
Was this complaint filed with any other agencies? False
Do you think were targeted for unfair treatment due to your status as a veteran or active-duty service member? False

## Complaint Detail/Inquiry Information

Upon purchase of my residence at ████████████████ the sellers stated they installed the propane tank and I could use any company that I wanted. The owners stated they currently use Amerigas and didn't have any issues with them. We atarted service and when they apparently came out to fill the tank they had my son, 17 at the time, sign a contract. This contract, of which I will fax over to you, doesn't state that any equipment was leased or rented to me in any way. Fast forward, 2014- price gouging incident in which the AG's office handled, I called and told them I was no longer wanting services. I continued to get bills, even though I wasn't using their service after the settlement in 2013. I refuse to do business with companies that screw consumers. They called on 8/23/16 at 8:13am and left a message that they need to pick up their tank. I called back later that day to speak with Gail, the customer service representative. She told me because the contract was signed that the tank is theirs. I stated I didn't sign a contract. She looked it up and said Andrew E███ signed it. Andrew is my son, who was in high school at the time and was a minor. I asked if they had any documents showing ownership of the tank and they stated the only document they have is the signed contract from my son. I stated the tank was ours as the deed to my property says it is, and the previous owners installed it. I further told Amerigas that the tank was customer installed because a permit for installation was never drawn with the county. I have since drawn a permit for the tank, in my name, to make the tank legal. I told them on the phone when starting the service that the tank was customer owned. I believe they had my son sign the form stating we were starting service, and the company now believes its their tank. I explained to Gail that they have no documents to the tank, couldn't tell me when it ws installed, couldn't tell me the date or time it was installed, etc. Being an underground tank, they stated they should have the records but don't. They are charging me and demanding that I return my tank to them. They also have excessive bills from the last few months that I refuse to pay. They of course get larger every month. The only claim to the tank is a contract for service, not equipment, signed by a minor child, that doesn't even state the tank is theirs. Note the signature page in which the rental equipment line is left blank. It was left blank because I told them in 2012 the tank was mine. This is fraud. I want Amerigas to stop harassing me, they have no legal claim to the buried tank, I do. All the charges after cancelling their service, reference fees for service, even after cancelling in 2015. I want the harassment to stop.

[True] Check if you want to send documentation. After you submit this form you will be provided with a postal mail address, and facsimile number, to which you may send documents.

[False] Check if this referral is just to give us information and you do not need us to respond to you directly.

[False] Check if you want to sign up for the Consumer Protection Listserv.

[False] Check if you want to sign up for the AG Press Release Listserv.

[False] Check if you want to sign up for the Attorney General Opinions Listserv.

(*)I certify that the information on this form is true and accurate to the best of my knowledge.

(*)I consent to releasing to the Michigan Attorney General any information or document relative to the investigation of this complaint. By checking this box, I also certify that I have had the opportunity to review the Michigan Attorney General Privacy Policy before submitting this complaint.



*America's Propane Company*

October 12, 2016

**VIA EMAIL AG-COD@michigan.gov**
Joseph E. Potchen
Division Chief
Corporate Oversight Division
Michigan Attorney General
P.O. Box 30213
Lansing, MI 48909

          **RE: Steve B███ – 2016-cp09121348945-A**

Dear Mr. Potchen:

          Thank you for giving AmeriGas Propane, L.P. ("AmeriGas") the opportunity to respond to the above-referenced complaint. AmeriGas takes all complaints from its customers seriously. In his complaint, Mr. ████ expresses concern regarding tank ownership and Tank Rent fees. After an investigation of the allegations set forth in this complaint, AmeriGas has the following response.

          A review of Mr. B███ account shows that the tank on his property is company-owned. Upon the purchase of Mr. B███ home, he contacted us to open an account and have the tank unlocked. The service technician that unlocked the tank obtained a signed Lease Agreement by Andrew B███ on December 4, 2012. In his complaint, Mr. B███ states that Andrew B███ was 17 at the time that the Lease Agreement was signed. When a customer begins service with us, we require and inform customers that someone 18 or over must be home. As such, it was our understanding that Andrew B███ was of age. Notwithstanding this, our records are supported by the attached service order which outlines charges for a permit, installation and propane, yet does not show a purchase price charged for the tank. If Mr. B███ has a dispute regarding statements of ownership made by the previous home owner he should refer to his sale documentation or contact the seller directly.

          Additionally, Mr. B███ has not been charged a Tank Rent fee to date because the rental amount was previously based on usage and Mr. B███ met the minimum usage to have the Tank Rent fee waived. The Tank Rent fee is no longer based on usage. As stated in our Terms and Conditions, rent varies and depends upon various factors including but not limited to tank size and location. To avoid tank rent, Mr. B███ has the option to have the tank removed or purchase it for $817.00 by contacting our Eaton Rapids, MI office at (517) 663-1000.

          I trust that this letter adequately responds to the issues raised in the above referenced complaint. To the extent that this is not the case, I would be happy to discuss

this matter with you at your convenience. I can be reached at: (610) 768-3643 or
michelle.bimson@amerigas.com.

Sincerely,

Michelle A. Bimson
Senior Counsel

# EXHIBIT K

## Affidavit of Thomas R.

## AFFIDAVIT OF THOMAS R█████████

Thomas R████████, being first duly sworn, deposes and says as follows:

1.     I am a Michigan resident and currently reside in Charlevoix.

2.     I used to live downstate, but I had a home built in Charlevoix in 2007. In August 2007, I entered into a contract with AmeriGas for propane.

3.     I opted to have AmeriGas install a buried tank in my yard, and it was installed in September 2007.

4.     Before the tank was installed, I signed a lease agreement for the tank, which is attached to this affidavit. The lease agreement was sent to me by AmeriGas employee Marilea Green of the Petoskey AmeriGas office. The lease agreement provided, in part:

    a. I would be leasing a 1,000 gallon underground tank.
    b. I was responsible for paying an installation charge of $350.
    c. If I terminated service with AmeriGas before the fifth year of service, I would incur charges to take ownership of the tank or I would be responsible for the cost of removing the tank.

5.     The lease agreement also provided a depreciation scale for the tank, which listed the purchase price of the tank based on the year the customer terminates AmeriGas service:

    a. 1st Year- $2,000
    b. 2nd Year- $1,700
    c. 3rd Year- $1,400
    d. 4th Year- $1,100
    e. 5th Year- $800
    f. 6th Year- Customer may purchase the tank for $750

6.     In 2016, I decided to switch propane providers due to the price of propane. We found a local propane supplier that charged a lot less per gallon than AmeriGas.

7.     When I contacted AmeriGas to let them know I was switching suppliers, they gave me the option to either purchase the tank or return it.

8.     I checked the depreciation scale I had received in 2007.  Because it had been about 9 years, it made more sense to purchase the tank then to pay the cost for excavation and removal for the tank, which would have been quite expensive and would have required tearing up my landscaping.

9.     I paid AmeriGas $750 plus tax to purchase the tank in 2016.

10.    Now that I own the tank, I have switched to a local propane supplier.

11.    I have personal knowledge of the facts stated in this affidavit, and will testify about them if called upon to do so.

FURTHER, AFFIANT SAYTH NOT.

Thomas R ▮▮▮▮▮▮

Thomas R ▮▮▮▮▮

Subscribed and sworn to before me
this 6 day of April, 2017.

_Kyle Sitzema_, Notary Public
Emmet County, Michigan
Commission Expires: 3-9-2022
Acting in Charlevoix County

> KYLE SITZEMA
> Notary Public, State of Michigan
> County of Emmet
> My Commission Expires Mar, 09, 2022
> Acting in the County of Charlevoix

2

Faxed 8/15 + 8/31

**AmeriGas.**
America's Propane Company

8/15/07,

Tom R████████

Just wanted to touch base and let you
Know we schedule to install your tank
on 9/13/07. This should give yall time to
have the hole excavated and ready. We will
need someone present on the date of
installation.

There is one form attached for you to
sign, + fax back to 989-983-3193.

Also attached is a rebate from the
state of MI propane association, you
may be able to recieve a rebate for
your water heating system.

Take Care!

Marilee Strom

MARILEA,
I WILL NEED A COPY OF YOUR SAFETY INSPECTION
FOR THE REBATE!

MK-01-F-1

America's Propane Company

**ATTACHMENT F TO THE**

**PROPANE SUPPLY AGREEMENT AND EQUIPMENT LEASE**
(RESIDENTIAL CUSTOMERS)

This Attachment F contains additional terms and conditions to the Propane Supply Agreement and Equipment Lease (the "Agreement") between AmeriGas Propane, L.P. ("AmeriGas") and _Jim R_____ ("Customer") dated _Aug 15th, 2007_.

In the event that the Agreement is terminated prior to the end of the initial term set forth in Paragraph 5, Customer shall pay AmeriGas the "Deferred Charge for Equipment & Services from AmeriGas" set forth hereinbelow.

DESCRIPTION OF LEASED EQUIPMENT

TANK / CYLINDER:1-1,000 gallon underground

SERIAL NUMBER:

REGULATOR: 1-first stage 1-second stage

OTHER:

2-Flex Risers

AMERIGAS IS PROVIDING EQUIPMENT AND SERVICES TO CUSTOMER WHICH HAVE THE FOLLOWING VALUE(S):

| | |
|---|---|
| UNDERGROUND PIPING & PARTS | $ 50 |
| REGULATION SYSTEM | $ 75 |
| TANK SET & HOOK-UP | $ 350 |
| SAFETY CHECK | $ 50 |
| OTHER GOODS / SERVICES | $ 0 |
| TOTAL VALUE OF EQUIP. & SERVICES PROVIDED BY AMERIGAS | $ 525 |
| LESS: CHARGE TO CUSTOMER AT TIME OF INSTALLATION | ($ 350 ) |
| DEFERRED CHARGE FOR EQUIP. & SERVICES FROM AMERIGAS | $ 175 |

_Your cost includes 50 foot of line + labor._
_over that $3⁰⁰ a foot for line + labor._

If Customer terminates service with AmeriGas prior to the 5th year, the customer will incur the charges as outlined below and take ownership of the underground tank and associated equipment

| | |
|---|---|
| 1st Year | $2,000 |
| 2nd Year | $1,700 |
| 3rd Year | $1,400 |
| 4th Year | $1,100 |
| 5th Year | $800 |
| 6th Year | Customer may purchase the tank for $750 |

If the customer terminates service with AmeriGas prior to the 5th year, and no longer wants the tank, the customer will be responsible for all charges and/or damages associated with the removal fo the tank from the customers property including excavation charges and property repair

CUSTOMER

BY: X _E. Thomas R____  DATE: _9/5/07_

BILLING ADDRESS: _Midland, MI_

Delivery: _Charlevoix_

AMERIGAS PROPANE, L.P.
BY: AMERIGAS PROPANE, INC., ITS GENERAL PARTNER

BY: _Marsha Green_  DATE: _8/15/07_

DISTRICT: _5269_

ADDRESS: _1901 River Rd. Petoskey, MI 49740_

# EXHIBIT L

## Affidavit of Michael F.

2

## AFFIDAVIT OF MICHAEL F█████

Michael F████, being first duly sworn, deposes and says as follows:

1.      My wife and I live in Dexter, Michigan. We use propane to heat our home. Other than our furnace, we do not have any appliances in our home that use propane. So, we use propane during the cold months, but have no usage in the summertime.

2.      My wife and I used to be customers of Schultz Bottle Gas. They were our propane supplier for seven or eight years, up until about a year ago.

3.      For the entire time I used Schultz Bottle Gas, I was frustrated that they would not send me a monthly statement, or an invoice upon delivery. They used to leave a delivery ticket on my doorknob when they filled the tank. Sometimes, the tag would blow away, but I'd know they were there because I could see the footprints in the snow leading to the tank. Of course, this also left me unaware of situations when they would come and leave a ticket that would blow away when there was no snow for me to see footprints in. I was set up to receive deliveries on a keep-full program where Schultz would automatically fill my tank and keep it above 25-percent without me having to call them. I would then pay $150 each month throughout the year, even though we were not getting summer deliveries. Schultz would occasionally send me statements because I would send notes with my payment asking for them, but often they would ignore such requests.

4.      At some point, I tried to change my monthly payment amount to something less than $150. They always had a lot of my money tied up in what I liken to an escrow account. Granted, it did help avoid getting huge bills all at once, but I felt they had too much of my money tied up, when, again we only use their product during the cold months. I made several telephone calls, and sent some emails, trying to accomplish this change, but they went unanswered. Finally, I gave up.

5.      In approximately August 2014, we received a propane delivery that was very upsetting. My wife was home at the time, and I was at work. She called because she was seeing the delivery man urinating in our backyard. I called Schultz to complain about this, but nobody answered the phone.

6.      Then, on a very cold day in approximately December 2014, we ran out of propane. This was very frustrating and surprising since Schultz was responsible for determining when the tank should be filled. I called Schultz and the person I talked to told me they would not come and fill it that day because it was not an emergency. She said it was not an emergency because the temperature in my home was still warm enough. She also told me we would have to pay a fee for a leak check because the tank had run empty. I thought this was absurd because it was their fault the tank was empty, and I couldn't smell propane so there obviously wasn't a leak. I don't remember the amount they were going to bill for the leak check for certain, but I think it might have been around a $100. I told Schultz I would not pay for this leak check. But I really don't know if they charged me for it or not—since I wasn't getting statements, I just kept paying the $150 per month.

7.      Because of these two incidents, though, I had had enough of Schultz Bottle Gas. So, in the spring of 2015, I called another propane company and had them set up a tank. The

new company moved the old, rusty Schultz Bottle Gas tank to another area of my yard away from the house. I called Schultz and told them they could come and get it. But, because there was still propane in the tank, I told the person I talked to that I expected that, after they sucked the propane out so they could re-sell it, that I would get a credit for it. I withheld the last $150 payment that I was to make to them, and waited for a statement showing me the value of the propane they sucked from the tank.

8.    The tank sat there for a month or maybe six weeks before they finally came and picked it up. I never got a statement showing how much propane was pumped out, nor did I get any kind of bill from them. It has been many months now, and I haven't followed up with them. I was so fed up with these people that I was just satisfied to be done with them.

9.    I did file a complaint with the Better Business Bureau. A copy of that complaint is attached.

10.   I cannot honestly say how much propane was in the tank at the time Schultz came and got it. I am reasonably confident it was more than 25-percent because this was the level at which Schultz would routinely re-fill it (except for the incident in December). So, I expected that I would be receiving some kind of refund after Schultz deducted the amount I still owed to them but was withholding. But, I did not pay close attention and did not take notes on my conversations because I assumed I would be treated fairly.

11.   I have personal knowledge of the facts stated in this affidavit.

FURTHER, AFFIANT SAYTH NOT.

Michael P█████

Subscribed and sworn to before me
this 10th day of June, 2016.

_____, Notary Public
WASHTENAW County, Michigan
Commission Expires:
October 22, 2017

STACEY M CAPPELLI
NOTARY PUBLIC   STATE OF MICHIGAN
COUNTY OF WASHTENAW
My Commission Expires Oct. 22, 2017
Acting in the County of WASHTENAW

2

Consumer complaints for Schultz Bottled Gas & Appl - Northwestern Ohio and Southeast... Page 1 of 3

Northwest and West Central Ohio and Southeast Michigan

○ Name   ○ Category                                                    Clear Location

| Search by: Business Name, URL, Phone, Email | Enter a valid location |

Filter: Businesses   | Source: Site    Distance: Off   | □ BBB Accredited Only |

GET TO KNOW US    GET INVOLVED    GET CONSUMER HELP    PROGRAMS & SERVICES    FOR BUSINESSES

# BBB BUSINESS REVIEW

What is a BBB Business Review?

CONSUMER COMPLAINTS

THIS BUSINESS IS NOT BBB ACCREDITED

**Schultz Bottled Gas & Appl**

Phone: (734) 439-1503

Fax: (734) 439-1504

*BBB Business Reviews may not be reproduced for sales or promotional purposes.*

## Customer Complaints Summary

4 complaints closed with BBB in last 3 years | 1 closed in last 12 months

| Complaint Type | Total Closed Complaints |
|---|---|
| Billing / Collection Issues | 1 |
| Delivery Issues | 1 |
| Problems with Product / Service | 2 |
| Advertising / Sales Issues | 0 |
| Guarantee / Warranty Issues | 0 |
| Total Closed Complaints | 4 |

## Complaint Breakdown by Resolution

About Complaint Details

| Complaint Resolution Log (4) |
|---|
| **Answered** - The Business addressed the issues within the complaint, but the consumer did not accept the response, OR BBB has not heard back from the consumer as to their satisfaction. (3 complaints) |

| 04/14/2015 | Delivery Issues | Read Complaint Details |
|---|---|

Consumer complaints for Schultz Bottled Gas & Appl - Northwestern Ohio and Southeast...   Page 2 of 3

| 04/14/2015 | Problems with Product / Service | Read Complaint Details |
|---|---|

**Complaint**
Customer service with regard to billing and product supply is unacceptable.

As our residential propane gas supplier, we have been with ****** for 10 years. I have always had issues with there billing system. Monthly statements were never sent. It was my responsibility to keep track of my payments and their deliveries. If I wanted a statement, I had to request one each month. When the delivery man came he would leave a paper receipt attached to our side door that would disappear in the wind and rain if I did not see it in time. So many times I never knew a delivery was made, which then through off my record keeping, again because no statments were sent.

Recently they merged, or were bought out and it seems some of their delivery practices changed. However they did not inform customers. Because of this our tank ran empty last year. We had been on what's called "auto fill" which means they come and top off the tank each month, so there's no need for the customer to worry. But this is a rule they changed and never informed us. So when we called to have them come fill it, the delivery man decided to urinate right there in the yard. My wife was home and witnessed this, but he must not have known.

Now, again not knowing until now that we are to monitor the level of propane, we just ran out again in the middle of the winter season. I called with an emergency request to fill. First phone call I got the response, "I don't know when we can get there". Second call, different person, "I have no idea". Third call I told them forget it, I'm going with a different company. They won't be around long running a business like this, but until then, stay away.

**Desired Settlement**
No settlement wanted. Just letting people know that this business will not take care of you.

**Business Response**
In review of this account, the customer doesn't receive a statement when they are running a credit balance. This customer ran a credit balance from 5/9/2012 through 2/26/2014 and then from 4/23/2014 through 9/26/2014. They currently have a $221.84 balance as they have missed payments after their 10/30/2014 delivery, not making payments in December, February, or March. After Amerigas purchased ******, at their request, several of their employees chose to move on and work elsewhere, which put us in a bind delivery wise. Due to the previous ******* "way of doing business", we did struggle with deliveries last winter, doing the best we could with a short staff. Those issues are now being resolved/going forward.

| 03/11/2014 | Billing / Collection Issues |
|---|---|

| **Unanswered** - The business failed to respond to the dispute. (1 complaint) |
|---|

| 01/29/2016 | Problems with Product / Service | Read Complaint Details |
|---|---|

**Industry Comparison** Chart

Petroleum Products, Gas - Propane, Gas - Industrial & Medical - Cylinder & Bulk

As a matter of policy, BBB does not endorse any product, service or business.

BBB Business Reviews are provided solely to assist you in exercising your own best judgment. Information in this BBB Business Review is believed reliable but not guaranteed as to accuracy.

BBB Business Reviews generally cover a three-year reporting period. BBB Business Reviews are subject to change at any time.

BBB Directory                          BBB API
Give.org                               Terms of Use
Council of Better Business             Trademarks
Bureaus                                Privacy Policy
Contact                                Fight Phishing
BBB Business Partner Code

© 2016 BBB Serving Northwest and West Central Ohio and Southeast Michigan

# EXHIBIT M

## Screen Shot – Schultz Bottle Gas



## Milan, MI Gas Companies

### Schultz Bottle Gas

Schultz Bottle Gas offers quality propane services for residential, commercial, and agricultural tanks in Milan, MI and the surrounding areas. For more than 70 years, we have accommodated our clients with propane gas.

We specialize in providing for crop drying units, gas grills, and LP accessories. Our staff members at Schultz Bottle Gas take pride in offering you prompt and excellent service for your gas or appliance needs. We are committed to giving professional service at competitive prices.

Learn More About Schultz Bottle Gas:
committed to giving professional service at competitive prices.

Learn More About Schultz Bottle Gas:

- **Residential** – Fill propane cylinders at site, from 100 lbs to 1,000 gallons, lease and sell tanks, grill and camper tanks - heating gas, cooking water heating, standby generators use
- **Commercial** – Heating, forges for factories, automotive repair shops, pottery makers for kilns, and more
- **Agricultural** – Crop drying gas heaters, varying sizes of machines, varying volumes for different farm sizes, corn and beans, occasionally wheat, and shops or machine sheds

We offer the brand Philips 66 and serve the following areas - Washtenaw, Monroe, Livingston, Lenawee, Jackson, and Wayne Counties.

Call  800-882-5546 today or browse our website for more information about our products and services.



Popular Categories:   Restaurants   Home Improvement   Co...

**!**  Unfortunately a system error has occurre
Inconvenience and thank you for your pa
Tha:
Inconvenience and thank you for your pa
Tips:

Browse our product and service categories

< ▬▬▬▬▬▬▬▬▬▬▬ >



**Low Gas Rates**

**FREE Delivery**

Call 800-882-5546 Today

**Serving All Property Types**

✓ Residential
✓ Commercial
✓ Agricultural

**Prompt Professional Service**

Your Call Is Important To Us



**Schultz**
**Bottle Gas**
Serving The Area Since 1939
**800-882-5546**

Home   Residential   Commercial   Agricultural   Contact

### Milan, MI Residential Propane Gas

Schultz Bottle Gas

Schultz Bottle Gas offers the highest quality gas services for residential heating for the Milan, MI area. If you want to stay toasty on those blustery nights in January, Schultz Bottle Gas can get you refilled on your gas needs.

Our Residential Services Include:

- Fill propane cylinders at site
- From 100 lbs to 1,000 gallons
- Lease and sell tanks
- Grill and camper tanks
- Heating gas, cooking water heating, standby generators use
- Heating gas, cooking water heating, standby generators use
- Offer budget plans averaged for a year's span
- Either call or set up schedule for delivery
- No hazmat or delivery charges

Our friendly and professional staff is here to answer any questions you may have about our company or our services.

Call 800-882-5546 today, or browse our website for more information about commercial or agricultural.



**Low Gas Rates**
**FREE Delivery**
Call 800-882-5546 Today

**Prompt Professional**
**Service**
Your Call Is Important To Us




**Bottle Gas**

*Serving The Area Since 1939*

# 800-882-5546

Home | Residential | Commercial | Agricultural | Contact

## Milan, MI Commercial Gas Service

### Schultz Bottle Gas

Schultz Bottle Gas offers the highest quality gas services for commercial heating for the Milan, MI area. With Schultz Bottle Gas as your fuel provider, we're available to make sure the temperature is always right and your equipment is always working. This will allow you to focus on more important activities, like your company's success.

Our Commercial Services include:

- Heating forges
- Automotive repair shops
- Pottery makers for kilns
- Offer budget plans averaged for a year's span

area. With Schultz Bottle Gas as your fuel provider, we're available to make sure the temperature is always right and your equipment is always working. This will allow you to focus on more important activities, like your company's success.

Our Commercial Services include:

- Heating forges
- Automotive repair shops
- Pottery makers for kilns
- Offer budget plans averaged for a year's span
- Either call or set up schedule for delivery
- No hazmat or delivery charges

Our friendly and professional staff is here to answer any questions you may have about our company or our services.

Call 800-882-5546 today, or browse our website for more information about residential or agricultural.



**Low Gas Rates**

**FREE Delivery**

Call 800-882-5546 Today

**Low Gas Rates**

**FREE Delivery**

Call 800-882-5546 Today

**Prompt Professional Service**

Your Call Is Important To Us



Home    Residential    Commercial    Agricultural    Contact

## Milan, MI Agricultural Gas Service

### Schultz Bottle Gas

Schultz Bottle Gas offers the highest quality gas services for agricultural heating for the Milan, MI area. For more than 70 years we have provided superior service and assisted many people with drying out their crops and enhancing their yields. Whether you're looking to dry out your corn or beans Schultz Bottle Gas can help. We have earned and sustained a reputation for professional excellence by making sure to deliver top-notch customer service and a level of reliability we take great pride in.

Our Agricultural Services include:

- Crop and grain drying
- Varying sizes of machines
- Varying volumes for different farm sizes
- Varying volumes for different farm sizes
- Shops or machine sheds
- Offer budget plans averaged for a year's span
- Either call or set up schedule for delivery
- No hazmat or delivery charges

Our friendly and professional staff is here to answer any questions you may have about our company or our services.

Call 800-882-5546 today, or browse our website for more information about commercial or residential.





**Contact Schultz Bottle Gas Of Ann Arbor, MI**

### Schultz Bottle Gas

| | | Service Area: |
|---|---|---|
| Address | 1115 Dexter St<br>Milan, MI  99999 | |
| Email | schbtlgas@yahoo.com | |
| Phone | 800-882-5546 | |
| Business Hours | Monday - Friday 8:30 am - 6:30 pm<br>Saturday 8:30 am - 12:00 pm<br>Closed Holidays, Saturdays, and Sundays during the summer | |

We accept    

We are Licensed, Bonded and Insured



### Contact Us

Please send us your request/comments